# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARNEGIE MELLON UNIVERSITY,⠀⠀) | |
| ⠀⠀⠀⠀⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀Plaintiff,⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀v.⠀⠀⠀⠀⠀⠀) | Civil Action No. 09-290 |
| ⠀⠀⠀⠀⠀⠀⠀⠀) | |
| MARVELL TECHNOLOGY⠀⠀⠀⠀) | |
| GROUP, LTD. and MARVELL⠀⠀⠀) | |
| SEMICONDUCTOR, INC.⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀⠀⠀⠀⠀) | |
| ⠀⠀⠀⠀Defendants.⠀⠀⠀) | |

## <u>MEMORANDUM OPINION</u>

## I.⠀⠀⠀INTRODUCTION

### *A. Factual Background*

This is a patent infringement action in which Plaintiff Carnegie Mellon University ("CMU"), a Pennsylvania not-for-profit educational institution, alleges that Defendants Marvell Semiconductor, Inc. ("MSI"), a California corporation, and Marvell Technology Group, Ltd. (MTGL), a Bermuda corporation, (collectively "Marvell") have infringed two of its patents: Patent No. 6,201,839 ("the '839 patent") and Patent No. 6,438,180 ("the '180 patent"). MSI is an indirect subsidiary of MTGL. The patented inventions were developed at CMU's Data Storage Systems Center ("DSSC") and cover systems and methods to increase the accuracy with which hard disk drive circuits read the data on magnetic disks (Docket no. 33 at 5).

### *B. Procedural Background*

Plaintiff CMU filed a Complaint in this matter on March 6, 2009 (Docket No. 1), alleging

infringement of the two patents.  Defendants Marvell filed an Answer on June 1, 2009 (Docket No. 13), denying infringement, raising the affirmative defenses of non-infringement, invalidity, laches, and damages and relief limitations.  Defendants Marvell simultaneously filed counterclaims seeking declaratory judgments of non-infringement and invalidity for both patents (Docket No. 13).  On June 19, 2009, Plaintiff filed its Answer with affirmative defenses to the counterclaims (Docket No. 20), stating that they failed to state a claim upon which relief could be granted, that the patents are valid and enforceable, and that the counterclaims were barred by estoppel, waiver, laches, and/or unclean hands.  On July 7, 2009, Defendants filed a Motion to Transfer the case to the Northern District of California and a supporting brief (Docket No. 25, 26).  On July 17, 2009, Plaintiff filed a Brief in Opposition to Defendants' Motion to Transfer (Docket No. 33), and on July 22, 2009 Defendants filed a Reply Brief (Docket No. 36).  After a case management conference on July 23, 2009 (Docket No. 37), this Court issued an agreed-upon Scheduling Order (Docket No. 38).  The Court heard oral arguments on the Motion to Transfer on August 27, 2009 and took the motion under advisement (Docket No. 45).

For the reasons outlined herein, Defendants' Motion to Transfer Venue to the Northern District of California.  (Docket No. 25) is DENIED.

## II.     LEGAL STANDARD

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil case to another district "[f]or the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a).  Such transfers "are discretionary determinations made for the convenience of the parties and presuppose that the court has jurisdiction and that the case has been brought in the correct forum." *Lafferty v. Gito St. Riel*, 495 F.3d 72, 76, 79 n.8 (3d Cir. 2007).  The parties

2

agree that this Court has jurisdiction and that venue would be proper in the Northern District of California. (Docket No. 26 at 13; Docket No. 33 at 12).

Upon a determination that another forum would have also been proper, the moving party bears the burden of showing the need for transfer. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The moving party must show that "on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Jumara*, 55 F.3d at 879 (internal quotations omitted). The United States Court of Appeals for the Third Circuit has outlined the private and public factors for the Court to consider in exercising its discretion. *Id.* The relevant private factors to consider include (1) each party's forum preference; (2) where the claim arose; (3) the convenience of the parties as indicated by their relative physical and financial conditions; (4) the convenience of the witnesses; and (5) the locations of books and records. *Jumara, 55 F.3d at 879*; *see also In re Amendt*, 169 Fed. Appx. 93, 96 (3d Cir. 2006)(same). The Court also considers a number of public factors, including (1) enforceability of judgment; (2) practical considerations that could make the trial easy, expeditious or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding local controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879; see also *In re Amendt*, 169 Fed. Appx. At 96 (same).

## III.    DISCUSSION

"Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.' . . . A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case-specific factors." *Stewart Org. Inc. v. Ricoh Corp.*, 487 U.S. 22, 29

(1988) (citations omitted).  "The above list of factors is merely a guide, and not all the factors may be relevant or determinative in each case." *LG Electronics, Inc. v. First Intern. Computer, Inc.*, 138 F. Supp. 2d 574, 587 (D. N.J., 2001). "Depending on the nature and facts of the case, these factors often overlap and are intertwined" so courts are rightly careful to avoid "double-counting" the same information under multiple factors.  *Gonzales v. Supervalu Transport, Inc.*, 2008 WL 943018, 1 (E.D .Pa.) (E.D.Pa., 2008);  *See also Affymetrix, Inc. v. Synteni, Inc.*, 28 F. Supp.2d 192 (D. Del.,1998); *Terra Intern., Inc. v. Mississippi Chemical Corp.*, 922 F. Supp. 1334, 1358 n.18 (N.D.Iowa,1996).

*A.      Relevant Private Factors*

**1.      The Parties' Choice of Forum**

"[I]n ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed." *Jumara,* 55 F.3d at 879.  This is especially true when a plaintiff s choice is his home forum.  *Cf. Samsung SDI Co. v. Matsushita Elec. Indus. Co.*, 524 F. Supp. 2d 628, 631 (W.D. Pa. 2006).  At the same time, the Court must also consider the defendant's preference.  *Jumara*, 55 F.3d at 879.  Here, although Defendant has expressed a preference for the Northern District of California, on balance, this factor weighs in favor of Plaintiff as it not only brought suit in this district, but also resides here (Docket No. 1).  Accordingly, this factor favors Plaintiff.

**2.      Where the Claim Arose**

The Court also considers "whether the claim arose elsewhere." *Jumara*, 55 F.3d at 879. This is a separate consideration from the convenience of the parties and focuses on where the alleged infringing activity or other activities relevant to the claims at issue took place.

In addressing this factor, Defendants contend that the litigation should be transferred to

4

the Northern District of California because it is the "center of gravity" for Plaintiff's patent infringement claims.  (Docket No. 26 at 16).  The "center of gravity" standard for determining proper venue in patent infringement cases proposed by Defendants has been used by some courts exercising their discretion as part of the overall *Jumara* analysis.  *See Samsung*, 524 F. Supp. 2d at 632.  The "center of gravity" test is shorthand for a number of the private factors (where the claim arose, convenience of the parties and witnesses, and the location of books and records) but does not by itself supplant the *Jumara* analysis.  *Affymetrix*, 28 F. Supp. 2d at 202 n.7. ("[T]he 'center of gravity' test itself simply serves as a short-hand method for explaining that most of the parties, witnesses, documents or other evidence are located in some other forum. . . . [T]he 'grade' that a forum receives on the 'center of gravity' test carries no weight in the 'balance of convenience,' especially when the presiding court has already considered the location of the parties, witnesses, documents, or other evidence in its analysis.")  Rather than undertake the shorthand analysis, this Court will consider each feature of the "center of gravity" separately as it is covered in *Jumara*.

Turning to the question of where the claims arose, the Court considers first where the alleged infringement occurred and notes that Plaintiff has pleaded that Defendants have "business regularly conducted . . .  within the Western District of Pennsylvania" and that those "business activities introduce products and/or components of products into the stream of commerce that infringe the Patents" (Docket No. 1 at 3).[1]  Defendants counter that much of the alleged infringing activity—including the development, testing, research, and decision-making regarding the sales and marketing of the allegedly infringing products—took place in the

---

[1]Infringement of a patent occurs whenever a defendant, directly, indirectly, or by inducement, "without authority makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the patent therefor."  35 U.S.C. § 271.

Northern District of California (Docket No. 26 at 13).  But they do not claim that no infringing activity took place within this district.  Indeed, given the worldwide market for Defendants' products it would beggar belief to suggest that no allegedly infringing products were sold here. Although Defendants have pleaded that they have not shipped or sold any allegedly infringing products in this district, they also have introduced statements that all of the products are manufactured in Asia and sold by an "indirect subsidiary . . . based in Asia," and have not denied that this subsidiary has sold products within the District. (Docket No. 25-6 at 1-2).  Plaintiffs aver, and Defendants have not shown otherwise, that *some* of the allegedly infringing activity took place within this district, and other allegedly infringing activity likely occurred in numerous jurisdictions worldwide, including other sales and offers to sell, manufacturing, and importing of the accused products (Docket No. 33 at 7-9).

Furthermore, Defendants have counterclaimed that the patents at issue are invalid (Docket No. 13 at 8, 9-10).  These claims are distinct from the alleged infringement claims of the Plaintiff, but since they will also be affected by this Court's decision on transfer of venue, where they arose must also be considered.  Plaintiffs aver, and Defendants do not deny, that all of the activities regarding the invention, reduction to practice, and filing of the patent for the inventions took place in this District.  Accordingly, this factor favors the Plaintiff.

### 3.      Convenience of the Parties

The convenience of the parties, as indicated by their relative physical and financial condition, *Jumara*, 55 F.3d at 879, also weighs in favor of denying Defendants' motion.  Each party would doubtless find it more convenient to litigate in its home district.  Defendants are publicly-traded corporations with global operations and annual revenues that exceed $2 billion (Docket No. 33-4 at 4); therefore, they have the financial wherewithal of litigating in

Pennsylvania.  In contrast, Plaintiff is a not-for-profit educational institution.  (Docket No. 33-3 at 1).  As *Jumara* instructs this Court to consider the relative financial condition of the parties, this factor favors Plaintiff s position.  *See e.g.*, *Schreiber v. Eli Lilly & Co.*, No. 05-CV-2616, 2006 U.S. Dist. LEXIS 13477, *32-33 (E.D. Pa March 27, 2006) (finding that this factor favored the plaintiffs who were an individual physician, a small local business, and a Pennsylvania not-for-profit educational institution over the defendant, a multi-billion dollar corporation with interests and activities spanning the globe).[2]

### 4.      Convenience of the Witnesses

The convenience of the witnesses is a separate consideration from that of the parties. Since "party witnesses are presumed to be willing to testify in either forum despite any inconvenience . . . [t]he convenience of the non-party witnesses is the main focus" of this factor. *Hillard v. Guidant Corp.*, 76 F. Supp 2d 566 (M.D. Pa. 1999).  The Court, therefore, confines its analysis to the convenience of the non-party witnesses.  The Court considers this factor "only to the extent that the witnesses may actually be *unavailable* for trial in one of the fora." *Jumara*, 55 F.3d at 879 (emphasis added); *see e.g. IMS Health, Inc. v. Vality Technology Inc.*, 59 F. Supp. 2d 454, 470 (E.D.Pa.1999) ("neither party alleges that even one of its witnesses would be unavailable for trial in either forum, and therefore this factor is similarly devoid of significant importance").  Here, Defendant does not claim that any witnesses would be unavailable for trial; rather, it contends that its business operations would be disrupted if key employees had to attend

---

[2]Defendants speculate that Plaintiff's satellite campus located in the Northern District of California may be relevant to determining certain factors (the convenience of the parties and witnesses, where the claim arose, and the location of books and records) (Docket No. 26 at 4), but Defendants have not shown that the relatively small satellite campus is significantly related to any of these issues.

a trial in the Western District of Pennsylvania.  (Docket No. 26 at 8).  Plaintiffs also point to multiple employees whose schedules would likely be disrupted by having to attend trial. (Docket No. 33 at 2-3).  These arguments miss the mark in two ways: they do not concern non-party witnesses, and they do not claim actual unavailability for trial.[3]

The only likely non-party witnesses mentioned by the parties are Aleksandar Kavcic, a co-inventor of the asserted patents, and Jonathan Parks, the prosecuting attorney of the patents. (Docket Nos. 26 at 7, and 33 at 17).   Dr. Kavcic resides in Hawaii, but has submitted a declaration indicating that he would be willing to appear voluntarily in this matter and that it would not be inconvenient to travel to this District to do so (Docket No. 33-2).  Mr. Parks, an attorney, resides and practices in this District. (Docket No. 33 at 17).   Since Defendants bear the burden of showing that inconvenience would make non-party witnesses unavailable for trial and because the Court finds that they have not done so, this factor also weighs in favor of Plaintiff.

### 5.        Location of the Books and Records

*Jumara* directs the Court to consider "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum)."  *Jumara*, 55 F.3d at 879.  Defendants have claimed that the majority of the documentary evidence related to the alleged patent infringement will come from their business records located in the Northern District of California, and that consequently "CMU will have far easier access to sources of proof in the Northern District of California than in this District." (Docket No. 26 at 14).  While it is likely that more records will originate in the Northern District of California than in this

---

[3]Modern technology makes actual unavailability for trial less likely since video recordings of appearances can be made for trial and witnesses can appear remotely via video-conferencing technology.

district, that does not mean that the "files could not be produced" in this District, as the ongoing discovery in this matter indicates.  Furthermore, the Court notes that this factor need not be weighed heavily because much of the discovery in this matter, as in many modern cases, is being exchanged electronically (See Docket No. 32 at ¶ 11), minimizing or eliminating any difference in access to documents caused by geography.  Since Defendants have not carried their burden of showing that files discoverable in this matter could not be produced in this District, this factor weighs in favor of Plaintiff.

        B.      *Relevant Public Factors*

        Not all of the public factors listed by the *Jumara* court are relevant to this case. Enforceability of the judgment, public policies of the fora, and familiarity of the trial judge with the applicable state law need not be considered since the conflicts between the parties arise under federal law.  *See Samsung*, 524 F.Supp. 2d at 633.

                1.      **Practical Considerations**

        This factor considers the ease, expediency, and expense of adjudicating the claims in the different venues.  *Jumara*, 55 F.3d at 879.  However, courts have differed as to how to analyze this factor or whose ease, expediency, and expense it addresses. *E.g.*, *LG Electronics*, 138 F. Supp. 2d at 592 (considering the presence of related cases in one District);  *IMS Health,* 59 F. Supp. 2d at 470 (considering court congestion); *Motorola, Inc. v. PC-Tel, Inc.*, 58 F. Supp. 2d 349, 359 (D. Del., 1999) (declining to consider a party's expense because it was already part of the private factors); *Affymetrix*, 28 F. Supp. 2d at 205-206 (declining to consider this factor at all because it overlaps with considerations of docket congestion and party convenience, but noting that the need to hire local counsel is an added expense for a non-home forum); *Optopics*

*Laboratories Corp. v. Nicholas*, 947 F. Supp. 817, 826 (D. N.J., 1996) (considering the two Districts' different authority to compel arbitration).   Thus, depending on how it is interpreted, this factor can overlap with a number of others and the Court must be careful not to "double count" it.   *See Affymetrix*, 28 F. Supp 2d at 205-06.   To avoid "double counting" the same facts, the Court will not re-consider the convenience of the parties and the witnesses or the relative docket congestion in the two Districts.   Neither party has set forth any other facts (such as a related case in one District or a difference in the local rules) that address this factor. Accordingly, this factor is neutral.


### 2.        Administrative Difficulty and Court Congestion

Defendants argue that this case will likely proceed to trial faster in the Northern District of California than here because from October 2007 through September 2008, the median time from filing to trial in civil cases there was 30 months there while it was 34 months here (though the median time from filing to *disposition* in civil cases was 7.7 months there while it was only 6.9 months here). (Docket No. 26 at 18).   This data provides an ambiguous sense of the speed with which cases progress in the two Districts.   However, the Court need not engage in statistical speculation since the litigation has already progressed in this District[4] and if transferred would have to be re-docketed and assigned to another judge, likely causing delays that would erode any speculative four month "advantage" in the Northern District of California. Accordingly, this factor is neutral.

---

[4]This Court has already entered a Scheduling Order to guide the progress of the matter here (Docket No. 38).   The parties have agreed upon an Alternative Dispute Resolution process (Docket No. 47) and a Protective Order (Docket No. 53), and have begun discovery.

### 3.      Local Interest

Courts have an interest in resolving matters of local interest. *Gulf Oil Corp. v. Gilbert* 330 U.S. 501, 509 (U.S. 1947) ("In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only. There is a local interest in having localized controversies decided at home.")**.**   This factor also overlaps with factors already discussed (where the claim arose and the convenience of the parties), *See L.G. Elecs. Inc. V. First Int'l Computer of Am., Inc.*, 138 F. Supp 2d 57, 592 (D. N.J., 2001), so the Court limits its focus to the interests of local judges and juries in events in their community.

Both Plaintiff and Defendants have arguments for local interest since each is headquartered in the District where it seeks to have the case adjudicated.  Plaintiff argues that this District has a further interest in the matter because the technology at issue was developed in Pittsburgh, especially since it was developed by a not-for-profit, educational institution (Docket No. 33 at 2).  Defendants argue that the Northern District of California has a further interest in the matter because the design, development, and marketing decisions regarding the accused products occurred there (Docket No. 26 at 19).  Thus, the initial invention of the technology and the subsequent development of products allegedly incorporating it each took place in one of the Districts.   However, this balance is tipped by the not-for-profit, educational nature of the Plaintiff, whose ties to the District include not only employing its citizens but also educating them and attracting public and private funding to the community (Docket No. 33 at 7, and 33-3 (describing the DSSC's "close partnership with industry" and listing industry sponsors), and Docket No. 50 at 22) .  Therefore, this factor favors the Plaintiff.

### IV.      CONCLUSION

11

Upon consideration of the arguments of the parties in their briefs and oral arguments and of the factors outlined in *Jumara*, Defendants' Motion to Transfer Venue to the Northern District of California is DENIED.  An appropriate order to follow.


*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge



CC/ECF:       All Counsel of Record

Date:          September 21, 2009