IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARNEGIE MELLON UNIVERSITY, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>MARVELL TECHNOLOGY GROUP, LTD., )<br>and MARVELL SEMICONDUCTOR, INC., )<br>)<br>Defendants. ) | Civil No. 09-290<br>Judge Nora Barry Fischer |

## MEMORANDUM OPINION

Presently pending before the Court is a motion filed by Plaintiff Carnegie Mellon University ("CMU") wherein CMU requests that the Court exclude certain testimony of Defendants Marvell Technology Group, Ltd. and Marvell Semiconductor, Inc. (collectively, "Marvell") damages expert, Mr. Creighton Hoffman. (Docket No. 370). The Court has considered Marvell's response (Docket No. 390), as well as evidence submitted in support and opposition to the motion, and argument on the matter. (*See* Docket No. 433). Marvell was given the opportunity to call on Mr. Hoffman during the hearing, but opted not to do so. In light of the entire record before the Court, the motion [370] is GRANTED, in part, and DENIED, in part, in accord with the following.

Under Rule 702 of the Federal Rules of Evidence, a court may permit an expert to offer opinion testimony only if such testimony "will assist the trier of fact" and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED.R.EVID. 702. "The district court acts as a gatekeeper tasked with the inquiry into

whether expert testimony is 'not only relevant, but reliable.'" *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F.Supp.2d 687, 689 (E.D. Tex. 2010) (Rader, J.) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 578, 589 (1993)). Testimony that does not meet the standard set forth in Rule 702 must be excluded.

In a patent infringement action, a successful plaintiff is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284 (2006). Two forms of compensation are authorized by § 284: lost profits and reasonable royalty damages. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). Because CMU does not manufacture or sell products that practice the claimed methods, it is not entitled to lost profits.

"A reasonable royalty contemplates a hypothetical negotiation between the patentee and the infringer at a time before the infringement began." *Red Hat*, 705 F.Supp.2d at 689 (citing *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983)). The hypothetical negotiation presumes that both the patentee and the accused infringer are willing parties to the negotiation, and also assumes that the patent was valid, enforceable, and infringed. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970).

In this case, CMU alleges that Marvell has infringed two of its patents, U.S. Patent Nos. 6,201,839 (the "'839 Patent") and 6,438,180 (the "'180 Patent") (collectively, the "CMU Patents"). The patents-in-suit are generally directed to sequence detection in high density magnetic recording devices, and more specifically, to high density magnetic recording sequence detectors. *See* '839 Patent 1:20-23. Both patents claim priority to a May 9, 1997 provisional application. *See* '839 Patent; '180 Patent. The '180 Patent is a continuation-in-part of the '839

Patent. *See* '180 Patent. The dispute revolves around two technologies: Marvell's simulation code ("Simulation Programs") and certain of its chips ("Accused Chips").

As stated above, if CMU proves Marvell's liability, CMU's only recourse is a reasonable royalty, as lost profits are not available. Both parties have retained damages experts. Marvell has proffered Creighton Hoffman as its expert on this issue. Mr. Hoffman received his accounting degree from Northwestern University. He then received his master's degree in operations research and computer science at the Massachusetts Institute of Technology. His experience includes twenty-five years working at Price Waterhouse LLP. He is now a principal in the consulting firm of Hoffman Alvary & Company LLC. (Docket No. 372-1 at 3).

In his role as Marvell's damages expert, Mr. Hoffman intends to present four distinct opinions (*see* Docket No. 372-1 at 3), three of which are at issue in this motion. (*See* Docket No. 371 at 4-5). The first, briefly put, is his opinion that, *if* there is an established royalty rate for the patents in suit, it is $250,000. (*Id.*). His second opinion is that if there is no established royalty, then a reasonable royalty for both CMU Patents is $250,000. (*Id.*). Finally, if there is no established royalty, the reasonable royalty for the Group II claims is $250,000. (*Id.*).

The foundation for all three of Mr. Hoffman's opinions is a number of agreements between CMU and various corporations for those entities to participate in CMU's Data Systems Storage Center ("DSSC"). (Docket No. 372-1 at 4). Mr. Hoffman points to at least three occasions where rights to make use of the CMU Patents were transferred pursuant to a DSSC agreement. (*Id.* at 9-11). Each one of these licenses granted members of the DSSC a worldwide, irrevocable right to "make, have made for their own use, or sell the product of" inventions created at the DSSC during the term of membership. (*See* Docket No. 399-1 Ex. 5). As Mr. Hoffman has numbered each of his opinions, the Court will use the same titles.

3

*Opinion I*

Opinion I states that, "[i]f it is determined that a royalty rate for the patents-in-suit has been established, that rate is $250,000." (Docket No. 372-1 at 3). This contingent conclusion is based upon the three DSSC Agreements between CMU and 3M, Seagate, and IBM. (*See id.* at 8 ("From 1992 through 1997, CMU entered into at least three licenses that included rights to the patents-in-suit.")). Two of these agreements resulted in annual payments of $250,000 to CMU, and the other included a payment of $125,000. (*Id.*). After acknowledging that he does not know whether there were any further such licenses, Mr. Hoffman concludes that, "[a]ssuming that these licenses meet the criteria for an established royalty rate, a reasonable royalty in this matter for the patents-in-suit would be no more than $250,000." (*Id.* at 9).

For prior royalties to constitute an "established" royalty, they must meet five criteria:

> (1) They must be paid or secured before the infringement began; (2) they must be paid by a sufficient number of persons to indicate the reasonableness of the rate; (3) they must be uniform in amount; (4) they must not have been paid under threat of suit or in settlement of litigation; and (5) they must be for comparable rights or activity under the patent.

*Mobil Oil Corp. v. Amoco Chemicals Corp.*, 915 F.Supp. 1333, 1342 (D. Del. 1994); *see also Studiengesellschaft Kohle m.b.H. v. Dart Industries, Inc.*, 666 F.Supp. 674, 680 n. 6 (D. Del. 1987) (citing *Rude v. Westcott*, 130 U.S. 152, 165 (1889); *Faulkner v. Gibbs*, 199 F.2d 635, 638 (9th Cir. 1952)).

With respect to the final element, the Associate Agreements are not simply royalty-bearing licenses for the CMU Patents. The Agreements go far beyond licensed use in exchange for annual payments of $250,000. Instead, as evidenced by the agreement between CMU and

Seagate (the "Seagate Agreement"), prospective members of the DSSC signed an agreement with CMU whereby the Associate Members were to "financially support research in data storage technologies and, in return, receive certain benefits from said research." (Docket No. 399-1 Ex. 5 at 1). The Agreement clearly contemplated a greater grant of rights for members who contributed to the DSSC during the period of invention, and lesser for those who joined *during* the period of invention. (*See id.* at 3). CMU also derived the clear benefit of placing its students with the Associate Members by way of the agreement. (*Id.* at 4 (granting Associate Members "[a]ccess to graduate students in both M.S. and Ph.D. programs… and the opportunity to recruit them for both summer and permanent positions…")). Further bolstering the research-centric character of the agreements, paragraph 2(g) allowed Associate Members to "direct up to one-half of its annual fee… toward specific research." (*Id.* at 4). Associate Members also agreed to acknowledge CMU's contributions in any public reports based on research done at the DSSC. (*Id.* at 6). All of this indicates that (1) CMU derives greater benefits than an annual payment of $250,000; and (2) the Associate Members received more than the right to use the two CMU Patents in this suit.

In addition, the *three* licenses bear facially distinct "royalties": two for $250,000 and one for $125,000. (Docket No. 372-1 at 8). Given that there are so few licenses, and these licenses are not uniform in amount, the Court struggles to see how any general acquiescence could be shown that would result in an established royalty. *Alpine Valley*, 718 F.2d at 1078; *Mobil Oil Corp. v. Amoco Chemicals Corp.*, 915 F.Supp. at 1342. Mr. Hoffman's opinion simply does not account for that distinction.

In light of the circumstances described above, the Court does not see how an established royalty can be demonstrated in this case. There are numerous parts to these Associate

Agreements. The $250,000 annual fee is only a portion of the overall exchange. It would appear that the hypothetical negotiation between CMU and Marvell cannot account for such additional benefits that inure both to CMU and the licensees under these agreements. In other words, the Associate Agreements are "radically different from the hypothetical agreement under consideration." *Lucent*, 580 F.3d at 1327. The Court, therefore, finds it appropriate to exclude Mr. Hoffman's proffered testimony as to his Opinion I because the Agreements upon which he relies do not show an established royalty.

### *Opinion II*

Opinion II is an alternative opinion, in the event that the Court finds that there is no established royalty. (Docket No. 372-1 at 3). Given that the Court has concluded that there is no established royalty, Opinion II appears to be Mr. Hoffman's primary opinion. In it, Mr. Hoffman concludes that, even if there is no established royalty, a reasonable royalty for both patents-in-suit would be $250,000. (*Id.*). Notably, despite considering a number of additional factors, he has arrived at the same end result as he did in his established royalty "opinion."

It is the asserting expert's duty to demonstrate comparability, *DataQuill Ltd. v. High Tech Computer Corp.*, Civ. No. 08-543, 2011 WL 6013022, *21 (S.D. Cal. Dec. 1, 2011) (Expert "bears the burden of proving comparability if he wants to rely on the 'significant patent agreements' in performing his reasonable royalty analysis."); *see also Red Hat*, 705 F.Supp.2d at 691. CMU claims that Mr. Hoffman has failed to meet this standard. Based on Mr. Hoffman's reliance on the DSSC Agreements, CMU seeks to exclude Opinion II.

As described above, CMU is correct that the DSSC Associate Agreements are not entirely comparable to a license for use of the patented methods. The Associate Agreements contemplate a number of benefits to both parties, far beyond the "pay-for-use" exchange

embodied in the license derived from an hypothetical negotiation analysis. Mr. Hoffman has not offered any analysis of how the Agreements' enumerated benefits would factor into such analysis.

The Court, however, views this defect in Mr. Hoffman's opinion as a basis for cross-examination, not exclusion. As Marvell observed in its responsive brief, Chief Judge Rader of the Federal Circuit – sitting in the Eastern District of Texas – excluded an expert's testimony which relied on certain industry studies rather than existing licenses to the patents-in-suit. *See Red Hat*, 705 F.Supp.2d at 691. While the factual situation in that case was readily distinguishable, as the licenses overlooked by the expert in that instance directly addressed the patents-in-suit, *id.*, Judge Rader's point remains: the expert "should have at least inaugurated his analysis with reference to the existing licenses to the patents-in-suit." *Id.*

Similarly here, the DSSC Associate Agreements did result in a transfer of rights to the patents in suit, even though those agreements are clearly not simple royalty-bearing licenses to the CMU Patents. Indeed, the CMU Patents did not even exist at the time of execution of these Agreements. Still, the Agreements arguably show a "discernible link to the claimed technology," *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 870 (Fed. Cir. 2010); hence, they *may* be relevant to determining a reasonable royalty in the instant case. As such, the Court sees no reason that Mr. Hoffman cannot "inaugurate[]" his analysis with reference to these Agreements. His failure to address the obvious distinctions between these Agreements and his projected license in this matter is more appropriately addressed by way of cross-examination than through exclusion. For these reasons, the Court will permit Mr. Hoffman to testify regarding the subject matter of Opinion II.

*Opinion III*

Opinion III follows closely on Opinion II, save that it only applies to the Group II claims. (Docket No. 372-1 at 3). The result of Opinion III is, once again, a reasonable royalty of $250,000. (*Id.*). The Court has granted Marvell's motion for summary judgment of non-infringement of the Group II claims, (Docket No. [443]), such that Mr. Hoffman's testimony with respect to the Group II claims is irrelevant to the remaining issues in this case. As such, the Court will grant CMU's motion to exclude Opinion III without further analysis of the specific arguments before it.

**CONCLUSION**

For the foregoing reasons, CMU's motion [370] is GRANTED, in part, and DENIED, in part. The motion is GRANTED, insofar as Mr. Hoffman shall not be permitted to provide any testimony as to his opinions labeled Opinion I and Opinion III. The motion is DENIED, insofar as Mr. Hoffman shall be permitted to testify as to the opinions expressed in Opinion II. This memorandum opinion does not address Mr. Hoffman's Opinion IV, which was not challenged. The Court shall order the filing of a proposed limiting instruction. An appropriate Order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

Date: August 24, 2012
cc/ecf: All counsel of record.