## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARNEGIE MELLON UNIVERSITY,              )
                                         )
        Plaintiff,                      )
                                         )
    v.                                   )   Civil Action No. 09-290
                                         )   Judge Nora Barry Fischer
MARVELL TECHNOLOGY GROUP, LTD.,          )
and MARVELL SEMICONDUCTOR, INC.,         )
                                         )
        Defendants.                     )

## MEMORANDUM ORDER

### I.    INTRODUCTION

This patent infringement action is set to commence jury selection and trial on November 26, 2012.  The parties have filed a number of motions in limine seeking pretrial rulings on the admissibility of certain evidence at trial.  This opinion addresses Defendants' (collectively "Marvell") "Motion In Limine No. D11 Re: Precluding CMU From Introducing Evidence of Compliance With 35 U.S.C. § 287(a)." (Docket No. 520). By this motion, Marvell seeks to preclude Plaintiff Carnegie Mellon University ("CMU") from introducing evidence or argument of its alleged compliance with 35 U.S.C. § 287(a) and to exclude CMU's introduction of any evidence of pre-suit damages at trial given its alleged non-compliance with this statute.  (*Id.*). CMU opposes the motion and argues that the limitations on pre-suit damages set forth in § 287(a) do not apply in this case.  (Docket No. 569).  The parties presented oral argument as to this motion at a hearing on October 18, 2012.  (Docket No. 591 at 26-50).  The Court has fully considered the parties' slide presentations and the transcript of that proceeding.  (Docket Nos. 587, 588, 591).  For the following reasons, Marvell's Motion [520] is granted, in part and denied, in part.

## II.    BACKGROUND

As the parties are well aware of the background facts of this case, the Court recounts only those facts necessary to resolve the pending motion.  CMU filed this lawsuit on March 6, 2009, alleging that Marvell infringes two of its patents, i.e., U.S. Patent Nos. 6,201,839 ("the '839 Patent") and 6,438,180 ("the '180 Patent") (collectively, "the CMU Patents").  In its Disclosure of Asserted Claims and Preliminary Infringement Contentions served on October 16, 2009, CMU asserted that Marvell infringed claims 1-5, 11, 16, 19 and 23 of the '839 Patent and claims 1, 2, and 6 of the '180 Patent.  (*See* Def. Ex. 3, Docket No. 522-3 at 2-3).  The claims asserted in the '180 Patent (1, 2, and 6) are method claims.  (*Id.*).  The claims asserted in the '839 Patent include both method (1, 2, 3, 4, 5, 11, 16) and system claims (19 and 23).  (*Id.*).  Marvell argues that the system claims constitute apparatus claims because claim 19 is directed to a "detector circuit" while claim 23 is directed to a "system for recording information on a magnetic medium." (Docket No. 521 at n.2).  CMU has not contested that claims 19 and 23 constitute apparatus claims.  (*See* Docket Nos. 569, 591 (counsel commenting that "the apparatus claim that was asserted … does not read on the Marvell chips because it required noise to variance matrices, so we no longer asserted that claim.")).

The challenged claims in this case have been consistently categorized by the parties into two separate groups (i.e., Group I and Group II).  The Group I claims include claims 1 and 2 of the '180 Patent and 1-5 of the '839 Patent while the Group II claims include claims 11, 16, 19 and 23 of the '839 Patent and claim 6 of the '180 Patent.  *See CMU v. Marvell*, Civ. A. No. 09-290, 2011 WL 4527353, at *3 n.3 (W.D. Pa. Sept. 28, 2011).  This Court denied Marvell's motion for summary judgment as to the Group I claims, *see CMU v. Marvell*, 2011 WL 4527353, but later granted Marvell's motion for summary judgment as to the Group II claims.  *See CMU v.*

*Marvell*, Civ. A. No. 09-290, --- F.Supp.2d ----, 2012 WL 3679551, at *n.2 (W.D. Pa. Aug. 24, 2012).   In reaching our decision on the Group II claims, this Court noted that the "asserted claims" included claims 19 and 23, along with the other claims in Group II.   *Id.* at n.1.   Thus, summary judgment has been entered in favor of Marvell and against CMU as to the apparatus claims, i.e., claims 19 and 23 of the '839 Patent and only method claims remain for further litigation.

It is undisputed that CMU has never developed or sold any articles which practice the patented methods or systems in this case.   (Docket Nos. 521 at 4; 569 at 6).   In addition, the parties agree that CMU has likewise never specifically directed or engaged any third parties to manufacture articles which practice the patents.   (*Id.*).   CMU has, however, licensed the patents to entities that are associates in its Data Storage Systems Center ("DSSC").   The language of the license granted is very broad.   To this end, the relevant portion of the Associate Agreement between CMU and licensee Seagate[1] provides, in relevant part, that:

> All inventions, whether or not patentable, conceived of or first reduced to practice in the course of or under this Agreement by any Center personnel while engaged in the activities of the Center (hereinafter referred to as "Inventors"[)] shall become the property of the University.   **The University shall grant to the Corporation, and all other Associates a worldwide, irrevocable, royalty-free license, to make, have made for their own use, or sell the product of the Inventions.**   The University agrees that at such time as it appears to the University, or the Associates that research efforts in the center have isolated a patentable invention, device, idea, etc., it will proceed with all diligence to prosecute the patent application.   In the event that the University decides to offer licenses under said Inventions to third parties, said licenses shall be royalty bearing, as decided by the University, and said royalty shall be utilized at the Center to sponsor further research.

---

[1]   Marvell contends that CMU entered into licenses with similar language with IBM/Hitachi and 3M.   (Docket No. 521 at 5).   These licenses have not been presented to the Court at this time.   However, because the actions of Seagate alone would be sufficient to trigger the application of § 287(a), the Court need not refer to these actual documents.

Def. Ex. 6, *Associate Agreement* at § 2.b (emphasis added).   Relevant here, the Associate Agreement does not include specific terms or conditions obligating the licensee to mark any articles produced under the patents in accord with 35 U.S.C. § 287(a) by placing the patent number on the article.  (*See id.*).   The Agreement likewise does not include any more general provisions, such as a requirement that the licensee comply with all applicable patent laws, which could plausibly be interpreted to require the licensee to mark any articles produced under the license.  (*Id.*).   CMU also admits that it placed no requirements on its licensees to mark any articles produced under the patents and sold to third parties.  *See* Def. Ex 4, *Plaintiff's Objections and Responses to Defendants' Second Set of Interrogatories* at 24 ("For both CMU Patents, CMU is not aware of any products made, sold, offered for sale and/or imported into the United States by a licensee of the CMU Patents that was marked in compliance with 35 U.S.C. § 287").

CMU alleges that the read channel chips ("Accused Chips") produced by Marvell infringe its patents as Marvell practices the patented methods during its sales cycle.  (Docket No. 1).   CMU further avers that Marvell indirectly infringes the patented methods as it induced its customers to infringe the patents by using the methods present in the Accused Chips through their operation.  (*Id.*).   Marvell first sold the Accused Chips to certain of its customers on March 6, 2003.  *See CMU v. Marvell*, --- F. Supp. 2d ----, 2012 WL 3679540, at *2 (W.D. Pa. Aug. 24, 2012).   Between March 6, 2003 and March 31, 2010, Marvell sold 1,469,070,073 Accused Chips. *Id.*   Marvell continues to sell its allegedly infringing products and further sales data is to be produced by Marvell prior to trial.  *Id.* at n.4.  Among Marvell's customers who purchased the Accused Chips were several entities, including Seagate, who were also parties to an Associate Agreement with CMU and granted the aforementioned license "to make, have made for their own use, or sell the product of the Inventions."  *See* Def. Ex. 6, *Associate Agreement* at § 2.b.

4

This Court previously held that the effect of this license is that Marvell could not be liable for indirect infringement resulting from its sales of the Accused Chips to Seagate and Seagate's practice of the allegedly infringing methods.[2]  *See CMU v. Marvell*, 2012 WL 3679540, at *5-6.  We reasoned that Seagate's rights under the license precluded a claim of indirect infringement against Marvell.  *Id.* ("This language [of the license] makes clear that Seagate's own use is not infringing, which in turn means that Marvell cannot be indirectly liable for infringement.").  This Court also found that Seagate had not exercised its "have made" rights under the license because there was no evidence that Seagate instructed Marvell to practice the alleged infringing methods or to design the chips in accordance with the patents.  *Id.* at *6.  Instead, the evidence showed that Marvell's design of the chips was independent of the exercise of any rights Seagate held under the license and that the Marvell-Seagate relationship was not consummated until *after* Marvell achieved a "design-win" under its sales cycle and had already allegedly infringed the patents by practicing the patents.  *Id.*

The parties agree that Seagate incorporated the Accused Chips into its high density disk drives ("HDD drives") and then placed the HDD drives (and Accused Chips) into the stream of commerce by selling these devices to third parties.  (Docket Nos. 521, 569).  Marvell's other customers which held licenses with CMU sold products containing the Accused Chips to third parties as well.  (*Id.*).  During discovery, CMU admitted that it has no evidence that any of these articles sold by its licensees were marked in accord with 35 U.S.C. § 287(a) through its answers to interrogatories, deposition testimony of Robert Wooldridge, and the report of its expert

---

[2]    The Court however denied Marvell's motion for summary judgment as to alleged damages from its sales to Seagate as the Court found that damages still may flow from Marvell's practicing of the methods during its sales cycle. *See CMU v. Marvell*, 2012 WL 3679540, at *5-6.

witness Catherine Lawton.   (Def. Exs. 4, 5, 6). In its responses to Marvell's interrogatories,

CMU expressly "reserve[d] the right to update this response pending further fact discovery,

including the discovery from third-party HDD manufacturers, which discovery is presently

ongoing." (Def Ex. 4 at 24).  To this point, CMU has not supplemented its discovery responses

to include any evidence that its licensees marked any of the articles which were sold.  However,

CMU suggests now that its licensees were unaware that the Accused Chips infringed the patents

given admissions by Marvell in this litigation that it used "black box" technology which had the

effect of shielding its customers from learning of the design and elements of the Accused Chips.

(*See* Docket No. 569).

### III.    LEGAL STANDARD

Marvell has styled the present motion as a motion in limine seeking to exclude CMU

from introducing evidence at trial of its compliance with 35 U.S.C. § 287(a) and damages prior

to the commencement of this suit on March 6, 2009.  (Docket No. 520).  Marvell contends that

the application of Rules 26 and 37(c)(1) of the Federal Rules of Civil Procedure compel such

result.  (Docket Nos. 520, 521).  CMU initially objects to the characterization of this motion as

one in limine.  (Docket No. 569).  CMU contends that it more closely resembles a motion for

summary judgment and that Marvell's motion should be denied for its failure to bring this

motion in accord with the Court's deadlines for the submission of such motions which have long

past. (*Id.*).

The Court agrees with CMU that courts are generally reluctant to entertain in limine

motions seeking conclusive determinations on substantive claims at trial.  Indeed, as CMU points

out, this Court has previously denied in limine motions for raising issues that should have been

raised at summary judgment, *see Mavrinac v. Emergency Medicine Assoc. of Pittsburgh*, Civ. A.

6

No. 04-1880, 2007 WL 2908007, at *1 (W.D. Pa. Oct. 2, 2007) and several courts have addressed motions regarding marking under 35 U.S.C. § 287(a) at summary judgment, *see e.g., Rembrandt Data Tech., LP v. AOL, LLC*, 2009 WL 2242624 at *1 (E.D. Va. 2009).   In any event, consideration of the instant motion is within the Court's discretion and, given that CMU admits that it did not require its licensees to mark any articles in accordance with § 287(a) through the Associate Agreements and has no evidence that any of the articles in question were marked, the limitation on pre-suit damages would bar such evidence, but only if § 287(a) applies given the facts of this case.   Accordingly, the Court will decide this disputed legal issue in the context of the present motion in limine.

Federal Circuit precedent guides the determination of the proper statutory construction and interpretation of patent laws.  *See Woods v. DeAngelo Maine Exhaust, Inc.*, 692 F.3d 1272, 1279 (Fed. Cir. 2012).  However, Third Circuit law governs the application of Rules 26 and 37 of the Federal Rules of Civil Procedure, *see id.*, and state law governs contract interpretation, *see Abbott Point of Care Inc. v. Epocal, Inc.*, 666 F.3d 1299, 1302 (Fed. Cir. 2012).

## IV.   DISCUSSION

The threshold issue before the Court is whether § 287(a) operates to bar CMU from recovering pre-suit damages based on its licensees' resale of the Accused Chips manufactured by Marvell which allegedly embody the '839 Patent.  In order to resolve this issue, the Court must address two sub-issues: (1) whether apparatus claims under the '839 Patent have been "asserted" by CMU in this litigation; and, (2) whether the licensees' sales of the Accused Chips to third parties were made "for or under" CMU.  The Court will first turn to the background of the statute at issue, then discuss the parties' arguments on each point and, finally, address whether the challenged evidence should be excluded under the Federal Rules of Civil Procedure.

### A.  35 U.S.C. § 278(a), its Origins and Purposes

The early patent statutes did not contain any requirement that patentees mark their products.  *See Nike, Inc. v. Wal-Mart Stores, Inc.*, 138 F.3d 1437, 1443 (Fed. Cir. 1998).  The duty to mark was first introduced in the Patent Act of 1842.  *Id.* (citing Act of 1842, 5 Stat. 543, 544).  This statute provided a penalty of not less than $100 as a result of a patentees' failure to mark.  *Id.*  The $100 statutory penalty was removed in 1861 in favor of a limitation of recoverable damages for a patent holder's failure to mark akin to the present statute.  *Id.*  (citing Patent Act of 1861, 12 Stat. 246, 249).  That statute, 35 U.S.C. § 287(a), provides, in relevant part, that:

> Patentees, and persons making, offering for sale, or selling within the United States any patented article for or under them, or importing any patented article into the United States, may give notice to the public that the same is patented, either by fixing thereon the word "patent" or the abbreviation "pat.", together with the number of the patent … In the event of failure so to mark, no damages shall be recovered by the patentee in any action for infringement, except on proof that the infringer was notified of the infringement and continued to infringe thereafter, in which event damages may be recovered only for infringement occurring after such notice. Filing of an action for infringement shall constitute such notice.

35 U.S.C. § 287(a).  Pursuant to this statute, "a party that does not mark a patented article is not entitled to damages for infringement prior to actual notice" to the alleged infringing party that its actions infringe the patent. *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308, 1316 (Fed. Cir. 2009).  Courts have recognized that this statute provides three related purposes: (1) "helping to avoid innocent infringement"; (2) "encouraging patentees to give notice to the public that articles are patented" and, (3) "aiding the public to identify whether an article is patented." *Nike*, 138 F.3d at 1443 (internal citations omitted).

If marking is required under § 287(a), the burden is on the patentee to demonstrate by a preponderance of the evidence that it has complied with the requirements of § 287(a) by marking articles sold to third parties. *See Nike*, 138 F.3d at 1446. The burden remains with the patentee to establish that its licensees complied with the statute. *See Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1111-13 (Fed. Cir. 1993). If the patentee fails to meet this burden, operation of § 287(a) limits damages to those sustained after the alleged infringer was given actual notice of infringement. *See* 35 U.S.C. § 287(a).

   B.  *Whether the Apparatus Claims Under the '839 Patent Constitute Asserted Claims and Require Marking*

It is well settled that § 287(a) does not apply to patents containing only method claims. *See Am. Med. Sys., Inc. v. Med. Eng'g Corp.*, 6 F.3d 1523, 1538 (Fed. Cir. 1993); *see also ActiveVideo Networks, Inc. v. Verizon Comm., Inc.*, 694 F.3d 1312, 1334 (Fed. Cir. 2012) ("[t]he law is clear that the notice provisions of § 287 do not apply where the patent is directed to a process or method.") (quotations omitted). When a patent contains both method and apparatus claims, whether the marking statute applies turns on whether the method and apparatus claims have been *asserted* by the patentee. *See e.g., Am. Med. Sys., Inc.*, 6 F.3d at 1538; *Hanson v. Alpine Valley Ski Resort*, 718 F.2d 1075 (Fed. Cir. 1983); *Crown Packaging Technology, Inc. v. Rexam Beverage Can Co.*, 559 F.3d 1308 (Fed. Cir. 2009); and, *ActiveVideo*, 694 F.3d at 1334. If the apparatus claims have not been asserted in the litigation, § 287(a) does not apply and marking of the asserted method claims is unnecessary for a party to claim damages for the entire period of infringement. *See id.* However, if both apparatus and method claims have been asserted and "to the extent that there is a tangible item to mark by which notice of the asserted method claims can be given, a party is obliged to do so if it intends to avail itself of the constructive notice provisions of section 287(a)." *Am. Med. Sys., Inc.*, 6 F.3d at 1538-39.

Initially, the Court comments that Marvell has dropped its claim that CMU should be precluded from recovering pre-suit damages with respect to the alleged infringement of the '180 Patent. *See* Docket No. 587-12, *Marvell's Slides* at 3 ("To simplify the issue further, since the law is less than clear with respect to the '180 patent, Marvell will not pursue this motion with respect to that patent."). The Court agrees that this position is without merit in light of the foregoing authority because CMU has asserted only method claims of the '180 Patent against Marvell in this litigation. (*See* Def. Ex. 3, Docket No. 522-3 at 2-3). Therefore, the Court will deny Marvell's motion to the extent that it seeks to preclude CMU from introducing pre-suit damages concerning the alleged infringement of the '180 Patent.

With respect to the '839 Patent, the parties dispute whether the apparatus claims (19 and 23) have been asserted by CMU and are subject to marking under § 287(a). CMU contends that claims 19 and 23 are not asserted because it "will be asserting at trial only method claims of the '839 patent." (Docket No. 569 at n.2). CMU states that "the Federal Circuit [has] consistently held that § 287(a) does not apply when the only claims before the jury are method claims." (*Id.* at 2). CMU relies on *Hanson* and *Crown Packaging* in support of this position, focusing on a statement by the Court in *Hanson* that § 287(a) did not apply because "the only claims found infringed" in that case were method claims. (*Id.*). Marvell counters that CMU's reading of these decisions is overbroad and further points out that the district court in *Mformation Techs., Inc. v. Research in Motion Ltd.*, 830 F. Supp. 2d 815 (N.D. Cal. 2011) held that § 287(a) limited damages in the case even though summary judgment was entered against the patentee as to the apparatus claims. (*See* Docket No. 587-12, *Marvell's slides* at 8). CMU believes that *Mformation* is distinguishable because the plaintiff in that case "pursued the claim to judgment" but it (CMU) did not do so in this case. (Docket No. 569).

In this Court's estimation, CMU has asserted apparatus claims (19 and 23) of the '839 Patent against Marvell, triggering the marking requirement under § 287(a). This Court believes that the decisions in *American Medical*, *Hanson*, *Crown Packaging*, and *ActiveVideo* do not teach that a claim is asserted for § 287(a) purposes only if the apparatus claims are tried before a jury. Aside from the use of the term "infringed" by the Court in *Hanson*, there is nothing in any of those decisions which would compel or suggest CMU's interpretation. *See Hanson*, 718 F.2d at 1083. CMU has not cited any court which has adopted this novel view and this Court declines to be the first to do so. (*See* Docket No. 569). Instead, this Court agrees with the *Mformation* court's sound conclusion that these decisions (aside from *ActiveVideo* which had yet to be decided) counsel that a claim is asserted if it is enforced against the defendant in the litigation. *See Mformation*, 830 F. Supp. 2d at 838.

We likewise disagree with CMU's position that claims 19 and 23 were not pursued to judgment. The record reflects otherwise. Claims 19 and 23 were asserted against Marvell in CMU's infringement contentions served at the outset of the case pursuant to the Local Patent Rules of Court.[3] (*See* Def. Ex. 3, Docket No. 522-3 at 2-3). Based on the Court's review of the

---

[3] Local Patent Rule 3.2 of the Western District of Pennsylvania provides, in relevant part, that:

> Not later than thirty (30) calendar days after the Initial Scheduling Conference, a party claiming patent infringement must serve on all parties a "Disclosure of Asserted Claims and Infringement Contentions." Separately for each opposing party, the "Disclosure of Asserted Claims and Infringement Contentions" shall contain the following information:

> Each claim of each patent in suit that is allegedly infringed by each opposing party; Separately for each asserted claim, each accused apparatus, product, device, process, method, act, or other instrumentality ("Accused Instrumentality") of each opposing party of which the party claiming infringement is aware. This identification shall be as specific as possible. Each product, device,

record, CMU never affirmatively dismissed or withdrew its position that these claims were infringed.[4]  In fact, this Court entered summary judgment in favor of Marvell and against CMU as to claims 19 and 23 in its decision on the Group II claims given CMU's failure to present evidence in support of the alleged infringement of those claims. *See CMU*, 2012 WL 3679551, at *n.2.  CMU did not file a motion for reconsideration of that decision or otherwise challenge this ruling. (*See* Civ. A. No. 09-290, Docket Report).   Therefore, this case is on all fours with *Mformation* as CMU pursued the asserted claims until the point of the Court's entry of judgment against it.

The Court further comments that if CMU's interpretation of *Hanson* were adopted, it would lead to potentially absurd results.  In the context of the present case, CMU's loss on summary judgment (and Marvell's win) would effectively expose Marvell to liability for an additional six years of damages (which, according to CMU, is more than $500 million).  More

---

> and apparatus must be identified by name, if known, or by any product, device, or apparatus which, when used, allegedly results in the practice of the claimed method or process;

W.D. Pa. LPR 3.2.

[4]     CMU's counsel stated at oral argument that the claims were not further pursued in this case because the Court's ruling on claim construction foreclosed any finding of infringement. (Docket No. 561 at 38).  Specifically, counsel summarized that:

> [W]e don't have – we're not pursuing an apparatus claim anymore. In fact, the Court's claim construction made it pretty clear that at least the apparatus claim that was asserted is not a -- does not read on the Marvell chips because it required noise to variance matrices, so we no longer asserted that claim. So they can't get to the predicate of the patented article that is being sold under any apparatus claim.

(*Id.*).  Of course, claim construction is decided as a matter of law by the Court and an adverse ruling on claim construction has the same effect as a ruling on a motion for summary judgment. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

generally, such a rule would place all defendants in mixed cases (apparatus/methods) in the uncertain position of having to decide whether to bring a summary judgment motion challenging the apparatus claim and potentially subjecting itself to additional damages, or to proceed to trial on such claim and leave the decision on liability and damages to the jury.

### C.   Whether the Licensees' Sales Were Made "For or Under" CMU

The marking requirement under § 287(a) applies to those persons and entities "making, offering for sale, or selling within the United States any patented article for or under" the patentee.  35 U.S.C. § 287(a).  The Federal Circuit has held that the scope of the "for or under" language in § 287(a) is such that "[a] licensee who makes or sells a patented article does so 'for or under' the patentee."  *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 (Fed. Cir. 1994).  This rule applies to both express and implied licensees.  *Id.*  It is thus beyond doubt that patentees are required to ensure that their licensees comply with § 287(a).  *See Maxwell v. J. Baker, Inc.*, 86 F.3d 1098, 1112 (Fed. Cir. 1996) ("licensees … and other authorized parties such as … manufacturers … must comply" with § 287(a)).  However, the Federal Circuit has also noted that "[w]hen the failure to mark is caused by someone other than the patentee, the court may consider whether the patentee made reasonable efforts to ensure compliance with the marking requirements."  *Id.*  Relevant here,

> [a]lthough Section 287 has been held inapplicable in a situation where there has been no authorized manufacture or sale under the patent, *Wine Ry. Appliance Co. v. Enterprise Ry. Equip. Co.*, 297 U.S. 387, 56 S.Ct. 528, 80 L.Ed. 736 (1936), the statute applies to a nonmanufacturing patentee who has licensed or authorized others to produce or sell the patented article.  *Gordon v. Easy Washing Machine Corp.*, 39 F.Supp. 202 (N.D.N.Y.1941); *Hazeltine Corp. v. Radio Corporation of America*, 20 F.Supp. 668 (S.D.N.Y.1937). The literal wording of the statute, "patentees, and persons making or selling any patented article for or under them ...," is susceptible of no other reasonable construction.

*In re Yarn Processing Patent Validity Litig. (No. II)*, 602 F. Supp. 159, 169 (W.D.N.C. 1984).[5]

Consistent with this precedent, the Court finds that Marvell's unauthorized acts of manufacturing and selling the Accused Chips – which allegedly embody the '839 Patent – do not implicate the damages limitation aspect of § 287(a).  While these acts alone are insufficient to trigger the operation of the statute, some of Marvell's sales were to CMU's licensees which, in turn, sold the products further down the stream of commerce.  Additional discussion is necessary to resolve the parties' dispute as to whether this second level of sales in the chain of commerce – from Marvell's customer/CMU's licensee to third parties – brings § 287(a) into play in this case.

CMU contends that the Accused Chips did not need to be marked in compliance with § 287(a) because the chips were initially manufactured by the alleged infringer Marvell and its licensees who resold the chips were unaware that they contained patented articles.  (Docket No. 569).  CMU relies on *Tulip Computers* in support of this position. (*Id.*).  The facts of *Tulip Computers* are similar to the case at bar as Tulip charged Dell with patent infringement and Dell attempted to use the marking statute to avoid potential damages as a result of its sales of

---

[5]    The Court notes that the Federal Circuit cited *In re Yarn* as persuasive authority with respect to its construction of the "for or under" language, noting that:

> Both parties cite district court cases in support of their respective positions. These cases are not binding on us. However, we note with approval the cases relied on by Buckeye, particularly *In re Yarn Processing*, 602 F.Supp. 159, 169, 225 USPQ 765, 771-72 (W.D.N.C.1984) (section 287 applies to a nonmanufacturing patentee who has licensed or authorized others to produce or sell the patented article "regardless of the particular form [the] authorizations may take"), and *Butterfield v. Oculus Contact Lens Co.*, 332 F.Supp. 750, 761-62, 171 USPQ 527, 535 (N.D.Ill.1971), *aff'd* 177 USPQ 33, 1973 WL 19832 (7th Cir.1973) (section 287 applies where patentee makes a semi-finished contact lens and sells it to customers who finish off and sell the patented structure).

*Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 185 n.2 (Fed. Cir. 1994).

infringing products to Tulip's licensee, IBM.  *See Tulip Computers Int'l B.V. v. Dell Computer Corp.*, 262 F. Supp. 2d 358, 362 (D. Del. 2003).  *Tulip Computers*, however, is distinguishable because that case did not turn on the fact that the patented articles were manufactured by the alleged infringer but, instead, was resolved as a matter of law by the Court based on the restrictions on the scope of the license granted by Tulip to IBM.  *See Tulip Computers Int'l B.V.*, 262 F. Supp. 2d at 362  ("If IBM was not acting in accordance with its licensing obligations when executing the sales in question, then Tulip should not bear the consequences for the unauthorized activities of IBM and Dell.").

Judge Jordan, now of the Court of Appeals for the Third Circuit, ruled that the license in that case did not authorize the alleged infringing sales from Dell to IBM.  *See id.*  Judge Jordan looked to state law and Federal Circuit precedent to determine the scope of the license agreement and concluded that IBM's rights under the license were restricted.  *Id.*  The relevant portions of that agreement provided that:

- IBM was granted "have made" rights … only "when the specifications for such Grantee's [Tulip's] Licensed Products were created by Grantee [Tulip] (either solely or jointly with one or more third parties) ... [and] shall not apply to any products in the form manufactured or marketed by said other manufacturer prior to Grantee [Tulip] furnishing of said specifications."

- IBM was granted rights to "make ..., use, import, offer for sale and lease, sell and/or otherwise transfer Grantee's [Tulip's] Licensed Products" [which] applies only to "Grantee's Licensed Products."

*Tulip Computers*, 262 F. Supp. 2d at 366.  Given these restrictions set forth in the license, which limited IBM's rights to make, have made, use or sell only "Tulip's Licensed Products," the Court held that IBM was not acting pursuant to its license with Tulip when it resold the Dell-manufactured products to its customers because these products were not licensed by Tulip. *Id.* As

15

IBM's actions were taken outside the scope of the license, these actions could not be imputed to Tulip and therefore, § 287(a) did not apply.  *Id.*

In this Court's opinion, the license at issue in this case is very different from the comprehensive agreement carefully detailing the parties' rights in *Tulip Computers*.  As is discussed below, the rights granted by CMU to its licensees were broad in scope and did not include any restrictions which would render the sales of the Accused Chips by the licensees unauthorized.

The Associate Agreement provides that it is to be interpreted in accord with Pennsylvania law.  "Pennsylvania courts generally honor the intent of the contracting parties and enforce choice of law provisions in contracts executed by them." *Kruzits v. Okuma Mach. Tool, Inc.*, 40 F.3d 52, 55 (3d Cir.1994) (citing *Smith v. Commonwealth Nat. Bank*, 384 Pa. Super. 65, 557 A.2d 775, 777 (Pa. Super. Ct. 1989), *appeal denied*, 524 Pa. 610, 569 A.2d 1369 (1990)). Pennsylvania rules of contract interpretation require the court to "ascertain and give effect to the intent of the contracting parties." *Murphy v. Duquesne University Of The Holy Ghost*, 565 Pa. 571, 590-591, 777 A.2d 418 (Pa. 2001). Such intent is to be determined from reading the entire agreement as a whole and "when a writing is clear and unequivocal, its meaning must be determined by its contents alone." *Murphy*, 565 Pa. at 591, 777 A.2d 418 (citations omitted). If the terms of the agreement are unambiguous, the plain meaning of the terms of the agreement will be enforced. *Id.*  If the terms are ambiguous, the agreement will be construed against the drafter, CMU.  *See Gallagher v. Fidelcor, Inc.*, 441 Pa. Super. 223, 657 A.2d 31 (Pa. Super. Ct. 1995) (citation omitted).

The language in the Agreement granting rights to Seagate and the other licensees is very broad.[6]   "**The University shall grant to [Seagate]**, and all other Associates **a worldwide, irrevocable, royalty-free license**, **to make**, have made for their own use, or **sell the product of the Inventions.**" (Def. Ex. 6, *Associate Agreement* at § 2.b (emphasis added)).   The parties do not quarrel over the scope of this language.   However, the Court comments that the only potentially limiting term in this clause, "Inventions" is not specifically defined.   The preceding language provides that "[a]ll inventions, whether or not patentable, conceived of or first reduced to practice in the course of or under this Agreement by any Center personnel while engaged in the activities of the Center … shall become the property of the University."   *Id.*   The term is referred to in the remainder of § 2.b. in a similar fashion.   *Id.* ("research efforts in the Center have isolated a patentable Invention device, idea, etc."; "In the event that the University decides to offer licenses under said Inventions to third parties…"; "The Corporation shall defend, indemnify, and hold harmless the Center and Carnegie Mellon University against any loss, damage, claim or other charge that may result from the implementation of Center inventions…").   The plain meaning of invention is "a device, contrivance, or process originated after study and experiment." MERRIAM-WEBSTER'S COLLEGIATE DICTIONARY at 658 (11th ed. 2003).   Therefore, considering the agreement as a whole, and reading the clauses together, § 2.b. can only be read to mean that the licensees were granted the unrestrained right to sell products embodying the inventions created at the DSSC.   This interpretation is wholly consistent with our prior conclusion that the license operated to bar any claim of indirect infringement against Marvell resulting from Seagate's *use* of the patents.   *See CMU*, 2012 WL 3679540, at *5-6.   Unlike *Tulip*

---

[6]     The broad nature of the license dovetails with the stated purpose of the DSSC to "address research problems in data storage technology" through sharing research with entities interested in data storage technology in exchange for financial support from these entities for further research and other benefits set forth in the agreement.  (*See* Def. Ex. 6, *Associate Agreement* at 2).

*Computers*, the Associate Agreement contains no restrictions as to how the "sell" rights could be exercised or any prerequisites which must be accomplished prior to exercising such rights (other than paying the annual fees, sharing research, etc.).   Accordingly, *Tulip Computers* is distinguishable and will not be followed.

CMU does not dispute that: (1) the '839 Patent constitutes an invention under the license; (2) Seagate and its other licensees sold products to third parties including the Accused Chips which allegedly embody the '839 Patent; (3) it did not contractually require Seagate and its other licensees to mark inventions sold under the license in compliance with 35 U.S.C. § 287(a); and (4) Seagate and its other licensees did not mark their products.[7]  (*See* Docket Nos. 569; 591).

Considering the broad grant of rights contained in the license and these admissions by CMU, it is clear to the Court that § 287(a) applies in this case with respect to the '839 Patent. An authorized sale by a party under a valid license constitutes a sale "for or under" the patentee under § 287(a).  *See Amsted Indus.*, 24 F.3d at 185.  The sales by Seagate and the other licensees of products embodying the '839 Patent were authorized by the licenses granted to them by CMU. (*See* Def. Ex. 6, *Associate Agreement* at § 2.b.).  The licenses did not restrict them to selling only specific products authorized by CMU but provided that they could sell any product, without specifying how or when the product was made.  *Id.*  CMU also did not contractually require its licensees to mark any such products, *see Associate Agreement generally*, and in fact did not instruct any of its licensees to do so in this case.  Under § 287(a) and Federal Circuit law

---

[7]      CMU alleges that it cannot meet its burden to establish marking because its licensees had no knowledge of the fact that the Accused Chips included the patented methods.  This argument is of no moment.  Federal Circuit law is clear that an authorized sale by a licensee must be marked in accordance with § 287(a) in order for a patentee to recover damages for the entire period of infringement.  *See Amsted Indus.*, 24 F.3d at 185; *see also Tulip Computers*, 262 F. Supp. 2d at 362.  CMU granted its licensees an unrestricted right to use and sell products embodying the '839 Patent. (*See* Def. Ex. 6, *Associate Agreement* at § 2.b.).

interpreting same, the products sold by CMU's licensees were required to be marked in order for CMU to claim damages for the entire period of alleged infringement.[8]

### D.  Application of Federal Rules of Civil Procedure 26 and 37(c)(1)

Having now determined that § 287(a) is applicable in this case, the Court refers to the Federal Rules of Civil Procedure to determine if the rules were violated and appropriate sanctions for any such violations.

Rule 26(a) requires a party to make initial disclosures and to provide the opposing party with a copy or description of all documents in its possession that it may use to support its claims or defenses.  FED. R. CIV. P. 26(a)(1)(A)(ii).  Rule 26(e) sets forth a party's continuing obligation to supplement its initial disclosures and responses to discovery requests, if the initial disclosures or responses are incomplete or incorrect.  FED. R. CIV. P. 26(e).  Failure to abide by the disclosure requirements in these provisions is governed by Rule 37(c)(1), which provides that "[i]f a party fails to provide information ... as required by Rule 26(a) or (e), the party is not allowed to use that information ... to supply evidence … at a trial, unless the failure was substantially justified or is harmless."  FED. R. CIV. P. 37(c)(1).  Prior to excluding evidence, the United States Court of Appeals for the Third Circuit has held that a district court must consider:

> (1) the prejudice or surprise of the party against whom the excluded evidence would have been admitted;
>
> (2) the ability of the party to cure that prejudice;

---

[8]      CMU makes a number of policy-based arguments in support of its opposition to Marvell's motion.  (Docket No. 569).  Among them, CMU contends that granting the instant motion would run counter to the stated purposes of the statute, as articulated by the Federal Circuit, and that it would afford an alleged bad actor to avoid damages based on a technicality of a failure to mark.  (Id.).  The Court disagrees with both points.  As a general matter, patent holders have the right to exclude others from utilizing the patent.  By granting broad licenses to Seagate, et al. to sell products embodying the patents, without demanding compliance with 35 U.S.C. § 287, CMU did not protect its right to claim damages for the entire period of infringement under the statute.

(3) the extent to which allowing the evidence would disrupt the orderly and efficient trial of the case or other cases in the court; and,

(4) bad faith or wilfulness in failing to comply with a court order or discovery obligation.

*Nicholas v. Pennsylvania State University*, 227 F.3d 133, 148 (3d Cir. 2000).

The Court finds that CMU has violated Rules 26(a)(1)(ii) and 26(e) in conjunction with its failure to comply with 35 U.S.C. § 287(a). As we have already discussed, the burden lies with CMU to establish its licensees' compliance with § 287(a). *See Maxwell*, 86 F.3d at 1111-13. During discovery, CMU thus had a duty to disclose documents and other evidence supporting its licensees' compliance with § 287(a) as to the '839 Patent. FED. R. CIV. P. 26(a)(1)(A)(ii). It likewise was obligated to produce evidence as to any actual notice provided to Marvell of alleged infringement of the '839 Patent prior to the initiation of this lawsuit on March 6, 2009. *Id.*; 35 U.S.C. § 287(a). CMU presented no such evidence during the now-closed discovery period[9] and has not supplemented its discovery responses to amend its earlier position that it had no such evidence. FED. R. CIV. P. 26(e).

Despite its failure to present any evidence of compliance with § 287(a), CMU intends to introduce evidence of its alleged pre-suit damages with respect to the '839 Patent at trial. However, this pre-suit damages evidence is inadmissible without first establishing compliance with § 287(a) and CMU cannot meet this prerequisite without presenting evidence of compliance at trial and simultaneously violating Rules 26(a)(1)(ii) and 26(e). Given these circumstances, we hold that the introduction of the pre-suit damages evidence as to the '839 Patent would violate Rules 26(a)(1)(ii) and 26(e).

---

[9] The Court notes that this case was in discovery for more than two years and the parties' were granted numerous extensions to complete discovery. (*See* Docket Nos. 38, 240, 315, 335).

Weighing of the factors set forth in *Nicholas* counsels that the Court exclude from trial any evidence of CMU's compliance with § 287(a), actual notice of infringement to Marvell and pre-suit damages as to the '839 Patent under Rule 37(c)(1).  *See Nicholas*, 227 F.3d at 148. Although the Court does not find that CMU has acted willfully or in bad faith, the remaining three factors weigh in Marvell's favor.  To this end, Marvell would clearly be prejudiced if CMU were permitted to introduce the challenged damages evidence at trial because CMU cannot, as a matter of law, recover those damages.   CMU is unable to cure its discovery violations as discovery has closed and it has to this point presented no evidence to demonstrate that any products were marked by its licensees.  Finally, if the Court were to permit CMU to introduce this evidence at trial, Marvell will necessarily present additional objections and a Rule 50 motion in opposition, necessitating rulings by the Court and disrupting the orderly and efficient trial of this case.

## V.    CONCLUSION

Based on the foregoing, Marvell's Motion [520] is granted, in part, and denied, in part. Marvell's motion is granted to the extent that CMU will be barred from presenting any evidence of compliance with 35 U.S.C. § 287(a) as to the alleged infringement of the '839 Patent or of any pre-suit attempts at providing actual notice of infringement of the '839 Patent to Marvell.  CMU is likewise precluded from introducing evidence of damages as to the '839 Patent prior to its filing of this lawsuit on March 6, 2009.  Marvell's motion is denied to the extent that it seeks to limit damages as to the alleged infringement of the '180 Patent.  The Court further ORDERS that CMU submit a supplemental opinion on damages consistent with this Opinion by **November 13, 2012 at 12:00 p.m.**

*s/Nora Barry Fischer*
Nora Barry Fischer, U.S. District Judge

21

cc/ecf:  All counsel of record

Date:    November 2, 2012