IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARNEGIE MELLON UNIVERSITY,<br><br>Plaintiff,<br><br>vs.<br><br>MARVELL TECHNOLOGY GROUP, LTD. et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>) Civil Action No. 09-290<br>) Judge Nora Barry Fischer<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM ORDER

This patent infringement action is set to commence jury selection and trial on November 26, 2012. The parties have filed a number of motions in limine seeking pretrial rulings on the admissibility of certain evidence at trial. Presently pending before the Court is Defendants Marvell's "Motion *in Limine* No. D9 to Exclude Reference to the Entire Price, Profit, and/or Margin Associated with Any One or More Accused Chips'" (Docket No. 514). Marvell argues that the reference to the overall price, profit or margin of the accused chips is irrelevant and highly prejudicial in light of the recent decision, *LaserDynamics, Inc. v Quanta Computer, Inc.*, 694 F.3d 51, (Fed. Cir. 2012), (Docket No. 515). Plaintiff Carnegie Mellon University ("CMU") opposes this motion, arguing that *LaserDynamics* does not affect its expert, Catherine Lawton's royalty calculation because she never based her calculation on the entire market value, with which the *LaserDynamics* Court found issue. (Docket No. 567). The Court heard argument on the motion during a hearing on October 17 and 18, 2012. (Docket Nos. 579, 590, 591). For the following reasons, Marvell's motion [514] is DENIED.

I.     BACKGROUND[1]

a. *Factual Summary*

This is a patent infringement action in which CMU alleges that Marvell has infringed two of its patents, U.S. Patent Nos. 6,201,839 (the "'839 Patent") and 6,438,180 (the "'180 Patent") (collectively, the "CMU Patents"). The patents-in-suit are generally directed to sequence detection in high density magnetic recording devices, and more specifically, to high density magnetic recording sequence detectors. *See* '839 Patent 1:20-23. Both patents claim priority to a May 9, 1997 provisional application. *See* '839 Patent; '180 Patent. The '180 Patent is a continuation-in-part of the '839 Patent. *See* '180 Patent.

Although much of the scope of Marvell's alleged use are still disputed, CMU generally contends that Marvell used the accused technology throughout its so-called "sales cycle."[2] The sales cycle involves testing of both computer programs and manufactured chips. If a sales cycle is successful, it culminates with a "design win," whereby Marvell makes mass sales of chips that allegedly perform the patented methods. CMU accuses Marvell of infringement during this design and testing stage.

CMU thus seeks a reasonable royalty for Marvell's alleged infringement throughout this process. To that end, CMU proffers in part Catharine Lawton as its damages expert, who has produced an extensive report. (*See* Docket No. 367-2).[3] The underlying theme of Ms. Lawton's report is that Marvell considered CMU's technology "must have." (*See id.* at 14). After finding no established royalty, Ms. Lawton engaged in an extremely detailed *Georgia-Pacific* analysis in

---

[1] As the parties are well aware of the factual and procedural background of this case, the Court will limit its discussion to the background necessary for the resolution of the current motion. For further detail regarding same, see Docket Nos. 306, 337, and 441.
[2] The Court only briefly summarizes the alleged sales cycle here. For further detail, *see* Docket No. 441.
[3] The parties are well aware of Ms. Lawton's qualifications and background; for further detail regarding same, see Docket Nos. 367-2 and 451.

order to reach her opinion on a reasonable royalty for the case. (*See* Docket No. 449 at 4-6). (Docket No. 367-2 at 368-540). All told, she concludes that a running royalty of $0.50 per unit should be applied to Marvell's sales of the Accused Chips at issue. (*Id.*).

### b. *Motion for Summary Judgment on Ms. Lawton's testimony*

Marvell previously moved for Summary Judgment to exclude the proffered expert testimony of Ms. Lawton (Docket No. 367). After consideration of opposition briefs (Docket No. 395), and oral arguments presented at the hearing on July 10 and 11, 2012 (Docket No. 433), the Court granted, in part, and denied, in part, Marvell's motion. (Docket No. 451). That challenge was based on four theories: (1) Ms. Lawton's purported use of the entire market value rule; (2) her apportionment analysis; (3) reliance on an irrelevant PowerPoint slide; (4) a "kitchen sink" of alleged indicia of unreliability. (*Id.*) The first theory is reexamined herein.

The Court found that Ms. Lawton had not applied the entire market value rule simply by referencing Marvell's total operating profit on a per-unit basis. (*Id.* at 7). Instead, she had used the average operating profit as a starting point for her apportionment analysis which was justified as long as the testimony did not purport to show how "reasonable a royalty was". (*Id.*); (*See* Docket No. 367-2 at 505); (*See Uniloc USA, Inc. v. Microsoft Corp.,* 632 F.3d 1292, 1319 (Fed. Cir. 2011)). In fact, Ms. Lawton's deposition testimony demonstrates that some reference to revenues, margins and values is necessary to formulate and support a reasonable royalty. (*See* Docket No. 396-6 Ex. 14 at 83-86). The Court thus ordered the parties to meet and confer to submit a proposed limiting instruction in accord with this Court's opinion and with *Uniloc*. (Docket No. 451 at 8).

## II. LEGAL STANDARD

Under Rule 702 of the Federal Rules of Evidence, a court may permit an expert to offer opinion testimony only if such testimony "will assist the trier of fact" and "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." FED.R.EVID. 702. "The district court acts as a gatekeeper tasked with the inquiry into whether expert testimony is 'not only relevant, but reliable.'" *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F.Supp.2d 687, 689 (E.D. Tex. 2010) (Rader, J.) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 578, 589 (1993)). Testimony that does not meet the standard set forth in Rule 702 must be excluded.

In a patent infringement action, a successful plaintiff is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284 (2006). Two forms of compensation are authorized by § 284: lost profits and reasonable royalty damages. *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). Because CMU does not manufacture or sell products that practice the claimed methods, it is not entitled to lost profits.

"A reasonable royalty contemplates a hypothetical negotiation between the patentee and the infringer at a time before the infringement began." *Red Hat*, 705 F.Supp.2d at 689 (citing *Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1078 (Fed. Cir. 1983)). The hypothetical negotiation presumes that both the patentee and the accused infringer are willing parties to the negotiation, and also assumes that the patent was valid, enforceable, and infringed. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F.Supp. 1116, 1120 (S.D.N.Y. 1970). The *Georgia-*

*Pacific* case sets out a series of factors that may be relevant to the analysis of a reasonable royalty. *Id*.

The entire market value rule requires a patentee to "prove that the patent-related feature is the basis for customer demand." *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1336 (Fed. Cir. 2009) (internal quotations omitted). This does not mean that the patent-related feature is the *only* feature, but simply that it is the one that drives demand. *TWM Mfg. Co., Inc. v. Dura Corp.*, 789 F.2d 895, 901 (Fed. Cir. 1986) (The entire market value rule allows recovery "based on the value of an entire apparatus containing several features, when the feature patented constitutes the basis for customer demand."). Put another way, the entire market value rule applies when the patented feature "substantially create[s] the value of the component parts." *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1318 (Fed. Cir. 2011).

*LaserDynamics Inc. v. Quanta Computers*, 694 F.3d 51, 67 Fed. Cir. 2012) further confirmed that the entire market value rule is a narrow exception to the general rule that royalties are based not on the entire product, but instead on the "smallest salable patent-practicing unit." In *LaserDynamics*, the Plaintiff's expert had calculated the royalty rate for an optical disk drive ("ODD") based on the total sales of laptops without presenting any evidence to prove that the ODD drove the sales of the laptop or that there was a need to base the rate on that figure. *Id*. at 68-69. "If it can be shown that the patented feature drives the demand for an entire multi-component product, a patentee may be awarded damages as a percentage of revenues or profits attributable to the entire product." (*Id*. at 67) The Court in *LaserDynamics,* disapproved the use of the total market value rule, when total values "only served to make a patentee's proffered damages amount appear modest by comparison, and to artificially inflate the jury's damages calculation." (*Id*. at 68) (quoting *Uniloc,* 632 F.3d at 1319–20)

5

### III. DISCUSSION

This Court previously passed upon Catherine Lawton's damages testimony in its Summary Judgment decision on August 24, 2012. (Docket No. 451), stating

> "simple reference to average operating profits for the purpose of showing a starting point is justified, so long as the testimony does not lapse into statements that tend to show how "reasonable" a royalty is when compared to a much larger amount. *See Uniloc*, 632 F.3d at 1319. Ms. Lawton's testimony at her deposition effectively shows that some reference to revenues, margins and values is necessary to formulate a reasonable royalty. (*See* Docket No. 396-6 Ex. 14 at 83-86). Hence, Ms. Lawton's testimony will not be excluded on the grounds that she used the entire market value rule, because she has not done so.
>
> The [proposed limiting] instruction shall ensure that Ms. Lawton's testimony does not go into total revenue, total profit, or total margin ("the total numbers") of the accused chips, except to start her analysis. Thereafter, she may refer to the total number of sales, total apportioned revenue, average price per chip, operating profit per chip, and apportioned profit per chip in making her calculations.

(Docket No. 451 at 7-8)

Marvell now asks the Court to in effect reexamine its decision given *LaserDynamics* which was decided on August 30, 2012, six (6) days after this Court's Summary Judgment decision. (Docket 515).[4] It argues that since there is no evidence of record that the patented method drives customer demand or creates the value of the relevant components, that all references to entire price, profit, and/or margin must be excluded. (Docket No. 367, 368 at 6; 587 Ex. 15).

CMU contends the decision in *LaserDynamics* affirmed the reasoning in *Uniloc* that this Court relied on to make its Summary Judgment ruling. (Docket No. 567); (694 F.3d at 67). As

---

[4] Pursuant to the Court's Practices and Procedures "[a]ny Motions for reconsideration shall be filed within seven (7) days". *See Practices and Procedures of Judge Nora Barry Fischer, Effective March 23, 2010, available at*: http://www.pawd.uscourts.gov/Documents/Judge/fischer_pp.pdf. Marvell never filed for reconsideration on this Summary Judgment decision. Additionally counsel has a duty of candor to the Court pursuant to Rule 3.3 of the Pennsylvania Rules of Professional Conduct. PA. RULES OF PROF'L CONDUCT R. 3.3 (2012). This duty of candor requires counsel to "recognize the existence of pertinent legal authorities," which includes advising the Court of changes in law. *See id.* at cmt. 4. To that end, counsel should have made the Court promptly aware of the decision in *LaserDynamics*.

both parties and the Court have recognized, Ms. Lawton does not use the entire market value rule to calculate her royalty rate. (Docket Nos. 515, 567, 591). Yet, Marvell argues that any mention of any figures related to entire price, profit or margin, and/or any aggregation of same is also excluded by *LaserDynamics*. (Docket No. 515). In doing so, Marvell overlooks the facts that *LaserDynamics* rejected the calculation of a royalty based on the total market value rule, when there was no evidence to show that the initial figures had any "demonstrated correlation to the value of the patented feature alone". 694 F.3d at 68. The Court there found that Plaintiff's expert had offered "no evidence that this feature alone motivates consumers to purchase a laptop computer, such that the value of the entire computer can be attributed to the patented disc discrimination method" and that his apportionment rate "appear[ed] to have been plucked out of thin air…with no credible economic analysis to support that conclusion". 694 F.3d at 69.

Here there is purported evidence that the patents-in-suit are considered "must have" technology. (*See* Docket Nos. 367-2 at 14; 591 at 113). *LaserDynamics* therefore supports the Court's Summary Judgment decision that *Uniloc* does not "foreclose[e] the use of these figures, and indeed, a number of them are necessary for [Ms. Lawton] to testify coherently on the issue of damages". (Docket No. 451). As noted some reference to revenues, margins and values is necessary to explain and formulate a reasonable royalty. (*See* Docket No. 396-6 Ex. 14 at 83-86). Still, a reasonably royalty analysis "'requires a court to hypothesize, not to speculate'" and this Court must "'carefully tie proof of damages to the claimed invention's footprint in the market place'". *LaserDynamics,* 694 F.3d at 67 (quoting *RedNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010)). To that end, CMU may offer evidence, including these figures, to calculate their reasonably royalty only as long as the Court finds such evidence "reliable and

tangible, and not conjectural or speculative" at trial.  *LaserDynamics,* 694 F.3d at 67 (citing *Garretson v. Clark*, 111 US 120, 121 (1886)).

Accordingly, to the extent that *LaserDynamics* applies to this case, the Court's earlier ruling is unchanged.  Once CMU enters into evidence its basis for the argument that the patents-in-suit are "must have" technology and this Court finds such evidence sufficiently reliable, then Ms. Lawton can provide her expert analysis.  In doing so, Ms. Lawton's testimony shall only refer to total revenue, total profit, or total margin ("the total numbers") of the accused chips to start her analysis. (Docket No. 451)  Thereafter, she may refer to the total number of sales, total apportioned revenue, average price per chip, operating profit per chip, and apportioned profit per chip in making her calculations. (*Id.*)  Marvell's motion (Docket No. 514) is DENIED and as previously instructed by the Court, Counsel for the parties are HEREBY ORDERED to provide joint jury instructions in accord with this Court's opinions on or before **November 9, 2012 at 5:00p.m**.

*s/ Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Date: November 5, 2012

cc/ecf:  All counsel of record.