# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARNEGIE MELLON UNIVERSITY,     )
                                            )
             Plaintiff,           )
                                            )
        vs.                  )     Civil Action No. 09-290
                                            )     Judge Nora Barry Fischer
MARVELL TECHNOLOGY GROUP, LTD.   )
et al.,                                  )
                                            )
            Defendants.     )

## <u>MEMORANDUM ORDER</u>

This patent infringement action is set to commence jury selection and trial on November 26, 2012. The parties have filed a number of motions in limine seeking pretrial rulings on the admissibility of certain evidence at trial. Presently pending before the Court is Defendant Marvell's "Motion *in Limine* No. D12 To Preclude CMU From Introducing Evidence and Argument Regarding Any Compensatory Damages Beyond a Reasonably Royalty." (Docket No. 523). Through this motion, Marvell seeks an order excluding Plaintiff CMU from presenting "evidence and argument regarding any purported 'harms' or 'damages' other than the loss of the reasonable royalty that would have resulted from the hypothetical negotiation for a license to the patents-in-suit." (Docket No. 523-1). Marvell contends that the evidence of such harms and consequential damages are not relevant to the calculation of the reasonable royalty in this case and are otherwise not supported by evidence in the record. (Docket No. 524). CMU opposes the motion, arguing that such evidence as to the harms suffered by CMU is relevant to the calculation of the reasonable royalty as it would inform the hypothetical negotiation in this case. (Docket No. 570). CMU further maintains that such evidence is necessary to rebut Marvell's claims that the damages sought by CMU are unreasonable. (*Id.*). The Court heard

1

argument on the Motion during its hearing on October 17, 2012.  (Docket Nos. 579, 590).  Upon

consideration of the parties' positions, Marvell's motion [523] is granted, in part and denied, in

part.

In so holding, the Court notes the following.  The instant motion surrounds the disputed

factual predicate concerning the calculation of the reasonable royalty[1] in this case by CMU's

expert, Catharine Lawton.  Ms. Lawton has opined that a hypothetical negotiation involving

Marvell and CMU would have resulted in a reasonable royalty of $0.50 for each sale of the

Accused Chips by Marvell from the first date of infringement (March 6, 2003) to the present.

(Docket No. 461 at 10).  In her expert report, Ms. Lawton suggests that Marvell's infringement

(and failure to take a license and pay CMU said royalty) caused the following "harms" to CMU.

> • "CMU has been deprived of a significant source of revenue that
> would have provided it with the independence to continue to
> pursue exploratory research projects";
>
> • "CMU's achievements did not receive proper recognition,
> CMU's reputation and standing were diminished, and this has had
> a direct impact on its access to money and resources";
>
> • "CMU has had less funding available to build and maintain state-
> of-the-art facilities";
>
> • "The value of CMU's technology achievements has been
> diminished and so has CMU's reputation and standing in the
> technical community, which adversely impacts CMU's ability to
> attract and retain top faculty scientists" and "the best and brightest
> students";
>
> • "CMU has had less money, and as a result, CMU's capacity to
> fulfill its mission"—by "contribut[ing] to society and industry"—
> "has been diminished";
>
> • CMU was harmed by "delayed and lost opportunities" that
> cannot be "recaptured"; and

---

[1]     As CMU does not manufacture any products, it is not seeking lost profits damages in this
case.  (*See* Docket No. 570).

> • "CMU was forced to litigation to enforce its patents and, as a
> result, administrative and faculty resources and millions of dollars
> are diverted away from research and into litigation[…] costs, and
> CMU's reputation has been further impugned."

(Def. Ex. A at 377-79).   The parties agree that Ms. Lawton has not quantified any of these
alleged harms in her extensive expert report.   (*See* Docket Nos. 524, 570).   Marvell does not
challenge her calculation of the $0.50 royalty through this motion, but maintains that none of the
alleged "harms" listed above are relevant to the calculation of the reasonable royalty and, to the
extent that Ms. Lawton relies on them for same, that they lack a factual foundation.   (Docket No.
524).   CMU counters that these facts are relevant as they "inform the analysis" of the reasonable
royalty calculation and are otherwise admissible to counter the claims of Marvell's expert,
Creighton Hoffman, that CMU's damages are unreasonable because their claim would "double"
CMU's endowment.   (Docket No. 570).   At the motion hearing, Marvell's counsel suggested that
it would not use any opinion evidence regarding CMU's endowment at trial, if the Court were to
conclude that the challenged evidence is admissible only as rebuttal to Hoffman's opinions.
(Docket No. 590 at 119 ("we have no problem if the Court takes that out [the opinion evidence
concerning CMU's endowment] in the context of excluding the information that we seek to have
excluded on this motion.")).

> "A reasonable royalty contemplates a hypothetical negotiation between the patentee and
the infringer at a time before the infringement began." *IP Innovation L.L.C. v. Red Hat, Inc.*, 705
F.Supp.2d 687, 689 (E.D. Tex. 2010) (Rader, J.) (citing *Hanson v. Alpine Valley Ski Area, Inc.*,
718 F.2d 1075, 1078 (Fed. Cir. 1983)). The hypothetical negotiation presumes that both the
patentee and the accused infringer are willing parties to the negotiation, and also assumes that the
patent was valid, enforceable, and infringed. *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318

F.Supp. 1116, 1120 (S.D.N.Y. 1970). The *Georgia-Pacific* case sets out a series of factors that may be relevant to the analysis of a reasonable royalty.[2] *Id.* "The Federal Circuit 'requires sound economic proof of the nature of the market and likely outcomes with infringement factored out of the economic picture' in all damages calculations." *Red Hat, Inc.*, 705 F. Supp. 2d at 689 (quoting *Grain Processing Corp. v. Am. Maize-Prods. Co.*, 185 F.3d 1341, 1350 (Fed.Cir. 1999)). "Although some approximation is permitted in calculating the reasonable royalty, the Federal Circuit requires 'sound economic and factual predicates' for that analysis." *Id.* (quoting *Riles v. Shell Exploration & Production Co.*, 298 F.3d 1302, 1311 (Fed.Cir. 2002) (citation omitted)).

At the outset, the Court notes that CMU has not specifically addressed each of the challenged "harms" listed above in its response or at the motion hearing. (*See* Docket Nos. 570, 590). CMU has focused its efforts on establishing that information pertaining to the state of economic affairs at the University and the DSSC at the time of the hypothetical negotiation, including that the National Science Foundation grant was expiring, are facts which would bear on the hypothetical negotiation. (Docket No. 570 at 4 (citing *Rodime PLC v. Seagate Technology, Inc.*, 174 F.3d 1294, 1307 (Fed. Cir. 1999)). CMU also believes that "reputational harm" is an appropriate consideration for the jury in the context of the hypothetical negotiation. (*Id.* at 5 (citing *Monsanto Co. v. McFarling*, 488 F.3d 973, 980 (Fed. Cir. 2007)).

Given these arguments, the Court agrees with Marvell that CMU has not established any factual predicate to support Ms. Lawton's conclusions that Marvell's infringement: adversely affects its ability to attract top faculty or students; delayed and caused certain unspecified "lost

---

[2]     CMU does not argue that the challenged evidence is used by Lawton in her analysis of any of the 15 *Georgia-Pacific* factors. (*See* Docket Nos. 570, 590). Accordingly, the Court will not restate them here.

opportunities" which CMU was unable to pursue; or diminished CMU's capacity to fulfill its mission by contributing to society and industry.  (Docket No. 524).  In addition, CMU has failed to convince the Court that the administrative burdens of litigation have caused any harm or damages which should be considered in the context of the hypothetical negotiation (or how these post-infringement costs could have possibly been considered by CMU at the time of the hypothetical negotiation).  Without any factual support, these supposed "harms" are speculative, not relevant, *see* FED. R. EVID. 401,[3] and, if presented at trial, would complicate the issues and confuse the jury, *see* FED. R. EVID. 403.[4]

Regarding the evidence concerning the lack of funding from NSF, the Court finds that the state of economic affairs at CMU and the DSSC at the time of the negotiation may be relevant to CMU's position during the hypothetical negotiation.  Indeed, the Federal Circuit has recognized that such evidence may be relevant to the price of the reasonable royalty.  *See Rodime*, 174 F.3d at 1308 ("The condition of Rodime's business at the time of such a hypothetical negotiation with Seagate may have affected the outcome of those negotiations. If, for example, Rodime faced imminent bankruptcy (as borne out by later events), Rodime may have factored that consideration into the royalty it sought.").  However, the Court agrees with Marvell that how CMU would have spent potential funds from a hypothetical license to Marvell, i.e., by reinvesting in human capital, real estate projects, or marketing directed toward prospective faculty, staff, or additional members of the DSSC, is not relevant to the hypothetical negotiation.

---

[3]     Rule 401 provides that "relevant evidence" means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  FED. R. EVID. 401

[4]     Rule 403 provides that "the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  FED. R. EVID. 403

Such facts would not bear on damages available under a reasonable royalty analysis but, rather, would potentially support a claim for lost profits.[5]  *Id.*  Therefore, Marvell's motion will be denied to the extent that it seeks to exclude evidence surrounding the economic circumstances of CMU and the DSSC at the time of the hypothetical negotiation; but, it will be granted to the extent that it seeks to exclude the prospective investment opportunities or potential opportunity costs as a result of Marvell's alleged infringement.

The Court will likewise grant Marvell's motion to exclude CMU's references to the alleged "reputation harm" caused by Marvell's infringement.  CMU relies on the decision in *Monsanto Co. v. McFarling*, 488 F.3d 973 (Fed. Cir. 2007) for the proposition that "consequent reputation harm" is a qualitative factor relevant to the hypothetical negotiation.  The Court disagrees with CMU's reading of *Monsato*.  In that case, the Federal Circuit did not set forth a bright line rule that "reputation harm" is always relevant to the hypothetical negotiation but merely commented that the harm to Monsato's reputation was relevant based on the facts and circumstances of that case.  *Id.* at 979.  This Court finds that the facts of *Monsanto* are distinguishable from this case because Monsanto was a manufacturer of patented seeds and relied on established licenses with farmers in its case against McFarling, a farmer who allegedly used the patented seeds in violation of a license agreement which required him to destroy the

---

[5]       The Court further notes that Ms. Lawton also opines that it is "**highly probable** that CMU itself, including the DSSC, would be different had Marvell taken a license in March 2001 to the Patents-in-Suit and had CMU been able to achieve the value of its licensing program and had the benefit of this direct financial support over the past decade, and CMU would have factored that consideration into the royalty it sought."  (Def. Ex. A at 380 of 541 (emphasis added)).  In this Court's estimation, even if the prospective harm evidence was relevant and admissible, it would be excluded because this opinion is speculative and an opinion that certain facts are "highly probable" is not reliable because it is not made with a reasonable degree of accounting certainty sufficient to present it to a jury.  *See* FED. R. EVID. 702; *see also Red Hat, Inc.*, 705 F. Supp. 2d at 689 (expert testimony must be relevant and reliable; otherwise, it must be excluded).

seeds at the conclusion of a harvest. *Id.* at 976. The Federal Circuit commented that the consequent reputational harm to Monsanto caused by McFarling's infringement derived from McFarling's planting of the patented seeds in subsequent years without first renewing his license to use them. *Id.* at 979. The Court noted that Monsanto's experts believed that this action by McFarling damaged Monstanto's reputation among its other farmer-licensees which dutifully followed the license and destroyed the seeds at the conclusion of each year's harvest. *Id.* This holding has no application to this case as CMU does not manufacture the Accused Chips and is not relying on its licenses to establish the reasonable royalty.

In addition, even if CMU had properly construed the decision in *Monsanto*, there is no evidence in the record supporting the contention that CMU's reputation has been diminished in any way. In its amended pretrial statement, CMU states that it is "one of the preeminent universities in the world" (Docket No. 461 at 3); as such, CMU must present actual evidence before claiming that its reputation has been damaged, through its expert or otherwise. For these reasons, the Court will grant Marvell's motion to exclude the evidence of alleged damage to CMU's reputation and standing in the university community as such evidence is not relevant to the hypothetical negotiation, *see* FED. R. EVID. 401 and, if presented at trial, will only tend to confuse the issues and mislead the jury, *see* FED. R. EVID. 403.

The final point of contention between the parties concerns the potential use of the "harm" evidence to counter Marvell's position that CMU's damages are unreasonable by pointing out that its damages case is twice the size of its endowment. (Docket Nos. 524, 570). CMU has not filed a corresponding motion in limine to exclude Marvell from presenting this evidence at trial (*see* Civ. A. No. 09-290, Docket Report), and Marvell's counsel has proffered that it will not introduce such evidence as trial in order to prevent CMU from possibly putting forth the "harm"

7

evidence.  (Docket No. 590 at 119).  It is thus clear to the Court that any ruling on these issues must be deferred until trial as the parties' arguments are contingent on the evidence to be presented by Marvell in defense of this case.

For these reasons,

IT IS HEREBY ORDERED that Marvell's Motion [523] is granted, in part, and denied in part.

IT IS FURTHER ORDERED that Marvell's Motion is granted to the extent that CMU is precluded from introducing evidence or argument at trial of the prospective harms to CMU (as set forth in pages 377-79 of Ms. Lawton's expert report) as a result of the alleged failure of Marvell to enter into a license for the patents-in-suit; and,

IT IS FURTHER ORDERED that Marvell's Motion is denied to the extent that it seeks a pretrial order precluding all evidence of the economic circumstances of CMU and the DSSC at the time of the hypothetical negotiation.


_s/ Nora Barry Fischer_
Nora Barry Fischer
U.S. District Judge

Date:   November 6, 2012

cc/ecf:  All counsel of record.