IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARNEGIE MELLON UNIVERSITY,<br><br>Plaintiff,<br><br>vs.<br><br>MARVELL TECHNOLOGY GROUP, LTD. et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)   Civil Action No. 09-290<br>)   Judge Nora Barry Fischer<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM ORDER

Jury selection in this patent infringement action commenced on November 26, 2012. Presently before the Court are Marvell's "Emergency Motion to Strike CMU's Attempt to Include Noninfringing Sales of Chips that are Never Used in the U.S. in the Damages Case it Intends to Present to the Jury" and its Brief in Support, filed November 24, 2012.[1] (Docket Nos. 656, 663). CMU opposes this motion and filed a "Preliminary Response in Opposition" and a further "Response in Opposition". (Docket Nos. 658, 665). The Court heard argument on November 26, 2012. (Docket No. 666). In accord with the Court's ruling on the record and for the following reasons, Marvell's motion [656] is DENIED.

Throughout this case, CMU alleges that Marvell has infringed two of its patents, U.S. Patent Nos. 6,201,839 (the "'839 Patent") and 6,438,180 (the "'180 Patent") (collectively, the "CMU Patents").[2] The patents-in-suit are generally directed to sequence detection in high density magnetic recording devices, and more specifically, to high density magnetic recording

---

[1] November 24, 2012 was the Saturday of Thanksgiving weekend as well. (Docket No. 656).

[2] As the parties are well aware of the factual and procedural background of this case, the Court will limit its discussion to the background necessary for the resolution of the current motion. For further detail regarding same, *see e.g.* Docket Nos. 306, 337, and 441.

1

sequence detectors. *See* '839 Patent 1:20-23. Both patents claim priority to a May 9, 1997 provisional application. *See* '839 Patent; '180 Patent. The '180 Patent is a continuation-in-part of the '839 Patent. *See* '180 Patent. As previously discussed in prior briefings and opinions, CMU intends to prove that Marvell produces read channel chips that perform the patented method when used and ultimately sold through an extensive sales cycle. (Docket Nos. 441, 665).[3] This sales cycle involves alleged infringement when Marvell's chips are used in the United States to secure a "design win", i.e. when a customer decides to use Marvell's design for chips the customer will purchase. (Docket Nos. 441, 665). CMU proffers that this sales cycle is the "but for cause"[4] of Marvell's sales of Accused Chips, of which a subset is used within the United States. (*Id.*) CMU seeks damages, as calculated by a reasonable royalty, for Marvell's alleged infringement throughout this sales cycle. (*Id.*).[5]

Marvell's current "emergency" motion addresses potential damages as to the Accused Chips sold by Marvell outside the United States.[6] (Docket No. 657). This issue has previously been dealt with in relation to Marvell's Motion for Partial Summary Judgment with Respect to Extraterritorial Conduct, at which time, after extensive briefing and argument on the issue, the Court denied Marvell's motion. (Docket Nos. 357, 428, 441). Marvell acknowledges the

---

[3] For a more detailed sales cycle description see Docket No. 441. Again as both parties are well aware of facts, the Court will not repeat the full details here.

[4] Cause in fact, or "but for" causation, requires proof that the alleged injury would not have occurred but for the [negligent] conduct of the defendant. *Galullo v. Fed. Exp. Corp.,* 937 F. Supp. 392, 395 (E.D. Pa. 1996); *Robertson v. Allied Signal, Inc.,* 914 F.2d 360, 366 (3d Cir.1990); *Corrigan v. Methodist Hosp.,* 234 F. Supp. 2d 494, 504 (E.D. Pa. 2002) aff'd, 107 F. App'x 269 (3d Cir. 2004). Marvell argues that neither the statute nor the relevant patent case law call for "but for" causation. (Docket No. 663).

[5] The Court has already ruled that CMU's expert, Catherine Lawton is entitled to opine on a reasonably royalty for the alleged infringement. (Docket Nos. 451, 604, 607).

[6] The location of certain chips sales is still a factual dispute. *See* Docket Nos. 441, 465.

Court's prior decision but now states that "given the additional information and arguments at this stage of the case…the Court should revisit its prior ruling to prevent the manifest injustice that would result were the jury to find for CMU and reach a verdict on damages that is unsupported by law." (Docket No. 663 at FN 1). CMU argues that Marvell's motion is procedurally improper and otherwise without merit. (Docket Nos. 658, 665, 666)

The Court agreed with CMU that Marvell's "emergency" motion, is, in essence, a Motion for Reconsideration of the Court's August 24, 2012 Summary Judgment Opinion. (Docket No. 441). This motion is untimely pursuant to the Court's Practices and Procedures as "[a]ny Motions for reconsideration shall be filed within seven (7) days". *See Practices and Procedures of Judge Nora Barry Fischer, Effective March 23, 2010, available at*: http://www.pawd.uscourts.gov/Documents/Judge/fischer_pp.pdf. Marvell never filed for reconsideration on this decision. Nor did Marvell move in limine on the issue before the Court.[7]

Even foregoing Marvell's lack of timeliness, in the Third Circuit, motions for reconsideration are granted sparingly "[b]ecause federal courts have a strong interest in finality of judgments." *Jacobs v. Bayha*, Civ. A. No. 07-237, 2011 WL 1044638, at *2 (W.D.Pa. Mar. 18, 2011). "Because of the interest in finality, at least at the district court level … the parties are not free to relitigate issues the court has already decided." *Williams v. City of Pittsburgh*, 32 F.Supp.2d 236, 238 (W.D.Pa.1998) (citing *Rottmund v. Continental Assurance Co.*, 813 F.Supp. 1104, 1107 (E.D.Pa.1992)). The purpose of a motion for reconsideration is "'to correct manifest errors of law or fact or to present newly discovered evidence.'" *Max's Seafood Café v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (quoting *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). A Court may

---

[7] Motions in Limine were due September 24, 2012, arguments were held on October 17 and 18, 2012, and the Court's Rulings were handed down in the first week of November 2012. (Docket No. 315, 579, 590, 591, 595, 596, 601, 602, 604, 605, 607-614)

grant a motion for reconsideration if the moving party shows: (1) an intervening change in the controlling law; (2) the availability of new evidence which was not available when the court issued its order; or (3) the need to correct a clear error of law or fact or to prevent a manifest injustice. *Max's Seafood Café*, 176 F.3d at 677 (citing *North River Ins. Co. v. Cigna Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995)).

Marvell's motion seems to rely on the third prong of the reconsideration standard. However, only two new cases have been submitted by Marvell that were not previously submitted to the Court in considering the potential for summary judgment. Both are nonbinding district court cases that are nearly twenty years old.[8] (Docket No. 663 at 16-17). The Court finds that neither decision is so persuasive as to undercut its Summary Judgment decision. Secondly, there is no "new evidence" which was not available earlier to the Court. In large measure, CMU supports its damages case with fact witnesses such as Bill Brennan, formerly with Marvell, and its experts Dr. Christopher Bajorek and Catherine Lawton, whose reports were submitted a year ago.[9] (*See* Docket Nos. 315, 367-2). Further, financial information concerning Marvell's sales of chips has been fully discovered and updated, including most recently a supplementation thirty (30) days before trial. (Docket No. 315, 402).[10] Despite same, two days before the start of trial, Marvell's trial team attempted to block CMU's use of Marvell sales information provided during the lengthy discovery in this case. Hence this "emergency" arose. (Docket No. 656).

---

[8] *Atlantic Thermoplastics Co., Inc. v. Faytex Corp.*, 5 F.3d 1477, 28 U.S.P.Q. 2d 1343 (Fed. Cir. 1993); *Maxwell v. J. Baker, Inc.*, 875 F.Supp. 1371, 1388 (D. Minn. 1995).

[9] Ms. Lawton submitted her first update to her report on September 10, 2012, her second update on November 13, 2012 and her first supplement on November 13, 2012. (Docket No. 633). Expert depositions were completed by April 2, 2012. (Docket No. 315)

[10] The first round of these financial submissions was turned over to CMU, at the latest, at the end of fact discovery nearly a year ago on December 30, 2011. (Docket No. 315).

The Court has reviewed all the briefs and argument in this case, both from the earlier Summary Judgment proceedings and the proceedings presently before the Court. In addition the Court has reviewed all of the cases cited by both parties, and finds nothing which undermines its previous ruling. Admittedly, there is no case exactly on point. On the other hand, CMU has put forth sufficient facts to support its theory, albeit novel.[11] CMU intends to prove that the alleged infringing method is used during Marvell's sales cycle, which is performed here in the United States, where both its engineers and customers are located. (Docket No. 665). CMU seeks damages for this sales cycle infringement by claiming a reasonably royalty rate on all of the chips that are produced during this sales cycle and purchased based on the result of said cycle.[12] (*Id.*) In this Court's view, one of the simplest ways to determine the value of an infringing use of a patented method during research is to ascertain how many sales were made based on that infringing use. (Docket No. 441); *see Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009).[13] Indeed, sales which arise *only* due to infringement, as in CMU's

---

[11] Counsel can argue to advance the law. The Pennsylvania Rules of Professional Conduct have been adopted by this Court. *See* W.D.Pa.LR. 83.3.1(B). "The law, both procedural and substantive, establishes the limits within which an advocate may proceed. However, the law is not always clear and never is static. Accordingly, in determining the proper scope of advocacy, account must be taken of the law's ambiguities and potential for change." Rules of Prof. Conduct Rule 3.1.Explanatory Comment.

[12] To be clear, CMU does not seek damages from alleged infringement of the Accused Chips that are never used in the United States, because the Court has held the extra-territorial sales are not infringing (Docket No. 441), it seek damages on the infringement from the U.S. based sales cycle, and has chosen to quantify these damages by applying a per chip royalty rate on all Accused Chips produced under the sales cycle. (*Id.*). Marvell will have a full opportunity at trial to argue that this quantification is unreasonable.

[13] *Lucent* 580 F.3d states
   "Consideration of evidence of usage after infringement started can, under appropriate circumstances, be helpful to the jury and the court in assessing whether a royalty is reasonable. Usage (or similar) data may provide information that the parties would frequently have estimated during the negotiation. *See Sinclair Ref.*, 289 U.S. at 697, 53 S.Ct. 736 ("The use that has been made of the patented device

theory, are a proxy at least as reasonable as estimated hours of use. *see Hanson v. Alpine Valley Ski Area, Inc.*, 718 F.2d 1075, 1080-81 (Fed. Cir. 1983) or the sale of products entirely unrelated to the patent's subject matter. *See Trans-World Manufacturing Corp. v. Al Nyman & Sons, Inc.*, 750 F 2d 1552, 1569 (Fed. Cir. 1984).

Additionally as, the Court noted at oral argument, it has simply denied Marvell's prior motion for summary judgment; it has never granted summary judgment in favor of CMU's damages theory. (Docket No. 441). CMU still has the burden of proving its damages theory at trial. And, as the Court has reminded the parties on numerous occasions, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Simon v. Weissmann*, 301 F. App'x 107, 116 (3d Cir. 2008) (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993)); (Docket Nos. 610, 614).

Therefore, Marvell's motion (Docket No. 496) is DENIED.

*s/ Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Date: November 29, 2012
cc/ecf: All counsel of record.

---

is a legitimate aid to the appraisal of the value of the patent at the time of the breach.").
at 1333. Accordingly evidence of the usage of the patented technology to drive certain sales, can be a helpful to the jury in assessing the damage for infringement.