**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARNEGIE MELLON UNIVERSITY,<br><br>        Plaintiff,<br>  v.<br><br>MARVELL TECHNOLOGY GROUP, LTD.,<br>and MARVELL SEMICONDUCTOR, INC.,<br><br>        Defendants. | Civil Action No. 2:09-cv-00290-NBF |

**MARVELL'S BRIEF IN SUPPORT OF ITS MOTION TO STRIKE CERTAIN
TESTIMONY OF CATHARINE M. LAWTON**

At the conclusion of CMU's rebuttal case, Ms. Catharine M. Lawton purported to recount certain of Dr. Sehat Sutardja's testimony regarding Marvell's SoCs and then opined that the testimony was "not factually correct." But a review of the final transcript[1] leaves no doubt that: (i) Ms. Lawton did not accurately describe Dr. Sutardja's testimony and (ii) Ms. Lawton had neither the expertise nor the basis to dispute that testimony.

Ms. Lawton's misguided assertion to the jury – just at the close of evidence – that Marvell's CEO did not testify accurately under oath is severely prejudicial to Marvell. Accordingly, Marvell requests that this Court strike the unduly prejudicial testimony (at December 18, 2012 Transcript, at 111:2-23, 117:1-8, 119:16-120:4) from the record.

### I.     Ms. Lawton Mischaracterized Dr. Sutardja's Testimony

Near the close of her testimony on December 18, 2012, Ms. Lawton testified that her "recollection is, [Dr. Sutardja] said that Marvell was the first to build an SoC in the world. And that's just factually not correct." (December 18, 2012 Transcript, at 111:5-7.) She continued: "He said, in the world, and that is not correct, according to my investigation." (*Id.* at 111:10-11.)

But Dr. Sutardja did ***not*** say that "Marvell was the first to build an SoC in the world"; he said that Marvell was the first to build an SoC ***internally***, using ***both*** its own proprietary read channel ***and*** its own proprietary hard disk drive controller. Specifically, Dr. Sutardja testified:

> Q.  Who was the first company that integrated these different functionalities into an SoC or system on a chip?
>
> A.  We were the first company in the business that were able to build these chips, okay, ***internally***.

(December 11, 2012 Transcript, at 52:10-13 (emphasis added).) Later, he similarly testified:

---

[1] It was difficult to determine the state of the record from the real-time rough transcript of the proceedings.

> Q.  Was the increase in sales that we see with respect to the SoC and read channel chips due to the MNP technology?
>
> A.  No.
>
> Q.  Why do you say that?
>
> A.  The increase of sales is because we were the first one *to build the SOC in the world.  We – even today, there's – our competitors still do not have an SOC using their own hard disk drive controller.  They have an SOC using customer's hard disk drive controller, but none of their o[w]n controllers yet in production*.

(*Id.* at 167:7-16 (emphasis added).)

Thus, Dr. Sutardja testified that Marvell was the first SoC supplier to integrate *both* an internally developed read channel *and* an internally developed hard disk drive controller.  In doing so, Marvell was able to market the same basic SoCs to all of its customers and thus secure a significant competitive advantage.  Dr. Sutardja testified that other suppliers have continued to integrate their own internally developed read channels with *their customer's* hard disk drive controller.  Because those suppliers integrate read channels with controllers supplied by each individual customer, suppliers other than Marvell must develop different SoCs for different customers.

Ms. Lawton's understanding of Dr. Sutardja's testimony – and her description of that testimony to the jury – was entirely inaccurate.  On this basis alone, Ms. Lawton's testimony (at December 18, 2012 Transcript, at 111:2-23, 117:1-8, 119:16-120:4) should be stricken from the record.

## II. Ms. Lawton Has No Expertise That Would Qualify Her To Opine on Dr. Sutardja's Testimony Regarding SoCs

It is not surprising that Ms. Lawton misunderstood and mischaracterized Dr. Sutardja's testimony regarding (i) Marvell's SoC development and (ii) the contrast between Marvell's SoCs and the SoCs offered by Marvell's competitors as articulated by Dr. Sutardja.  As has already

been established, Ms. Lawton has no experience at all regarding semiconductors or the semiconductor industry. (Dkt. No. 713, at 7; *see also e.g.*, December 6, 2012 Transcript, at 98:22-24.) Accordingly, Ms. Lawton's failure to appreciate the distinction between an SOC created from an internally developed read channel and internally developed hard disk drive controller on the one hand and an SoC created from an internally developed read channel and a customer-supplied disk drive controller on the other would not be unexpected.

Indeed, Ms. Lawton conceded on cross examination that she did not have the expertise or knowledge to evaluate the truth of what Dr. Sutardja *actually* said. In other words, Ms. Lawton admitted that she has no knowledge as to whether Cirrus Logic (the supplier that Ms. Lawton contends made the first SoC) integrated its own internally developed read channel *with its own internally developed hard disk drive controller*. She testified:

> Q. Okay. And you're not in a position, are you, to tell us whether Cirrus itself made an SoC internally; are you?
>
> A. I don't have specific details regarding the activities at Cirrus Logic. The scope of my investigation has been explained to what I relied on.
>
> Q. So you don't know if Cirrus made internally a read channel and a control chip together. You don't have any expertise in that; do you?
>
> A. I'm not here as a technical expert, no.

(December 18, 2012 Transcript, at 121:2-10.)

Moreover, it is clear that Ms. Lawton's purported "investigation" on the subject of SoCs – which entailed reviewing press clippings and high-level business descriptions in Cirrus Logic's 10Ks (December 18, 2012 Transcript, at 119:16-120:4) – would be insufficient for even an expert in the semiconductor industry (which Ms. Lawton is not) to form an opinion regarding the veracity of the specific testimony offered by Dr. Sutardja.

**III.     Dr. Sutardja's Testimony Is Consistent with All of the Evidence in the Record**

In fact, there is *no* evidence at all that contradicts Dr. Sutardja's testimony that Marvell was the first – and remains the only – SoC supplier that integrates its own internally developed read channel with its own internally developed hard disk drive controller.  Neither the press clippings cited by Ms. Lawton nor Mr. Brennan's testimony on the subject (Brennan Dep. at 192:93-193:17) indicates otherwise.[2]

**IV.     Ms. Lawton's Testimony Is Uniquely Prejudicial Under the Circumstances**

By the time CMU called Ms. Lawton to testify as its final witness in its rebuttal case, Ms. Lawton had already testified for 6.5 hours in CMU's case-in-chief.  But CMU represented that Ms. Lawton's rebuttal testimony was necessary on the subject of "Dr. Sutardja's testimony regarding the success of Marvell being attributable to SoC's."  (December 18, 2012 Transcript, at 85:24-25.)

Marvell objected to Ms. Lawton's rebuttal testimony on that issue.  As an initial matter, the subject was covered in Ms. Lawton's report and was not proper rebuttal testimony.  (*Id.* at 102:24-25, 103:7-8.)  More importantly, however, this Court had already ruled that Ms. Lawton is not a technical expert and that she could not testify regarding the semiconductor industry without relying on the opinion of someone with expertise in that area, *i.e.*, Dr. Bajorek.  (*Id.* at 86:1-87:4, 97:14-22, 103:11-13.)  Nonetheless, the Court permitted Ms. Lawton to offer rebuttal testimony on the limited subjects of "whatever Sutardja said, and whatever Baqai said."  (*Id.* at 83:3-4.)

---

[2]   Mr. Brennan testified that: "I think Cirrus Logic might have been the first company to ever do a – an SoC integration, I think, my recollection." (Brennan Dep. at 192:24-193:2.)  He went on to testify that the integration done by Cirrus Logic "failed" and "was miserable" and "was a terrible experience for Fujitsu," the customer for which Cirrus Logic did the integration. (*Id.* at 193:7-17.)

Before Ms. Lawton began her rebuttal testimony, however, the Court reiterated that Ms. Lawton could not testify "[i]n terms of technology." (*Id.* at 86:1-21.) Then again, during her rebuttal testimony, the Court admonished Ms. Lawton that she is "not a technical expert." (*Id.* at 98:19-25.) Indeed, the Court specifically struck Ms. Lawton's testimony regarding the introduction of SoCs in the industry (*id.* at 101:2-11), limited Ms. Lawton's testimony to "Marvell's situation, not the industry as a whole" (*id.* at 103:4-6), explained that Ms. Lawton's testimony had to take the form of "Marvell felt or Marvell recognized 'X'" (*id.* at 103:15-18), and stated that Ms. Lawton could not testify "[t]hat Marvell was not the first person to ship SoCs" even though Ms. Lawton had "already blurted out, it was Cirrus, it's IBM" because "Bajorek should have been talking about that" (*id.* at 104:1-10). Even when CMU explained that Ms. Lawton's understanding of "what was [purportedly] really going on with the SoC situation" was based on her review of "public records," the Court found again that Ms. Lawton could not testify about "the industry." (*Id.* at 105:4-21.)

In the end, Marvell objected numerous times to any testimony by Ms. Lawton regarding "who was first, who was second, who was third" in the SoC business, as Ms. Lawton had already been ruled unqualified to offer such an opinion. (*E.g.*, *id.* at 117:19-23.) Over these objections, the Court permitted Ms. Lawton to testify "*if*" the basis of her testimony was ***Marvell's*** SEC filings (that is, if the basis of her testimony related to Marvell's business situation, not the industry as a whole). (*Id.* at 117:24-118:1.)

Nonetheless, Ms. Lawton concluded her rebuttal testimony by (i) testifying about Marvell's competitors in the industry (rather than Marvell) and (ii) testifying about a technical issue related to the introduction of SoCs that she is not qualified to opine about. For all of the reasons the Court previously held that Ms. Lawton should do neither of those things, Ms.

Lawton's testimony was without foundation, factually wrong, and highly prejudicial to Marvell. *See, e.g., Waldorf v. Shuta*, 142 F.3d 601, 625 (3d Cir. 1998) ("Rule 702 requires the witness to have 'specialized knowledge' regarding the area of testimony."); *Elcock v. Kmart Corp.*, 233 F.3d 734, 741 (3d Cir. 2000) (requiring that an expert possess "specialized expertise").

### V. Ms. Lawton's Testimony Should Be Stricken

Ms. Lawton's testimony was sufficiently prejudicial that it satisfies the standard for declaring a mistrial. Ms. Lawton was the very last witness called before closings and jury deliberations, and she suggested erroneously to the jury that Marvell's Chief Executive Officer did not tell the truth when he testified. Ms. Lawton's testimony was wrong and without any basis. And Ms. Lawton was wholly unqualified to offer any opinion at all regarding Dr. Sutardja's testimony on SoCs.

At a minimum, however, Ms. Lawton's testimony at 111:2-23, 117:1-8, and 119:16-120:4 of the record from December 18, 2012 should be stricken, and the jury should be reminded that Ms. Lawton has no technical or other expertise related to SoCs.

### I. CONCLUSION

For the foregoing reasons, Marvell respectfully requests that the Court strike Ms. Lawton's testimony at 111:2-23, 117:1-8, and 119:16-120:4 of the record from December 18, 2012, and instruct the jury that Ms. Lawton has no technical or other expertise related to SoCs.

Dated: December 19, 2012                                  Respectfully submitted,

    /s/ John E. Hall                                        /s/ Joseph Milowic III

| | |
|---|---|
| John E. Hall | Edward J. DeFranco (*pro hac vice*) |
| Timothy P. Ryan | Faith Gay (*pro hac vice*) |
| ECKERT SEAMANS CHERIN & | Raymond Nimrod (*pro hac vice*) |
| MELLOTT, LLC | David Radulescu (*pro hac vice*) |
| U.S. Steel Tower | Joseph Milowic III (*pro hac vice*) |

| | |
|---|---|
| 600 Grant Street, 44th Floor<br>Pittsburgh, PA 15219<br>Phone: (412) 566-6000<br>Fax: (412) 566-6099<br>jhall@eckertseamans.com<br>tryan@eckertseamans com | QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Phone: (212) 849-7000<br>Fax: (212) 849-7100<br>eddefranco@quinnemanuel.com<br><br>Steven G. Madison  (*pro hac vice*)<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, California 90017<br>Phone: (213) 443-3000<br>Fax: (213) 443-3100<br>stevemadison@quinnemanuel.com<br><br>Kevin P.B. Johnson  (*pro hac vice*)<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>555 Twin Dolphin Drive., 5th Floor<br>Redwood Shores, California 94065<br>Phone: (650) 801-5000<br>Fax: (650) 801-5100<br>kevinjohnson@quinnemanuel.com<br><br>*Attorneys for Defendants, Marvell Technology Group, Ltd. and Marvell Semiconductor, Inc.* |

<mark><mark><mark><mark><mark><mark><mark><mark></mark></mark></mark></mark></mark></mark></mark></mark>

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2012, the foregoing was filed electronically on ECF. I also hereby certify that on December 19, 2012, this filing will also be served on counsel for CMU by electronic mail.

       /s/   Joseph Milowic III

John E. Hall
Timothy P. Ryan
ECKERT SEAMANS CHERIN & MELLOTT, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Phone: (412) 566-6000
Fax: (412) 566-6099
jhall@eckertseamans.com
tryan@eckertseamans com

David C. Radulescu (*pro hac vice*)
Joseph Milowic III (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000 Telephone
(212) 849-7100 Facsimile
davidradulescu@quinnemanuel.com

*Attorneys for Defendants,*
*Marvell Technology Group, Ltd. and*
*Marvell Semiconductor, Inc.*