**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARNEGIE MELLON UNIVERSITY,<br><br>        Plaintiff,<br>   v.<br><br>MARVELL TECHNOLOGY GROUP, LTD.,<br>and MARVELL SEMICONDUCTOR, INC.,<br><br>        Defendants. | Civil Action No. 2:09-cv-00290-NBF |

**MARVELL'S MEMORANDUM IN SUPPORT OF ITS
<u>MOTION FOR A MISTRIAL</u>**

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................................................1

II.  LEGAL STANDARDS .........................................................................................................3

III. CMU'S CLOSING ARGUMENT WAS RIFE WITH MISREPRESENTATIONS AND IMPERMISSIBLE ARGUMENTS...................................................................................6

   A.   CMU Drew an Impermissible Inference Regarding Advice of Counsel, Directly Violating the Court's Order Earlier Today ................................................7

   B.   CMU Violated the Court's Order on MIL D12 by Appealing to the Jury Regarding the Beneficial Uses of Any Damages Award.......................................10

   C.   CMU Blatantly Appeal to the Jury's Emotions with Its "Identity Theft" Argument ...............................................................................................................12

IV.  CMU'S HIGHLY PREJUDICIAL ARGUMENTS WARRANT A NEW TRIAL ..........13

   A.   A New Trial Is the Only Remedy that Will Address CMU's Impermissible Arguments and Mischaracterizations During Closing...........................................13

   B.   Curative Instructions and Additional Argument Will Not Cure The Prejudice ...............................................................................................................14

   C.   Alternatively, the Court Should Strike CMU's Willfulness Claim .......................14

   D.   At a Minimum, the Court Should Grant Marvell an Opportunity for Rebuttal Closing.....................................................................................................15

V.   CONCLUSION....................................................................................................................16

**I.     INTRODUCTION**

Defendants Marvell Technology Group, Ltd. and Marvell Semiconductor, Inc. (collectively, "Marvell") respectfully move the Court for a mistrial.  During closing argument, CMU's counsel embarked on a series of inflammatory arguments that misrepresented the record and violated at least two of the Court's orders in this case.  *First*, counsel invited the jury to draw an improper inference regarding the advice of counsel and Marvell's alleged failure to follow its own internal policy for passing such matters to in-house counsel – an Order that the Court issued just this morning.  *Second*, CMU argued that the jury should not "break the chain" of innovation and thereby deprive CMU of significant revenue in violation of the Court's Order on Marvell's motion in limine D12.  This argument is completely irrelevant to the analysis of reasonable royalty damages in this case, and is intended to appeal to the sympathy of the jury in an unfairly prejudicial way.  *Third*, CMU argued that it had been the victim of an "identity theft" as a result of Marvell's infringement – again, an argument that is irrelevant to any issue in this case and is designed to inflame the passions of the jury into reaching a verdict based on emotion, rather than the evidence, as it is required to do.

Any one of these impermissible arguments is grounds for a mistrial.  But here, the course of misconduct throughout CMU's closing argument makes this case particularly egregious.  And as the cases on this issue explain, the harm arises not only from the misrepresentations and inflammatory arguments by counsel, but also the predicament that such conduct creates for opposing counsel – *i.e.*, whether to allow the improper arguments to stand without objection (and in this case, no opportunity to respond) or to raise an objection, and thereby draw even more attention to the issue in front of the jury.  This is particularly so here, during closing arguments where the jury has heard all of the evidence and is particularly focused on how it all fits together just before they will be asked to begin their deliberations.

Marvell does not make this motion lightly.  This trial is now in its fourth week.  All of the evidence is in.  And the jury has given the Court and the parties their full attention.  But the stakes in this case are extremely high.  CMU's damages demand is $1.169 billion and counting.  CMU has also requested three times enhancement for alleged willfulness.  The timing of CMU's misleading and prejudicial arguments could not have been an accident.  The sequence of events during CMU's closing are a prime example of the extreme prejudice that the Third Circuit and other courts have recognized will necessarily arise from repeated mischaracterizations of the evidence and inflammatory arguments by counsel that are completely irrelevant to any issue.  CMU's arguments could only serve one purpose – to prejudice the jury by planting the seed in their minds that they should decide this case for CMU based on emotion and/or misrepresentations regarding the substance of the evidence.  Once these arguments were introduced in open court, however, there is no realistic way to undo the damage.  Curative instructions and further argument will only serve to further emphasize and highlight the issues, leading to even more prejudice to Marvell.

Here, Marvell respectfully submits that the most efficient procedure would be for the Court to take this motion for a mistrial under submission and grant additional time for closing to Marvell so that it has an opportunity to respond to these improper arguments and attempt to correct CMU's  multiple misstatements.  Then, following the jury's verdict, the Court can consider whether the circumstances here warrant a new trial in light of a complete record.  A similar procedure has been followed in other cases.  *See, e.g.*, *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 756 (6th Cir. 1980) ("to determine whether the misconduct of counsel was prejudicial and warrants a new trial, the court examines, on a case-by-case basis, "the totality of the circumstances, including the nature of the comments, their frequency, their

possible relevancy to the real issues before the jury, the manner in which the parties and the court treated the comments, the strength of the case (e.g., whether it is a close case), *and the verdict itself*") (emphasis added).

## II.    LEGAL STANDARDS

The decision to grant a new trial is a matter committed to the sound discretion of the Court where necessary "to prevent injustice." *Greenberg v. Tomlin*, CIV. A. 92-0006, 1993 WL 322069, at *2 (E.D. Pa. Aug. 23, 1993) *affirmed*, 26 F.3d 121 (3d Cir. 1994) (citing *O'Dell v. Hercules*, 904 F.2d 1194, 1200 (8th Cir. 1988)); *Grace v. Mauser-Werke GMBH*, 700 F. Supp. 1383, 1387-1388 (E.D. Pa. 1988).

In particular, a mistrial is warranted when counsel asks questions or makes statements that introduce improper or prejudicial information that is likely to bias the jury. *Whitserve, LLC v. Comp. Packages, Inc.*, 694 F.3d 10, 34 n. 18 (Fed. Cir. 2012) (noting that "[i] is beyond debate that juries may not award litigation costs or punish infringers," and trusting that the district court on remand would not allow counsel to repeat "blatantly improper statements" about damage awards); *Fineman v. Armstrong World Industries, Inc.*, 980 F.2d 171, 210-11 (3d Cir. 1992) (district court properly granted new trial where it found "the cautionary instructions given to the jury proved to be insufficient to immunize the jury from the improper and inflammatory remarks of plaintiffs' counsel"); *Draper v. Airco, Inc.*, 580 F.2d 91, 95 (3d Cir. 1978) (holding trial court erred in refusing to grant a new trial based on the actions of plaintiff's attorney when, among other conduct, "without provocation or basis in fact, he made several prejudicial, vituperative and insulting references to opposing counsel" and "prejudicially referred to facts not in evidence"); *Silbergleit v. First Interstate Bank of Fargo, N.A.*, 37 F.3d 394, 398 (8th Cir. 1994) (granting a new trial when "the totality of [] counsel's line of questions and comments emphasized irrelevant information having no bearing on the issues of the case, and demonstrated

a persistent effort to get this information before the jury"); *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749 (6th Cir. 1980) (granting new trial because repeated references to the defendant's insurance coverage created prejudice that outweighed the effect of the curative instructions offered by the court) (citing *Draper*, 580 F.2d at 95); *Whitehead v. Food Max of Mississippi, Inc.*, 163 F.3d 265 (5th Cir. 1998) (references by the plaintiff's attorney during closing argument to the defendant as a "national company" and invoking the "Golden Rule," even though curative instructions were given, were still so prejudicial as to warrant a new trial on damages); *Lucent Techs., Inc. v. Extreme Networks, Inc.*, 229 F.R.D. 459 (D. Del. 2005) (new trial granted because, during a bifurcated trial, the defendant's counsel repeatedly referenced counterclaims and affirmative defenses, in violation of the court's evidentiary rulings); *Waddington North American, Inc. v. Sabert Corp.*, 2011 WL 3444150 (D.N.J. Aug. 5, 2011) (granting new trial based on pattern of attorney misconduct, including references to foreign patent proceedings, dismissed inequitable conduct claims, arguments contrary to the *Markman* order, use of the attorney's personal opinions during closing, leading witnesses, and arguing no presumption of validity); *Intel Corp. v. Broadcom Corp.*, 2003 WL 360256, at *13 (D.Del. 2003) (listed "improper conduct by an attorney or the court unfairly influenced the verdict" as one of the most common reasons for granting a new trial); *Waite v. Neal*, 918 F. Supp. 133 (E.D. Pa. March 1, 1996) (closing statement remarks "which are not supported by the evidence and which are designed to appeal to the jury's prejudice or passion" are improper.).

Although the violative conduct warranting a new trial "may be inflicted in a moment," subsequent attempts at corrective action are more often than not incapable of removing the prejudice suffered by the opposing party. *U.S. v. Zehrback*, 47 F.3d 1252, 1267 (3d Cir. 1995). This is the proverbial "skunk in the jury box." *O'Rear v. Fruehauf Corp.*, 554 F.2d 1304, 1309

(5th Cir. 1977) ("(y)ou can throw a skunk into the jury box and instruct the jurors not to smell it, but it doesn't do any good.").

Indeed, curative instructions may only serve to emphasize the error, making a new trial even more appropriate. *Simmons v. Diguglielmo*, CIV. A. 08-5911, 2009 WL 2835261, at *12 (E.D. Pa. Aug. 28, 2009) (citing *Marshall v. Hendricks*, 307 F.3d 36, 39 (3d Cir. 2002); *Moore v. Morton*, 255 F.3d 95, 119 (3d Cir. 2001)); *Lasar v. Ford Motor Co.*, 399 F.3d 1101, 1115 (9th Cir. 2005) (mistrial warranted where the violation resulted in prejudice to the opposing party and the curative instruction "would have brought only more attention to the matter.") (citing *Pullman v. Land O'Lakes, Inc.*, 262 F.3d 759, 762 (8th Cir. 2001); *Seltzer v. Chesley*, 512 F.2d 1030, 1035 (9th Cir. 1975) ("curative instructions must not emphasize the error")).

As the United States Supreme Court has explained, "too often [an] admonition against misuse is intrinsically ineffective in that the effect of [a] nonadmissible declaration cannot be wiped from the brains of the jurors." *Bruton v. United States*, 391 U.S. 123, 129 (1968). "The naive assumption that prejudicial effects can be overcome by instructions to the jury [is a belief] all practicing lawyers know to be unmitigated fiction." *Id*.

Where cautionary instructions fail to cure the unfair prejudice, a new trial is not awarded in order to punish the offending party, "but to assure fairness and due process" to the prejudiced party. *Blanche Rd. Corp. v. Bensalem Twp.*, 57 F.3d 253, 264 (3d Cir. 1995) *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392 (3d Cir. 2003). In *Blanche Road*, the Third Circuit expressly affirmed the district court's grant of a new trial, quoting with approval the district court's order:

> Plaintiffs' counsel was able to get before the jury information that was inadmissible as evidence and clearly unfairly prejudicial to moving defendants. Counsel's pattern of conduct is probative of his belief that such misconduct was necessary to the success of Plaintiffs' case. I am convinced beyond any doubt

> that there is a reasonable probability that the jury's findings were influenced by Plaintiffs' counsel's highly improper conduct, to the unfair prejudice of the moving Defendants. Moreover, cautionary instructions could not and did not cure the unfair prejudice. I must grant a new trial not as punishment to Plaintiffs' counsel, but to assure fairness and due process to moving defendants.

*Id*. Here, CMU's arguments have prejudiced Marvell in at least two ways. Its misleading arguments about the evidence are an attempt to sway the jury based information that is not part of this case. And CMU's arguments about the alleged "chain of innovation" and "identity theft" are blatant attempts to sway the jury based on emotion and bias, rather than an impartial assessment of the evidence.

### III. CMU'S CLOSING ARGUMENT WAS RIFE WITH MISREPRESENTATIONS AND IMPERMISSIBLE ARGUMENTS

The arguments of CMU's counsel violate some of the most fundamental codes of professional and trial conduct. For example, Pennsylvania's Code of Civility provides that a lawyer should not misrepresent the evidence in any communications with the Court:

> A lawyer should not misrepresent, mischaracterize, misquote or miscite facts or other authorities in any oral or written communication to the court.

Pennsylvania Code of Civility, Art. II, 8; *see also* American College of Trial Lawyers, Code of Pretrial and Trial Conduct, Trial Conduct, Section (b)(i).

Similarly, a lawyer should not attempt to circumvent any ruling by the Court:

> When a court has made an evidentiary ruling, a lawyer should not improperly circumvent that ruling, although a lawyer may seek to make a record of the excluded evidence or a review of the ruling.

American College of Trial Lawyers, Code of Pretrial and Trial Conduct, Trial Conduct, Section (b)(d). In particular, if there is any doubt about the propriety or prejudicial effect of an argument, the lawyer should seek guidance from the Court:

> A lawyer must not attempt to introduce evidence or to make any argument that the lawyer knows is improper. If a layer has doubt about the propriety or prejudicial

effect of any disclosure to the jury, the lawyer should request a ruling out of the jury's hearing.

*Id*. at Section (b)(e). During closing argument, CMU's counsel repeatedly violated these basic codes of conduct at trial.

### A. CMU Drew an Impermissible Inference Regarding Advice of Counsel, Directly Violating the Court's Order Earlier Today

As an initial matter, CMU asked the jury to draw impermissible inferences based on misrepresentations regarding the evidence in this case. CMU blatantly mischaracterized the evidence when it argued that Marvell had violated its own internal policy regarding the procedure for addressing patent issues. CMU argued that the policy required an opinion on counsel, when it did not. As Mr. Armstrong testified:

> Q. Does Marvell have a policy with respect to how it deals with information about patents that may cover some of its products?
>
> A. Can you be more specific?
>
> Q. Well, when Marvell identifies a patent that may be relevant to some of its products, for example, it's storage products, does it have a policy as to how it addresses that issue?
>
> MR RADULESCU: Objection as to form.
>
> But go ahead.
>
> THE WITNESS: Any information we might get about patents, either externally or internally, the policy would be to send that to legal and to have legal analyze the patent and determine what the appropriate next step would be.
>
> BY MR. McELHINNY:
>
> Q. Okay. And do you know whether that happened here in connection with the Carnegie Mellon patents that are at issue?
>
> MR. RADULESCU: Objection as to form.
>
> THE WITNESS: I do not –
>
> MR. RADULESCU: Outside the scope of the 30(b)(6) notice.

>THE WITNESS: I do not know.
>
>BY MR. McELHINNY:
>
>Q.      Who would know that?
>
>A.      The information would be in legal.

6/23/10 Armstrong Dep. Tr. at 294:14-295:18.

Nevertheless, CMU asked the jury to question why Marvell had not followed its own policy, when if fact, the undisputed testimony of Dr. Wu was that it had:

>Q. Okay. Back in 2002 when you became aware of Dr. Kavcic's patent, did you review the patent at that time?
>
>A. I reviewed the patent with our internal patent attorney.
>
>Q. At Marvell?
>
>A. At Marvell.
>
>Q. And who was that?
>
>THE COURT: Dr. Wu, let me instruct you, to the extent that you talked to the attorney about the patent, anything that relates to your communications with the attorney, or his or her to you, is privileged, and you can't talk about it.
>
>Q. So, you can provide the name of the person?
>
>A. Mr. Eric Janofsky.
>
>THE COURT: State that again; Eric?
>
>THE WITNESS: J-A-N-O-F-S-K-Y.

Trial Tr. (12/11/12) at 323:9- 24.

CMU's argument that the jury should draw a negative inference based on Marvell's alleged failure to comply with its own internal policy was a complete fabrication. As CMU's counsel argued:

>After Marvell learns about this patent, they begin violating ***a real policy that they really do have***, which is when there's a possibility that you are infringing, a possibility that you are infringing on a patented invention, ***you're supposed to get***

>  *an opinion from legal counsel* to see if they're okay.  ***You never saw such an opinion in this case.  You can go through all the exhibits; you won't find an opinion from anybody either inside of Marvell or outside of Marvell saying: Don't worry, you don't infringe***.  Here's the policy from Alan Armstrong, who was Marvell's designee on this topic.  He said send it to legal to determine what the appropriate next steps would be.  ***They never did this***.

Rough Trial Tr. (12/20/12, CMU Closing) at 32:8-20 (emphasis added).

>  Later during the closing argument, CMU picked up on this theme again:

>  So what does Marvell do?  They ignore this letter.  They simply ignore it.  They don't write back and say: We don't infringe or we made a mistake and we have your invention in our chips and let us show you our lab notebooks.  They do nothing.  ***They also don't get an opinion of counsel.  They don't do what their company policy says they should do.  Again, they don't get an opinion of counsel. They just ignore it***.

>  MR. MADISON: Your Honor, I object based on the court's order.

>  THE COURT: Sustained.

>  MR. MADISON: Ask the Court to strike Mr. Greenswag's comments.

>  THE COURT: Those last comments are stricken.

Rough Trial Tr. (12/20/12, CMU Closing) at 34:7-20 (emphasis added).

Misleading the jury in this way is particularly egregious, given that this issue goes directly to CMU's claim of willful infringement and demand for up to three times enhancement of its already staggering damages claim of $1.169 billion (and counting).  Moreover, this could hardly have been a simple oversight.  This argument directly violated the Court's Order issued just this morning on CMU's motion to strike the testimony of Dr. Wu.

Likewise, CMU's suggestion that Marvell waived any objection to this argument during closing is wrong.  Marvell timely objected to CMU's misleading argument – an argument that CMU has been precluded from making in the Court's order earlier that day.  This situation is a prime example of the dilemma facing opposing counsel in such situations – *i.e.*, whether or not to jump up immediately during closing arguments and interpose an objection that emphasizes the

improper argument. This difficulty is compounded by the multiple misrepresentations and improper arguments over the course of CMU's closing statement.

### B. CMU Violated the Court's Order on MIL D12 by Appealing to the Jury Regarding the Beneficial Uses of Any Damages Award

Next, CMU inexplicably argued that the jury should not "break the chain" of innovation by depriving the University of a huge damages award in this case.

> Okay. What exhibit number is this -- okay. At the bottom of the -- in the associate's agreement it says: In the event the university decides to offer licenses -- it's only talking about the university's right to offer licenses to third parties -- said licenses shall be royalty-bearing as decided by the university and the royalty income shall be utilized at the Center to sponsor further research. That is what was supposed to happen. *And what Marvell did was they broke the chain of innovation by not paying the royalties that they now owe. All these years CMU should have been getting royalties, as the -- for the purpose as shown in this 1983 agreement, to fund further research, to lead to further innovation, to fund further research, to lead to further innovation. This is why CMU has been damaged by Marvell's infringement*.
>
> *Don't allow Marvell to break that chain*. The actions of Marvell and the steps they took can be summed up --
>
> MR. MADISON: Excuse me, Mr. Greenswag; side bar.
>
> (At side bar.)
>
> THE COURT: Okay, Mr. Madison is going to be reflecting on my prior order you can't dig deep into all of CMU's contributions to society and mankind.
>
> MR. GREENSWAG: I'm not going anywhere near it; I'm going to the chain of innovation --
>
> THE COURT: We've heard that twice.

Rough Trial Tr. (12/20/12, CMU Closing) at 40:24-41:23 (emphasis added).

Unbelievably, CMU made this argument, even though this issue had been the subject of extensive briefing in Marvell's motion D12 before trial. The Court resolved this issue in its November 6, 2012 Order. Dkt. No. 608. That Order could not have been clearer – the Court precluded CMU from presenting "evidence and argument regarding any purported 'harms' or

'damages' other than the loss of the reasonable royalty that would have resulted from the hypothetical negotiation for a license to the patents-in-suit." In particular, the Court precluded excluded CMU from presenting evidence for certain categories of harms. Dkt. No. 608 at 1, citing Dkt No. 523-1).

First, the Court held that CMU had failed to establish a factual predicate to support its expert Ms. Lawton's conclusions on the following harms and therefore they were speculative, not relevant under Fed. R. Evid. 401, and, if presented at trial, would complicate the issues and confused the jury under Fed. R. Evid. 403. Thus, CMU was precluded from making arguments that Marvell's alleged infringement:

- Adversely affected its ability to attract top faculty or students

- Delayed and caused certain unspecified 'lost opportunities' which CMU was unable to pursue;

- Diminished CMU's capacity to fulfill its mission by contributing to society and industry

Dkt. 608 at 4-5, citing Dkt. No. 524.

Next, the Court held that CMU could not present evidence on how CMU would have spent potential funds from a hypothetical license to Marvell, listing specific examples such as reinvesting in human capital, real estate projects, or marketing directed toward prospective faculty, staff, or additional members of the DSSC. Dkt. No. 608 at 5.

Finally, the Court's order excluded any CMU references to alleged "reputational harm" caused by Marvell's infringement. Dkt. No. 608 at 6.

CMU's arguments during closing about "breaking the chain" of funding for research falls clearly within the scope of these impermissible categories. There is no ambiguity in the Court's Order. There could have been no mistake by CMU that it was crossing the line. Yet, CMU's counsel proceeded to open the door anyway. The only purpose of this argument was to sway the

jury in its deliberations by asking them to consider the "beneficial" uses to which CMU would apply any award of damages from Marvell. But as the Court had already ruled before trial, such arguments are irrelevant to the analysis of reasonable royalty damages and highly prejudicial.

### C. CMU Blatantly Appeal to the Jury's Emotions with Its "Identity Theft" Argument

Perhaps most prejudicial of all, CMU's counsel argued to the jury that it has been a victim of a crime – someone who has been the target of an identity theft. Indeed, this argument came immediately after the Court issued a cautionary instruction regarding CMU's "breaking the chain" argument.

> THE COURT: Thank you, Mr. Galovich and Ms. Hall. Ladies and gentlemen of the jury, this past argument that you've just heard from Mr. Greenswag about breaking the chain of innovation, that is stricken by the Court. You are to disregard that argument.
>
> MR. GREENSWAG: Thank you, Your Honor.
>
> So, I think I've got an analogy to help you as you deliberate. ***The invention in this case is like your electronic identity, your credit card numbers, your Social Security number***. It's that which are very personal and valuable to you. You devote years to building up your reputation, your credit rating, your standing. One day Marvell sneaks in --
>
> MR. MADISON: Objection, Your Honor. It's improper argument again.
>
> THE COURT: Side bar.

Rough Trial Tr. (12/20/12, CMU Closing) at 59:9-25 (emphasis added).

The inflammatory nature of this argument can hardly be overstated. It goes without saying that this is not a criminal matter. It is a civil suit for patent infringement. To suggest that any alleged infringement is akin to "identify theft" is not only irrelevant, but goes far beyond any bounds to suggest that Marvell is a criminal and that CMU is the victim.

CMU's rhetoric has been at a high pitch since opening statements in this case. Marvell has been called a thief, and its employees liars. But CMU's latest argument raises the stakes

even higher, and is a direct appeal to the jury's biases and emotions to decide this case. The prejudice, on top of everything else the jury heard at the end of CMU's closing argument today, is only compounded by the timing of these arguments – just before the jury was discharged for the day and just before they will begin their deliberations.

## IV. CMU'S HIGHLY PREJUDICIAL ARGUMENTS WARRANT A NEW TRIAL

CMU's repeated misstatements and inflammatory arguments caused Marvell extreme prejudice and raised the serious issues of jury bias and confusion that the Court must now consider. Individually, each of these arguments was in itself prejudicial, but the harm was further compounded by CMU counsel's insistence on raising one unfairly prejudicial argument after another, all in the same vein. At this point, CMU's closing argument has rendered any jury verdict unreliable and the only appropriate remedy in these circumstances is a new trial.

### A. A New Trial Is the Only Remedy that Will Address CMU's Impermissible Arguments and Mischaracterizations During Closing

The only remedy that will complete erase the prejudice that CMU has caused is a new trial with a jury that has not been exposed to the numerous improper arguments that CMU made during closing. As discussed above, Courts in similar circumstances have taken exactly this step when faced with the same dilemma – how to address the inherent prejudice arising from impermissible and inflammatory arguments that have been made to the jury. Here, the arguments during CMU's closing strike at the core of the disputed issues in this case relating to infringement, damages and willfulness. There is no way to dispel the impact on the jury of what has already been said. And given the gravity of CMU's misstatements, the only remedy is to retry this case with a new jury that has not been tainted by arguments that the Court had earlier ruled were impermissible. Any other remedy would mean that CMU was successful today in its attempted end-run around the Court's prior orders.

### B. Curative Instructions and Additional Argument Will Not Cure The Prejudice

In response to the Court's request, Marvell proposed the following limiting instruction:

> Before lunch, CMU made arguments concerning Marvell's policy regarding legal advice. You are instructed that CMU's arguments were improper and factually incorrect, and you should ignore the arguments in their entirety, and I have stricken them from the record.

But this type of remedial instruction cannot cure the prejudice caused by CMU's repeated misrepresentations and inflammatory statements during closing argument. This is particularly difficult here, where the jury is unlikely to be able to parse out the difference between a formal opinion of counsel and Marvell's policy about sending patent issues to its in-house counsel. Now that CMU has opened the door, no instruction by the Court or rebuttal argument by Marvell's counsel can undue the prejudice that has already been done. The prejudice is particularly acute because of the timing. CMU presented its closing argument last. And the prejudicial statements were loaded up at the end of its argument, which was the last thing the jury heard before being excused for the day.

As the cases make plain, once the door has been opened, no cautionary instruction from the Court or rebuttal by Marvell will be able to "unring the bell" on any of these issues. Now, through inappropriate argument by CMU's counsel, a series of extremely prejudicial messages has been conveyed to the jury that no remedial actions by the Court or Marvell can undo.

### C. Alternatively, the Court Should Strike CMU's Willfulness Claim

As an alternative remedy, CMU's claim for enhanced damages for willful infringement should be stricken. This remedy will at least address some of the most egregious misstatements in CMU's closing and its violation of the Court's Order this morning. Although striking a claim is a serious remedy, the blatant misconduct today, at the very least, warrants a strong sanction that will send a clear message to CMU's counsel.

### D. At a Minimum, the Court Should Grant Marvell an Opportunity for Rebuttal Closing

At a minimum, Marvell respectfully requests that the Court grant additional time for closing argument so that it can respond to each of the serious issues that CMU has raised and attempt to set the record straight. *See, e.g.*, *United States v. Wood*, 982 F.2d 1, at *4 (1st Cir. 1992) (holding that decisions whether to permit the introduction of rebuttal evidence resides within the sound discretion of the trial judge). This remedy will not cure the prejudice to jury caused by CMU's closing statement. But Marvell requests this relief in the alternative should the Court deny its request for a new trial.

## V. CONCLUSION

For the foregoing reasons, Marvell respectfully requests that the Court grant a mistrial to ensure that Marvell has a full and fair opportunity to try its case to a jury unbiased by the highly prejudicial statements of CMU's counsel during closing arguments.

Dated:  December 20, 2012  Respectfully submitted,

| | |
|---|---|
| /s/   John E. Hall | /s/   Edward J. DeFranco |
| John E. Hall<br>Timothy P. Ryan<br>ECKERT SEAMANS CHERIN & MELLOTT, LLC<br>U.S. Steel Tower<br>600 Grant Street, 44th Floor<br>Pittsburgh, PA 15219<br>Phone: (412) 566-6000<br>Fax: (412) 566-6099<br>jhall@eckertseamans.com<br>tryan@eckertseamans com | Edward J. DeFranco  (*pro hac vice*)<br>Faith Gay  (*pro hac vice*)<br>Raymond Nimrod  (*pro hac vice*)<br>David Radulescu  (*pro hac vice*)<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>51 Madison Avenue, 22nd Floor<br>New York, New York 10010<br>Phone: (212) 849-7000<br>Fax: (212) 849-7100<br>eddefranco@quinnemanuel.com<br><br>Steven G. Madison  (*pro hac vice*)<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>865 S. Figueroa St., 10th Floor<br>Los Angeles, California 90017<br>Phone: (213) 443-3000<br>Fax: (213) 443-3100<br>stevemadison@quinnemanuel.com<br><br>Kevin P.B. Johnson  (*pro hac vice*)<br>QUINN EMANUEL URQUHART & SULLIVAN, LLP<br>555 Twin Dolphin Drive., 5th Floor<br>Redwood Shores, California 94065<br>Phone: (650) 801-5000<br>Fax: (650) 801-5100<br>kevinjohnson@quinnemanuel.com<br><br>*Attorneys for Defendants, Marvell Technology Group, Ltd. and Marvell Semiconductor, Inc.* |

**CERTIFICATE OF SERVICE**

I hereby certify that on December 20, 2012, the foregoing was filed electronically on ECF.  I also hereby certify that on December 20, 2012, this filing will also be served on counsel for CMU by electronic mail.

        /s/   John E. Hall

John E. Hall
Timothy P. Ryan
ECKERT SEAMANS CHERIN & MELLOTT, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Phone: (412) 566-6000
Fax: (412) 566-6099
jhall@eckertseamans.com
tryan@eckertseamans com

David C. Radulescu (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
51 Madison Avenue, 22nd Floor
New York, New York 10010
(212) 849-7000 Telephone
(212) 849-7100 Facsimile
davidradulescu@quinnemanuel.com

*Attorneys for Defendants,*
*Marvell Technology Group, Ltd. and*
*Marvell Semiconductor, Inc.*