**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| CARNEGIE MELLON UNIVERSITY, | |
| Plaintiff, | |
| v. | Civil Action No. 2:09-cv-00290-NBF |
| MARVELL TECHNOLOGY GROUP, LTD. and MARVELL SEMICONDUCTOR, INC., | Hon. Nora B. Fischer |
| Defendants. | |

**MARVELL'S MEMORANDUM IN RESPONSE TO CMU'S MOTION FOR
PREJUDGMENT AND POST-JUDGMENT INTEREST**

## TABLE OF CONTENTS

Page

INTRODUCTION ...................................................................................................1

I.     THIS COURT SHOULD EXERCISE ITS DISCRETION TO DENY
       PREJUDGMENT INTEREST ON PRE-SUIT DAMAGES................................1

II.    TO THE EXTENT PREJUDGMENT INTEREST IS GRANTED, IT SHOULD
       BE COMPUTED USING THE T-BILL RATE AND SHOULD BE
       COMPOUNDED ANNUALLY ........................................................................3

       A.     There Is No Justification For Using The State Statutory Rate To Calculate
              Prejudgment Interest ................................................................................4

       B.     There Is No Justification For Using CMU's Purported "Actual Rate Of
              Return" To Calculate Prejudgment Interest..............................................7

       C.     Of The Two Uniform Market Rates Available, This Court Should Exercise
              Its Discretion To Calculate Prejudgment Interest At The T-Bill Rate....................9

       D.     To The Extent A Market Rate Is Used To Calculate Prejudgment Interest,
              It Should Be Compounded Annually..................................................12

III.   POST-JUDGMENT INTEREST SHOULD BE CALCULATED PURSUANT TO
       28 U.S.C. § 1961.........................................................................................13

CONCLUSION....................................................................................................13

# TABLE OF AUTHORITIES

**Page**

## Cases

*Apple, Inc. v. Samsung Elecs. Co.*,
   No. 11-cv-01846-LHK, 2013 WL 772525 (N.D. Cal. Mar. 1, 2013) ..........................10, 11, 12

*Arriflex Corp. v. Aaton Cameras, Inc.*,
   225 U.S.P.Q. 487 (S.D.N.Y. 1984) ...................................................................................10

*Avco Corp. v. PPG Indus., Inc.*,
   867 F. Supp. 84 (D. Mass. 1994) .....................................................................................10

*Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*,
   No. CV-03-0597-PHX, 2009 WL 920300 (D. Ariz. Mar. 31, 2009) ................................6, 7

*Bell Sports, Inc. v. Graber Prods., Inc.*,
   29 U.S.P.Q. 2d 1211 (W.D. Wis.  1993) .........................................................................4, 10

*Bennett Levin & Assocs., Inc. v. Brooks*,
   No. 2866, 1992 WL 1071448 (Pa. Com. Pl. Dec. 9, 1992) ..................................................6

*Bowling v. Hasbro, Inc.*,
   582 F. Supp. 2d 192 (D.R.I. 2008) .....................................................................................7

*Brunswick Corp. v. United States*,
   36 Fed. Cl. 204 (1996) ...............................................................................................4, 5, 8

*Carroll v. City of Philadelphia*,
   735 A.2d 141 (Pa. Commw. Ct. 1999) ...............................................................................6

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
   246 F.3d 1336 (Fed. Cir. 2001) .......................................................................................2, 3

*Daset Mining Corp. v. Indus. Fuels Corp.*,
   473 A.2d 584 (Pa. Super. Ct. 1984) ...................................................................................6

*Datascope Corp. v. SMEC, Inc.*,
   879 F.2d 820 (Fed. Cir. 1989) .......................................................................................9, 10

*Dynamics Corp. v. United States*,
   766 F.2d 518 (Fed. Cir. 1985) ...........................................................................................6

*Eolas Techs. Inc. v. Microsoft Corp.*,
   70 U.S.P.Q. 2d 1939 (N.D. Ill. 2004), 399 F.3d 1325 (Fed. Cir. 2005) ..........................10, 11

*Fonar Corp. v. Gen. Elec. Co.*,
   902 F. Supp. 330 (E.D.N.Y. 1995),107 F.3d 1543 (Fed. Cir. 1997) .....................................10

*Fromson v. Western Litho Plate & Supply Co.*,
   13 U.S.P.Q. 1856 (E.D. Mo. 1989), *aff'd*, 909 F.2d 1495 (Fed. Cir. 1990) ..........................10

*Gen. Motors Corp. v. Devex Corp.*,
 461 U.S. 648 (1983)..........................................................................................2, 3

*Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*,
 874 F.2d 431 (7th Cir. 1989) ..............................................................................5

*Gyromat Corp. v. Champion Spark Plug Co.*,
 735 F.2d 549 (Fed. Cir. 1984)..........................................................................6, 7

*Hall v. Meadwestvaco Corp.*,
 No. Civ. A. 03-30310-KPN, 2005 WL 1205554 (D. Mass. May 18, 2005)............7

*Hoechst Celanese Corp. v. BP Chems. Ltd.*,
 846 F. Supp. 542 (S.D. Tex. 1994), *aff'd*, 78 F.3d 1575 (Fed. Cir. 1996)..............10

*Intex Plastic Sales Co. v. Hall*,
 20 U.S.P.Q. 2d 1367 (N.D. Cal. 1991), *aff'd*, 960 F.2d 155 (Fed. Cir. 1992)...................9, 10

*Laitram Corp. v. NEC Corp.*,
 115 F.3d 947 (Fed. Cir. 1997)..............................................................................9

*Lummus Indus., Inc. v. D.M. & E. Corp.*,
 862 F.2d 267 (Fed. Cir. 1988)..............................................................................2

*Mainland Indus., Inc. v. Standal's Patents Ltd.*,
 No. Civ. 81-928-BE, 1985 WL 6021 (D. Or. Oct. 15, 1985) ............................2, 3

*Nat'l Presto Indus., Inc. v. Black & Decker Inc.*,
 No. 89 C 8978, 1992 WL 125559 (N.D. Ill. May 27, 1992) ...............................10

*The Boeing Co. v. United States*,
 86 Fed. Cl. 303 (2009)..........................................................................................8

*Tony DePaul & Son v. City of Philadelphia*,
 No. 2426, 1992 WL 1071420 (Pa. Com. Pl. Aug. 20, 1992)................................6

*In re Universal Foundry Co. v. First Wis. Fin. Corp.*,
 163 B.R. 528 (E.D. Wis. 1993), *aff'd*, 30 F.3d 137 (7th Cir. 1994) ........................11

## Statutes

28 U.S.C. § 1498.....................................................................................................6

28 U.S.C. § 1961...................................................................................................13

35 U.S.C. § 284...................................................................................................1, 2

815 Ill. Comp. Stat. 205/2.......................................................................................4

N.H. Rev. Stat. § 336:1 ...........................................................................................4

## INTRODUCTION

CMU's motion for prejudgment interest considers only those rates that yield the largest interest awards, and then, to maximize the potential award even further, argues that interest should be compounded regardless which rate is used.  But CMU ignores the various and competing rationales that must inform a proper analysis of whether to award prejudgment interest, at what rate that interest should be computed, and for which rates compounding is appropriate.  In the context of the circumstances of this case, those rationales clearly establish that, contrary to CMU's arguments:

- this Court should deny prejudgment interest for pre-suit damages because CMU unduly delayed bringing this case and Marvell suffered substantial prejudice as a result;

- there is no justification for using anything but a market rate (*i.e.*, the prime rate or the T-Bill rate) to calculate prejudgment interest in this case;

- CMU's own arguments (along with the relevant case law) counsel in favor of applying the T-Bill rate over the prime rate here; and

- to the extent a market rate is used to calculate interest (as is appropriate), interest should be compounded on an annual basis.

## I.    THIS COURT SHOULD EXERCISE ITS DISCRETION TO DENY PREJUDGMENT INTEREST ON PRE-SUIT DAMAGES

CMU contends (Brief at 4-5)  that, because "Section 284 provides that a prevailing patent holder is entitled to 'damages . . . together with interest,'" CMU "is entitled to an award of prejudgment interest" and "the only issue to be determined is how that award should be calculated."  CMU misstates the law.  The Supreme Court has held:

1

> We do ***not*** construe section 284 as requiring the award of prejudgment interest whenever infringement is found.  That provision states that interest shall be fixed by the court, and in our view it leaves the court some discretion in awarding prejudgment interest.  ***For example, it may be appropriate to limit prejudgment interest, or perhaps even deny it altogether, where the patent owner has been responsible for undue delay in prosecuting the lawsuit.***  There may be other circumstances in which it may be appropriate not to award prejudgment interest.  We need not delineate those circumstances in this case.  We hold only that prejudgment interest should be awarded under Section 284 absent some justification for withholding such an award.

*Gen. Motors Corp. v. Devex Corp.*, 461 U.S. 648, 656-57 (1983) (emphasis added) (citations and internal quotation marks omitted).  Thus, whether to deny a request for prejudgment interest in whole or in part is a decision left to the discretion of the district court.  *Id.*; *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1346 (Fed. Cir. 2001) (reviewing "a district court's denial of prejudgment interest for an abuse of discretion").

Undue delay in bringing suit is a recognized justification for declining to award prejudgment interest altogether.  *Gen. Motors*, 461 U.S. at 657.  As described in Marvell's motion for judgment on laches, CMU's delay in bringing this action was sufficiently egregious that CMU should be precluded from recovering ***any*** pre-suit damages in this case (thus mooting CMU's request for prejudgment interest on those damages).  (Dkt. 802-804.)  Nonetheless, even if this Court were to permit CMU to recover some amount of pre-suit damages (which it should not), this Court should exercise its discretion to decline to award interest on those damages. *Lummus Indus., Inc. v. D.M. & E. Corp.*, 862 F.2d 267, 275 (Fed. Cir. 1988) (remanding for determination regarding "whether whatever delay may have existed is a sufficient basis for denial of prejudgment interest" despite district court's unchallenged holding "that the evidence was insufficient to establish laches"); *Mainland Indus., Inc. v. Standal's Patents Ltd.*, No. Civ. 81-928-BE, 1985 WL 6021, at *1, *5 (D. Or. Oct. 15, 1985) (finding claims "not barred by

laches" but "declin[ing] to award [] prejudgment interest" because patent holder "was responsible for substantial delay in pursuing its infringement claims").

For a *decade*, CMU was silent regarding its infringement allegations despite multiple indications that Marvell was developing and using technology that CMU contends infringes its patents. (Dkt. 804, at 8-16.)   And Marvell suffered extensive evidentiary and economic prejudice as a result of CMU's delay in filing this action.   (*Id.* at 16-20.)   In light of such circumstances, to the extent this Court finds that CMU is entitled to any pre-suit damages, it should deny CMU's request for interest on those damages.  *Gen. Motors*, 461 U.S. at 657; *Crystal Semiconductor*, 246 F.3d at 1361-62 (finding that "the district court acted within its discretion in denying [plaintiff] prejudgment interest" because "[plaintiff]'s two year delay in initiating the present suit caused the damages owed by [defendants] to escalate" and there was "sufficient evidence" that plaintiff's delay "resulted in prejudice to the defendants").

## II.   TO THE EXTENT PREJUDGMENT INTEREST IS GRANTED, IT SHOULD BE COMPUTED USING THE T-BILL RATE AND SHOULD BE COMPOUNDED ANNUALLY

CMU contends that prejudgment interest should be calculated using the state statutory rate (the highest available rate); or, in the alternative, the actual rate of return on CMU's investments (the next highest available rate); or, in the alternative, the prime rate (the third highest available rate).   (Brief at 7-13.)   But there is *no* rationale for using either the state statutory rate or CMU's actual rate of return to calculate interest in this case.   And, as between the prime rate and the other market rate often used to determine interest in patent cases – the T-Bill rate – CMU's own arguments (as well as the relevant case law) strongly suggest that this Court should exercise its discretion to use the T-Bill rate to calculate interest here.

A.     **There Is No Justification For Using The State Statutory Rate To Calculate Prejudgment Interest**

CMU offers two purported justifications for urging that prejudgment interest be awarded at the state statutory rate of 6%.  *First*, CMU contends that the statutory rate is a "consistent benchmark."  (Brief at 2, 7, 8.)  *Second*, CMU contends that the highest possible rate should be used to calculate prejudgment interest because CMU should be compensated for what was effectively a long-term loan by CMU to a high-risk debtor Marvell.  (*Id.* at 8-9.)  Neither contention supports applying the state statutory rate here.  What is more, there is no justification for awarding **compound** interest at the state statutory rate, as CMU requests.

While CMU's assertion that "it is in the interest of justice to have a consistent rate at which prejudgment interest is awarded" (Brief at 8) is well-founded in case law (*see Brunswick Corp. v. United States*, 36 Fed. Cl. 204, 219 (1996)), applying the Pennsylvania state statutory rate here would hinder – not further – that policy.   Patent cases are litigated in fora across the country, and statutory interest rates vary from state to state.  *E.g.*, N.H. Rev. Stat. § 336:1 (setting prejudgment interest at "the prevailing discount rate of interest on 26-week United States Treasury bills at the last auction thereof preceding the last day of September in each year, plus 2 percentage points," which would average 3.9% here); 815 Ill. Comp. Stat. 205/2 (setting prejudgment interest at 5%).

Thus, no uniformity is achieved by having interest rates in patent cases set as a byproduct of a plaintiff's choice of forum.  Moreover, courts have warned against "blindly apply[ing] the State's statutory rate," especially where that rate has no connection to market conditions during the relevant time frame (unlike truly "consistent benchmarks," such as the T-Bill rate and the prime rate). *E.g.*, *Bell Sports, Inc. v. Graber Prods., Inc.*, 29 U.S.P.Q.2d 1211, 1217 (W.D. Wis.

1993); *Brunswick*, 36 Fed. Cl. at 219 n.4 (listing "the rate of return on U.S. Treasury bills" and "the Prime Rate" – but not the state statutory rate – as "alternate 'uniform' rates").

As a practical matter, CMU is requesting that the state statutory rate be used here simply because it happens to be the highest rate available (yielding the largest possible interest award). (Brief at 8-9.)  CMU contends that using the highest possible rate is appropriate because it reflects the return CMU would have received on a "***ten-year*** loan" to a borrower (Marvell) likely to default.  (*Id.* at 8 (emphasis in original).)  But, even if the damages award were properly conceptualized as a loan to Marvell, the duration of the "loan" was largely the result of ***CMU's*** delay in prosecuting this action.  (*Supra* Part I.)  And the "loan" (no matter what its duration) was essentially risk-free: Marvell has substantial cash reserves to pay the damages award, rendering the risk of "default" close to nil.  (Affidavit of Sehat Sutardja in Support of Marvell's Opposition to CMU's Motion for Permanent Injunction, Post-Judgment Royalties, and Supplemental Damages ("Sutardja Affidavit") ¶ 5; Dkt. 789-1 Exh. 3, at 2.)  Moreover, if the Court requires, Marvell will post a bond sufficient to stay the judgment pending appeal, thereby ameliorating any default and/or collection risk that CMU might otherwise have faced.  (Sutardja Affidavit ¶ 5.)  Thus, as described more fully below (*infra* Part II.C), conceptualizing the damages award as a loan to Marvell – as CMU suggests – counsels in favor of calculating prejudgment interest using the ***lowest*** available rate rather than the highest.

Finally, CMU overreaches even further by contending that the state statutory rate should be used to calculate compound rather than simple interest.  The purpose of compounding is to reflect a circumstance in which a plaintiff would have received "interest on interest" if the damages award had been available to the plaintiff and invested in the market.  *See, e.g.*, *Gorenstein Enters., Inc. v. Quality Care-USA, Inc.*, 874 F.2d 431, 437 (7th Cir. 1989)  (cited by

CMU at page 5 of its Brief).  But, unlike the T-Bill rate or the prime rate, the state statutory rate is **not** a market rate.  There is thus no rationale for compounding interest calculated using that rate.  *See, e.g.*, *Gyromat Corp. v. Champion Spark Plug Co.*, 735 F.2d 549, 556-57 (Fed. Cir. 1984) (affirming district court's decision "that prejudgment interest is to be calculated as simple interest at the state statutory rate rather than, as Gyromat urges, as compound interest at the market rate").[1]

Indeed, when Pennsylvania state courts use the state statutory rate to calculate prejudgment interest, they uniformly award **simple** interest, not compound interest.  *E.g.*, *Daset Mining Corp. v. Indus. Fuels Corp.*, 473 A.2d 584, 595 (Pa. Super. Ct. 1984) (finding that "[i]nterest is a standardized form of compensation to the injured party for the loss of that use [of money]" and "[i]t is payable without compounding at the rate, commonly called the 'legal rate,' fixed by statute for this purpose"); *Bennett Levin & Assocs., Inc. v. Brooks*, No. 2866, 1992 WL 1071448, at *113 (Pa. Com. Pl. Dec. 9, 1992) (same); *Carroll v. City of Philadelphia*, 735 A.2d 141, 146-47 (Pa. Commw. Ct. 1999) ("The legal rate of interest is simple interest and may not be compounded."); *Tony DePaul & Son v. City of Philadelphia*, No. 2426, 1992 WL 1071420, at *415 (Pa. Com. Pl. Aug. 20, 1992) (awarding prejudgment interest as simple interest at statutory rate).  District courts calculating prejudgment interest in patent cases have appropriately taken note of a forum state's practice with respect to awarding only simple interest when using the state statutory rate.  *E.g.*, *Bard Peripheral Vascular, Inc. v. W.L. Gore & Assocs., Inc.*, No. CV-03-0597-PHX, 2009 WL 920300, at *2 (D. Ariz. Mar. 31, 2009) (awarding simple interest so as

---

[1]   Despite CMU implying to the contrary (Brief at 5), the Federal Circuit did not direct the Court of Claims to award compound interest rather than simple interest in *Dynamics Corp. v. United States*, 766 F.2d 518 (Fed. Cir. 1985).  Instead, the Federal Circuit held that the Court of Claims' finding that **only** simple interest could be awarded under 28 U.S.C. § 1498 was erroneous and remanded for further consideration of whether simple or compound interest would be appropriate.  *Id.* at 520.

to be "consistent with Arizona state case law, which has been hesitant to compound its statutory prejudgment interest rate").  And even a review of the cases cited by CMU reveals that federal district courts awarding prejudgment interest at a state statutory rate often do ***not*** award compound interest.  *Id.* (cited by CMU at page 7 of its Brief); *Hall v. Meadwestvaco Corp.*, No. Civ. A. 03-30310-KPN, 2005 WL 1205554, at *5 (D. Mass. May 18, 2005) (awarding simple interest at state statutory rate) (cited by CMU at page 8 of its Brief); *Bowling v. Hasbro, Inc.*, 582 F. Supp. 2d 192, 208 (D.R.I. 2008) (awarding simple interest at state statutory rate) (cited by CMU at pages 7-8 of its Brief); *see also Gyromat*, 735 F.2d at 556-57 (affirming award of simple interest at state statutory rate).

Accordingly, CMU's request that prejudgment interest be calculated using the state statutory rate – and that such interest be compounded – should be denied.

## B.   There Is No Justification For Using CMU's Purported "Actual Rate Of Return" To Calculate Prejudgment Interest

As noted above, in connection with arguing for application of the Pennsylvania state statutory rate (the highest rate CMU has identified), CMU itself acknowledges that courts overwhelmingly prefer to calculate prejudgment interest using one of the various "consistent benchmark[s]" available.  (Brief at 2, 7, 8.)  Nonetheless, because applying CMU's actual rate of return on its investments happens to result in a large prejudgment interest award, CMU inconsistently contends that the use of that rate – which is ***not*** a "consistent benchmark" – would be (i) the second best alternative to the Pennsylvania statutory rate and (ii) superior to truly uniform rates such as the T-Bill rate and the prime rate.  (*Id.* at 9-10.)  But, as demonstrated in large part by the case law CMU itself cites, there is no cogent rationale for using CMU's actual rate of return to calculate prejudgment interest in this case.

As an initial matter, CMU does not cite a single patent case in which a patentee's actual rate of return has been used to calculate prejudgment interest.  Indeed, both patent cases cited by CMU in support of its contention that its actual rate of return should be used to calculate interest here consider **but then reject** using the patentee's actual rate of return to determine prejudgment interest.  For example, in *Brunswick Corp. v. United States*, 36 Fed. Cl. 204 (1996) (cited by CMU at page 10 of its Brief), the patent holder argued that its weighted average cost of capital ("WACC") should be used to calculate prejudgment interest because it was "the most economically realistic" as it reflected its expected "return consistent with the cost of its capital." *Id.* at 219.  But the court *rejected* use of that rate because "[c]ourts are loathe to use subjective indicia of the appropriate interest rate" and because "using the WACC utterly defeats the strong judicial policy of establishing uniformity in the award" of prejudgment interest.  *Id.*  Instead of using the WACC, the court applied a uniform rate (the prime rate) to calculate prejudgment interest.  *Id.*  Similarly, in *The Boeing Co. v. United States*, 86 Fed. Cl. 303 (2009), the other patent case cited by CMU (at pages 9 and 10 of its Brief), a uniform rate, **not** an actual rate of return, was used to calculate prejudgment interest.  *Id.* at 323-24.

The reluctance of courts to use a patent holder's actual rate of return – rather than a uniform rate of return – to calculate prejudgment interest is appropriate.  If a patent holder happened to make investments resulting in a minimal, zero, or negative rate of return, courts would be hesitant to find that an infringer should benefit from the use of such a rate in connection with calculating prejudgment interest.  Indeed, if CMU had a minimal, zero, or negative actual rate of return over the relevant time period, it surely would not contend that such a rate should be used to calculate interest here.  Similarly, there should be no punitive tax on an

alleged infringer simply because a patent holder happened to benefit from high actual returns during the relevant time period.

What is more, how a patent holder would have invested royalties awarded for infringement is an inherently speculative inquiry, regardless whether there is evidence regarding how a patent holder invested other monies.  *See e.g.*, *Intex Plastic Sales Co. v. Hall*, 20 U.S.P.Q.2d 1367, 1371 (N.D. Cal. 1991) (noting the necessarily "speculative" nature of attempting to assess whether a patent holder would "have invested the money in T-Bills" or would "have invested it all in some spectacularly unsuccessful venture and lost every penny"), *aff'd*, 960 F.2d 155 (Fed. Cir. 1992).  That is especially the case here, where the royalty awarded is greater than the value of CMU's entire endowment (*see* CMU Frequently Requested Items, http://www.cmu.edu/osp/frequently-requested-items/index.html) and where CMU has offered ***no*** evidence that it would have made the same investment decisions over the relevant period had it had access to more than double the amount of funds.

Accordingly, CMU's alternative request to use its actual rate of return to calculate prejudgment interest in this case should be denied.

### C. Of The Two Uniform Market Rates Available, This Court Should Exercise Its Discretion To Calculate Prejudgment Interest At The T-Bill Rate

In patent cases, courts most often award prejudgment interest using one of two market rates – the rate of return on U.S. Treasury Bills (the "T-Bill rate") or the prime rate.  Although CMU cites several instances in which the prime rate has been used to calculate prejudgment interest (Brief at 11-13), CMU ignores the equally frequent use of the T-Bill rate.

The Federal Circuit has repeatedly upheld use of the T-Bill rate in calculating prejudgment interest in patent cases.  *E.g.*, *Laitram Corp. v. NEC Corp.*, 115 F.3d 947, 955 (Fed. Cir. 1997) (upholding award of prejudgment interest at T-Bill rate); *Datascope Corp. v. SMEC,*

*Inc.*, 879 F.2d 820, 829 (Fed. Cir. 1989) (finding patent holder "adequately compensate[d]" by prejudgment interest calculated using "the Treasury bill rate of section 1961").  And district courts often find that the use of the T-Bill rate results in an award of prejudgment interest sufficient to compensate the patent holder.  *E.g.*, *Apple, Inc. v. Samsung Elecs. Co.*, No. 11-cv-01846-LHK, 2013 WL 772525, at *5 (N.D. Cal. Mar. 1, 2013); *Hoechst Celanese Corp. v. BP Chems. Ltd.*, 846 F. Supp. 542, 550-51 (S.D. Tex. 1994) ("[T]he Court is mindful that the purpose of pre-judgment interest is solely to compensate the patentee for the lost use of the royalty income he should have been paid.  Accordingly, the Court finds the T-Bill rate to be the appropriate standard.") (internal citations omitted), *aff'd*, 78 F.3d 1575 (Fed. Cir. 1996); *Nat'l Presto Indus., Inc. v. Black & Decker Inc.*, No. 89 C 8978, 1992 WL 125559, at *8 (N.D. Ill. May 27, 1992) (noting that patent holder "will be fully compensated" by being awarded prejudgment interest at the "Treasury Bill rate"); *Fromson v. Western Litho Plate & Supply Co.*, 13 U.S.P.Q. 1856, 1863 (E.D. Mo. 1989) ("In light of the ample precedent supporting the Treasury bill rate as an adequately compensatory rate, the Court will award prejudgment interest at the 52-week T-Bill rate compounded annually."), *aff'd*, 909 F.2d 1495 (Fed. Cir. 1990); *see also Eolas Techs. Inc. v. Microsoft Corp.*, 70 U.S.P.Q. 2d 1939, 1947 (N.D. Ill. 2004) (using T-Bill rate to calculate prejudgment interest), *vacated on other grounds*, 399 F.3d 1325 (Fed. Cir. 2005); *Fonar Corp. v. Gen. Elec. Co.*, 902 F. Supp. 330, 354 (E.D.N.Y. 1995) (same), *rev'd on other grounds*, 107 F.3d 1543 (Fed. Cir. 1997); *Bell Sports*, 29 U.S.P.Q.2d at 1217 (same); *Intex*, 20 U.S.P.Q.2d at 1371 (same); *Arriflex Corp. v. Aaton Cameras, Inc.*, 225 U.S.P.Q. 487, 488-89 (S.D.N.Y. 1984) (same); *Avco Corp. v. PPG Indus., Inc.*, 867 F. Supp. 84, 99 (D. Mass. 1994) (same).

In selecting between the prime rate and the T-Bill rate, courts often undertake one of two analyses – either considering the risk of default by the defendant or considering the cost of borrowing to the plaintiff.  Although CMU improperly conflates the two, both considerations counsel in favor of calculating prejudgment interest using the T-Bill rate in this case.

*First*, CMU repeatedly argues that Marvell's creditworthiness should be taken into account in determining the interest rate to be applied.  (Brief at 2, 8, 11-12.)  Despite CMU's speculative allusions to the contrary, the undisputed ***evidence*** is that Marvell has cash and short-term investments sufficient to pay the judgment, rendering Marvell's default risk nominal if not non-existent.  (Dkt. 789-1 Exh. 3, at 2; Sutardja Affidavit ¶ 5.)  Moreover, if the Court requires, Marvell will post a bond to stay execution of any monetary judgment pending appeal, thereby rendering any default or collection risk zero.  (Sutardja Affidavit ¶ 5.)  Thus, according to CMU's own theory (and relevant case law), the negligible default risk here makes the T-Bill rate more appropriate than the prime rate in calculating prejudgment interest.  *E.g.*, *Eolas*, 70 U.S.P.Q.2d at 1941 ("The argument against using the prime rate is that the prime rate is designed to compensate for financial risk (albeit the low risk of prime borrowers) associated with the possibility of non-payment by borrowers.  Given Microsoft's strong financial position, it presents a risk that is much more like that of federal government making the Treasury Bill rate more appropriate."); *In re Universal Foundry Co. v. First Wis. Fin. Corp.*, 163 B.R. 528, 542 (E.D. Wis. 1993) (affirming use of the T-Bill rate in calculating prejudgment interest because "the risk of default was low or non-existent" as defendant "is part of a highly solvent, multistate holding company"), *aff'd*, 30 F.3d 137 (7th Cir. 1994).

*Second*, the cost of borrowing to CMU also supports the use of the T-Bill rate for calculating prejudgment interest.  CMU has offered no evidence that it "borrowed any money

because it was deprived of the damages award."  *Apple*, 2013 WL 772525, at *5 (finding the T-Bill rate "sufficient" for calculating prejudgment interest where, among other things, there was no "causal connection between any borrowing and the loss of the use of the money awarded as a result of the defendant's infringement").  Indeed, the evidence is that CMU's borrowings were "significantly lower" than the amount of the judgment, were used in connection with capital projects (for which such borrowing is typical), and were at rates lower than prime.  (Dkt. 789-1, at 9.)  Thus, the cost of borrowing to CMU does ***not*** counsel in favor of using the prime rate to calculate interest in this case.

The non-existent risk of default and CMU's limited borrowing at less than the prime rate both suggest that the T-Bill rate is most appropriate for calculating prejudgment interest here.

### D.    To The Extent A Market Rate Is Used To Calculate Prejudgment Interest, It Should Be Compounded Annually

As noted above, interest should be compounded only to the extent a market rate is used for the computation.  To the extent such a market rate is used, interest should be compounded annually.

Although CMU points to three of Marvell's license agreements that happen to require payment of royalties on a quarterly basis (Brief at 6-7), most of Marvell's license agreements provide for no running royalty at all.  (Dkt. 372-01, at 14-15, 16, 28-30.)  Moreover, even the running-royalty license agreements cited by CMU contain different provisions for the timing of payments (ranging from 30 to 60 days following the royalty period).  (Dkt. 789-1 Exh. 1, at ¶ 5(c) (listing three agreements, one requiring payment within 30 days, one within 45, and one within 60).)  Thus, there is no "standard practice" (Brief at 6) for the timing of Marvell's royalty payments.  Accordingly, interest should be compounded annually.  *E.g.*, *Apple*, 2013 WL 772525, at *5 (awarding prejudgment interest at the T-Bill rate compounded annually).

12

### III.    POST-JUDGMENT INTEREST SHOULD BE CALCULATED PURSUANT TO 28 U.S.C. § 1961.

Pursuant to 28 U.S.C. § 1961, post-judgment interest should be calculated at a rate equal to the weekly average 1-year constant maturity Treasury yield for the calendar week preceding the date of the judgment, or 0.14%, compounded annually.

### CONCLUSION

For the foregoing reasons, (i) CMU should be precluded from recovering prejudgment interest on any pre-suit damages; (ii) to whatever extent prejudgment interest is granted, it should be calculated using the historical T-Bill rate compounded annually; (iii) post-judgment interest should be calculated pursuant to 28 U.S.C. § 1961(a); and (iv) the parties should be directed to submit a joint statement regarding the actual prejudgment and post-judgment interest to be awarded (if any) following this Court's resolution of the parties' post-trial motions.

Dated:  March 25, 2013                              Respectfully submitted,

    /s/   John E. Hall                         /s/   Edward J. DeFranco

| | |
|---|---|
| John E. Hall | Edward J. DeFranco  (*pro hac vice*) |
| Timothy P. Ryan | Kathleen M. Sullivan (*pro hac vice*) |
| ECKERT SEAMANS CHERIN & | Faith Gay  (*pro hac vice*) |
| MELLOTT, LLC | Raymond Nimrod  (*pro hac vice*) |
| U.S. Steel Tower | David Radulescu  (*pro hac vice*) |
| 600 Grant Street, 44th Floor | Derek L. Shaffer (*pro hac vice*) |
| Pittsburgh, PA 15219 | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| Phone: (412) 566-6000 | 51 Madison Avenue, 22nd Floor |
| Fax: (412) 566-6099 | New York, New York 10010 |
| jhall@eckertseamans.com | Phone: (212) 849-7000 |
| tryan@eckertseamans com | Fax: (212) 849-7100 |
| | eddefranco@quinnemanuel.com |

Steven G. Madison  (*pro hac vice*)
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S. Figueroa St., 10th Floor
Los Angeles, California 90017
Phone: (213) 443-3000
Fax: (213) 443-3100
stevemadison@quinnemanuel.com

Kevin P.B. Johnson  (*pro hac vice*)
Melissa J. Baily
QUINN EMANUEL URQUHART & SULLIVAN, LLP
555 Twin Dolphin Drive., 5th Floor
Redwood Shores, California 94065
Phone: (650) 801-5000
Fax: (650) 801-5100
kevinjohnson@quinnemanuel.com

*Attorneys for Defendants, Marvell Technology Group,*
*Ltd. and Marvell Semiconductor, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on March 25, 2013, the foregoing was filed electronically on ECF.  I also hereby certify that on March 25, 2013, this filing will also be served on counsel for CMU by electronic mail.

_____/s/   John E. Hall_____

John E. Hall
Timothy P. Ryan
ECKERT SEAMANS CHERIN & MELLOTT, LLC
U.S. Steel Tower
600 Grant Street, 44th Floor
Pittsburgh, PA 15219
Phone: (412) 566-6000
Fax: (412) 566-6099
jhall@eckertseamans.com
tryan@eckertseamans com

*Attorneys for Defendants,*
*Marvell Technology Group, Ltd. and*
*Marvell Semiconductor, Inc.*

15