## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CARNEGIE MELLON UNIVERSITY,   )
       )
     Plaintiff,   )
       )
   vs.   )   Civil Action No. 09-290
       )   Judge Nora Barry Fischer
MARVELL TECHNOLOGY GROUP, LTD.   )
et al.,   )
       )
     Defendants.   )

## MEMORANDUM OPINION

This is a patent infringement case brought by Plaintiff, Carnegie Mellon University ("CMU"), against Defendants Marvell Technology Group, Ltd. and Marvell Semiconductor, Inc. (collectively "Marvell"), alleging that Marvell has infringed two of its patents. Presently before the Court are Defendants' "Motion for Leave to File Certain Slides and Photographs Used by the Parties During Trial Under Seal" and "Motion to File Under Seal the Affidavit of Sehat Sutardja in Support of Marvell's Motion for Judgment on Laches" with complete briefing by both parties. (Docket Nos. 772, 773, 779, 797, 815, 817, 818). These motions relate to three categories of documents: (1) demonstrative slides that were shown during the jury trial held in November and December 2012; (2) demonstrative slides that were not shown to the jury; and (3) the affidavit of Marvell CEO Dr. Sutardja in support of Marvell's post-trial motion on laches. (Docket Nos. 772, 797). Marvell argues that said documents contain confidential sales data, trade secrets and sensitive financial information and wishes to have them sealed on these grounds. (*Id.*). CMU counters that all of said information has already been disclosed at trial, and as a matter of judicial record such slides and affidavit should not be placed under seal. (Docket No. 815). Upon

1

consideration of the parties' submissions, the transcript, the challenged slides and affidavit, and for the following reasons, Defendants' Motions to Seal (Docket Nos. 772, 797) are DENIED.

## I.   FACTUAL AND PROCEDURAL HISTORY

The Court conducted a four-week jury trial beginning on November 26, 2012 in this case. (Docket No. 760). The jury rendered a verdict on December 26, 2012 in favor of the Plaintiff on infringement, validity, and willfulness, and awarding damages for the Plaintiff in the amount of $1,169,140,271.00. (Docket No. 762).

At trial, CMU sought money damages from Marvell for infringement, in the form of a $0.50 per chip royalty on all Accused Chips sold by Marvell from March 2003 to the present. (Docket No. 671 at 123). CMU proffered evidence that the Accused Technology was "must have" for Marvell and thus, the parties would have agreed to a running royalty of $0.50 at a hypothetical negotiation in March 2003. (Docket No. 710 at 171). CMU called Catherine Lawton[1] as its damages expert. (Docket No. 686) She explained that Marvell sales data showed sales of 2.34 billion Accused Chips between March 6, 2003 and July 28, 2012. (Docket No. 686. at 29-61). In doing so, she analyzed sales data provided by Marvell to calculate an "excess profits" benchmark of $0.42 per chip and "operating profit premium" benchmark of $0.06 to $0.72 per chip, concluding that the appropriate reasonable royalty was $0.50 per chip. (Docket No. 710 at 170-171).

---

[1]      Ms. Lawton is a damages consultant with Berkeley Research Group. She has a degree in finance and has been working in the field of damages calculation for 27 years, testifying and working on a variety of cases. Marvell filed a *Daubert* challenge to Ms. Lawton which the Court granted, in part, and denied, in part. (Docket No. 451). Then, after a full day of examination on her credentials and experience both before the jury and in camera, she was accepted by the Court as an expert in IP damages. *See also* December 15, 2012 Order on Marvell's Motion to Exclude the Testimony of Catherine Lawton. (Docket No. 713).

Marvell rebutted this damages calculation by presenting their own damages expert, Creighton Hoffman.[2]   (Docket No. 709).   Mr. Hoffman based his opinion primarily on other agreements by CMU and his perceptions of CMU's marketing and licensing of the patents. (Def. Ex. 17; Def. Ex. 39; Def. Ex. 40; Def. Ex. 255).   His ultimate opinion was that a reasonable royalty in this case would be a one-time royalty payment of $250,000.00.   (*Id.* at 242-245).

Due to continuing objections as to the scope of Ms. Lawton's testimony, her calculations, and slides, and in furtherance of its gatekeeping responsibility pertaining to the admissibility of expert testimony, the Court required Ms. Lawton to give her entire testimony first outside the presence of the jury using approximately 200 Powerpoint slides she had prepared to aid in her testimony.   (Docket No. 706); *see Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993).   Given CMU's proffer and this testimony, the Court accepted her as an expert in IP damages.   (Docket No. 686 at 29).   During her testimony to the jury the next day, the Court opted not to allow Ms. Lawton to use most of her slides in order to avoid objections and argument on each slide.   (Docket No. 686 at 20).   However, Ms. Lawton was able to use some demonstratives with no renewed objection from Marvell.   (Docket Nos. 686, 710).   In light of these circumstances, the Court ordered the parties to file all slide decks and emails containing objections to said slides for the record.   Consequently, the parties filed same as a joint submission with no objections on December 12, 2012.   (Docket No. 708).   Similarly after the trial, the Court again ordered the parties to file all slides marked as demonstrative exhibits during the trial and listed on the Court's exhibit list.   (Docket Nos. 709 at 15; 761, 770, 771).

---

[2]         Mr. Hoffman is a CPA previously employed at Price Waterhouse, now with Hoffman-Alvary, where he primarily deals with intellectual property negotiations and damages consulting.   (Docket No. 709 at 105-172).   CMU filed a *Daubert* challenge to Mr. Hoffman which the Court granted, in part, and denied, in part. (Docket No. 450). During trial, the Court accepted him as a damages expert in the realm of intellectual property damages.   (Docket No. 709 at 172).

Marvell first raised the issue of trying their defense of laches, in the parties' initial submission of proposed jury instructions on November 9, 2012. (Docket No. 623).  At that time, Marvell asked that the issue be presented to the jury on an advisory basis.  (*Id.*)  Given the parties' argument during the pretrial conference, the Court ordered further briefing on the issue of laches in their trial briefs due the following week.   (Docket Nos. 637, 645 at 54-56; 648 at 192, 230-31).  Upon consideration of the parties' arguments and their briefing, on November 28, 2012, the Court ruled that the issue was not appropriately "teed up" for a decision by an advisory jury because Marvell had not proffered specific evidence to demonstrate *when* CMU first became aware of Marvell's infringement or *what* evidentiary or economic prejudice Marvell had allegedly sustained due to CMU's alleged delays to that point. (Docket No. 670).  Therefore, the Court held that the issue of laches would be decided by the Court in a subsequent proceeding. (*Id.*).

The Court also ruled that in said subsequent proceeding, the parties could submit findings of fact and conclusions of law on the issue of laches, as it appeared to the Court at that time that there was no difference between the evidence to be presented to the jury at trial concerning Marvell's defense to willful infringement and the defense of laches.  (*Id.*).  Marvell, however, moved for an evidentiary hearing on laches on January 31, 2013, which CMU opposed.  (Docket No. 778, 780).  In response, the Court ordered that no such hearing would be held, but that Marvell could supplement their position with supporting affidavits on their claims of alleged "economic or evidentiary prejudice," to the extent they believed they were not able to present such evidence at trial due to (self-imposed) time limits.  (Docket No. 781).  Accordingly,

Marvell has submitted the affidavits of their CEO, Dr. Sutardja and Dr. Xining Wu[3] addressing alleged economic prejudice in support of their laches defense.  (Docket No. 802).

On January 23, 2013, both parties filed their demonstrative exhibits which were used at trial, with Marvell noting that select pages of the demonstratives would be filed under seal subject to the Court's order on Marvell's Motion for Leave to File Under Seal.  (Docket Nos. 770, 771).  Marvell filed this Motion for Leave to File under Seal with Brief in support on January 28, 2013. (Docket Nos. 772, 773).  As part of their Motion for Leave to File Under Seal, Marvell also requested that the Court partially seal slides located at Docket No. 708.  (Docket No. 773 at 9).  Concurrently, Marvell hand delivered to the Court a copy of all the slides at issue. With their brief, Marvell submitted the declaration of their current CFO Brad Feller stating how each slide would harm Marvell's financial position if it would remain on the public docket. (Docket No. 773 at Ex. 1). CMU opposed this motion, (Docket No. 797), Marvell replied (Docket No. 814), and CMU sur-replied.  (Docket No. 817).

In accord with the Court's Scheduling Order for all post-trial motions (Docket No. 763), Marvell filed their Motion for Judgment on Laches on February 11, 2013, accompanied by a redacted affidavit of CEO Dr. Sutardja.  (Docket No. 802).  Marvell requested Leave to File said affidavit under seal (Docket No. 797), which CMU opposed (Docket No. 815), and Marvell filed a Reply in support.  (Docket No. 818).  Hence, these motions are now ripe for disposition and given the interrelated nature of the requests, the Court will treat these two motions in the same opinion.

## II.  LEGAL STANDARD[4]

---

[3]      Marvell has not asked to place the affidavit of Dr. Xining Wu under seal.

### A.  Burden of Proof

A party seeking the closure of a hearing or the sealing of part of the judicial record "bears the burden of showing that the material is the kind of information that courts will protect" and that "disclosure will work a clearly defined and serious injury to the party seeking closure." *In re Cendant Corp*., 260 F.3d 183, 194 (3d Cir. 2001) (citing *Miller v. Indiana Hosp*., 16 F.3d 549, 551 (3d Cir. 1994); *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1071 (3d Cir. 1984)). The burden is on the party who seeks to overcome the presumption of access to show that the interest in secrecy outweighs the presumption. *Leucadia, Inc. v. Applied Extrusion Tech., Inc*., 998 F.2d 157, 165 (3d Cir. 1993). In order to meet this burden, the party seeking closure must provide specificity when delineating the injury to be prevented. *See Publicker*, 733 F.2d at 1071.  Broad allegations of harm, bereft of specific examples or articulated reasoning, are insufficient. *In re Cendant Corp*., 260 F.3d at 194.

### B.  Presumption to a Right of Access

It is well-settled in the Third Circuit that there exists a common law public right of access to judicial proceedings and records. *Pugliano v. Grace Holmes, Inc.*, 2:11-CV-OI562, 2012 WL 1866380 (W.D. Pa. May 22, 2012); *Littlejohn v. BIC Corporation,* 851 F.2d 673, 677–78 (3d Cir. 1988). "The common law right of access antedates the Constitution, and its purpose is to promote public confidence in the judicial system by enhancing testimonial trustworthiness and the quality of justice dispensed by the court." *LEAP Sys., Inc. v. MoneyTrax, Inc.*, 638 F.3d 216, 220 (3d Cir. 2011) (internal citations omitted).  This right encompasses both civil and criminal

---

4       The Court notes while the merits of this patent case are appealable to the Federal Circuit, a motion to seal should be judged by the laws of the Third Circuit, as it is a purely procedural question not pertaining to patent law. *See Superior Indus., LLC v. Thor Global Enterprises Ltd.*, 700 F.3d 1287, 1292 (Fed. Cir. 2012).

trials.  *Publicker,* 733 F.2d at 1070 ("Public access to civil trials, no less than criminal trials, plays an important role in the participation and the free discussion of governmental affairs.").

The right of access doctrine extends beyond a person's ability to attend court proceedings and also encompasses a person's right "to inspect and copy public records and documents, including judicial records."  *Leucadia,* 998 F.2d at 161.  Thus, judicial records are subject to the common law presumption of public access.  *In re Cendant Corp.,* 260 F.3d at 192.  A document is deemed to be a "judicial record" if it is "filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings."  *Id.* (citing *Pansy v. Borough of Stroudsburg,* 23 F.3d 772 (3d Cir. 1994); s*ee also LEAP Sys., Inc.* at 220; *see also United States v. Martin,* 746 F.2d 964, 968 (3d Cir. 1984) ("The common law right of access is not limited to evidence, but rather encompasses all judicial records and documents. It includes transcripts, evidence, pleadings, and other materials submitted by litigants...") (citations and quotation marks omitted).

### C.  Compelling Interests Must Justify Non-Disclosure of Trial Records

Courts have recognized that the "right is not absolute" and have held that the presumption of public access may be rebutted.  *In re Cendant Corp.*, 260 F.3d at 192.  Generally, a party wishing to seal a judicial record must demonstrate that "good cause" exists for the sealing.  *Pansy*, 23 F.3d at 786. "Good cause" can be established by showing that disclosure will work a clearly defined and serious injury to the party seeking closure. *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 09-cv-0480, 2012 WL 512681 at *4-5 (W.D. Pa. Feb. 14, 2012) (citing *Pansy*, 23 F.3d at 786).  In the Third Circuit, this "good cause" standard applies to discovery materials and settlement agreements, which are not materials filed with Court on the record.[5]  *Pansy*, 23 F.3d at

---

[5]     *See* this Court's local civil rule 5.4, wherein it states that discovery materials are not to be filed with the Court unless necessary to decide a motion or determine whether relief should be granted.  See Local Rules of the

783, 786, fn 11. ("whether the relevant document is in the court file is the critical inquiry"); *F.T.C. v. AbbVie Products LLC*, 12-16488, 2013 WL 1149311 (11th Cir. Mar. 21, 2013) (distinguishing discovery materials from judicial records).

There is, however, a higher presumption of public access to non-discovery, evidentiary materials. *Littlejohn*, 851 F.2d at 684; *In re Cendant Corp.,* 260 F.3d 183 (a "presumptive right of public access to pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith"). Thus, the showing of "good cause" alone cannot justify protecting material introduced at trial. *Poliquin v. Garden Way, Inc.,* 989 F.2d 527, 533 (1st Cir. 1993); *see also Littlejohn* 851 F.2d at 678, 684. Rather, it is clear that only the most compelling interests can justify the non-disclosure of judicial records. *Id.; In re Cendant Corp.,* 260 F.3d 183 (a "compelling countervailing interests" standard is appropriate given the high public interest in the open proceeding); *Miller,* 16 F.3d at 551 (before sealing judicial records in a case "involving ordinary civil litigation" a District Court must articulate "*compelling* countervailing interests and specific findings on the record concerning the effects of disclosure, and provide an opportunity for interested third parties to be heard") (emphasis added). The publicity of a trial and the release of information therein is "the price paid for open trials." *Poliquin*, 989 F.2d at 533. In this inquiry, the District Court must balance the private and public interests involved, in light of the facts of the individual case. *W. Penn Allegheny Health Sys., Inc.*, 09CV0480, 2012 WL 512681 at *4-5.

Previous public disclosure of information in open court, and even outside of court, operates to waive any right to seal judicial records containing such information. *W. Penn Allegheny Health Sys., Inc.,* 09-cv-0480, 2012 WL 512681 (the Court could not justify sealing

---

Western District of Pennsylvania (LCvR 5.4) available at
http://www.pawd.uscourts.gov/Documents/Forms/lrmanual.pdf.

documents, of which essentially all of the information contained therein was already available to the public via the Plaintiff's own website, news releases, easy internet searches, government filings, government websites, and Plaintiff's advertisements).  Indeed, with respect to materials used at trial, "it is well established that the release of information in open court is a publication of that information and, if no effort is made to limit its disclosure, operates as a waiver of any rights a party had to restrict its future use."  *Littlejohn*, 851 F.2d at 677–78.  Once the information has been used at trial, the private interest in secrecy is not to be weighed heavily by the Court in its determination of disclosure. *Id.* at 685.

### D.   Trade Secrets and Business Information

Release of trade secrets or other confidential business information may work a defined injury.  *Nixon v. Warner Communications*, 435 U.S. 589, 597 (1978) ("courts have refused to permit their files to serve as ... sources of business information that might harm a litigant's competitive standing.")  However, business information alleged to be confidential "is not entitled to the same level of protection from disclosure as trade secret information." *Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 663 (3d Cir. 1991) (internal citation omitted).  To show good cause for sealing any document, the movant must show through current evidence that public dissemination of the pertinent material would cause present competitive harm.  *Leucadia, Inc.*, 998 F.2d at 166-167.  ("continued sealing must be based on 'current evidence to show how public dissemination of the pertinent materials now would cause the competitive harm [they] claim'") (citing *Westinghouse Elec. Corp.*, 949 F.2d at 663).  Absent "extraordinary circumstances, commercial embarrassment is not a compelling reason to seal a trial record."  *Poliquin*, 989 F.2d at 533.

### III. DISCUSSION

### A.  Demonstrative Slides

### 1.  Presumption of Legal Access

Marvell, as the movant seeking to seal records, bears the burden of showing with specificity that "disclosure will work a clearly defined and serious injury" to Marvell.[6]  *In re Cendant Corp.,* 260 F.3d at 194.  This trial was a proceeding open to the public and "[t]rue public access to a proceeding means access to knowledge of what occurred there …not only by witnessing a proceeding firsthand, but also by learning about it through a secondary source." *United States v. Antar,* 38 F.3d 1348, 1360 (3d Cir. 1994).

All of the Powerpoint slides that Marvell seeks to file under seal constitute judicial records, as they are documents "filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings."  *In re Cendant Corp.,* 260 F.3d at 192.  Thus, these documents are subject to the common law presumption of public access.  *Id.*; *Martin,* 746 F.2d at 968 ("The common law right of access … encompasses all judicial records and documents.")   Most of the slides requested to be sealed were shown at trial, are either part of witnesses' testimony, referenced in closing arguments or used as evidence offered by Marvell. (D-Demo 1, D-Demo 7, D-Demo 11, D-Demo 15, D-Demo 17, P-Demo 9, P-Demo 11, P-Demo 13, P Demo 14, P-Demo 16, P-Demo 20, P-Demo 21, P-Demo 22, DX-1608, DX-1609).  The jury examined these slides[7] and took notes on same to use during their deliberations.  *Id.* Members of the press, attorneys from both parties, witnesses, jury consultants, shadow jurors, and numerous interested bystanders, including judges, law clerks, and business lawyers, as well

---

[6]       The Court also notes Robert Timothy Reagan, *Sealing Court Records and Proceedings: A Pocket Guide*, Federal Judicial Center (2010), which discusses the public right of access, specific issues and general concerns regarding sealing.  Available at http://www.fjc.gov/public/pdf.nsf/lookup/Sealing_Guide.pdf/$file/Sealing_Guide.pdf.

[7]       The Court notes that these slide presentations were projected on all the display monitors on each of the counsel tables, for the jurors, and blown up on the 10 by 10 foot projector screen the parties set up in the Courtroom at the start of the trial.

as local patent practitioners, who attended all or part of this trial,[8] were free to see these slides, listen to the relevant testimony, and record any and all information contained therein.

To the extent that Marvell claims certain slides were not shown at trial, as they were not projected before the jury, (Docket No. 814 at 4), those slides were nevertheless utilized during the Court's consideration of the extent and nature of Ms. Lawton's testimony as challenged by Marvell.[9]   (Docket No. 706; Docket No. 708; P-Demo 9).   For over three hours, Ms. Lawton walked the Court, counsel, and anyone who wished to listen through each of her proposed slides.[10]   (Id.).   Given the debate surrounding Ms. Lawton's proposed testimony, the Court ordered the parties to file all disputed slides on the docket, which the parties did jointly, without objection or reservation of objections.   (Docket No. 708).   While this "dry run" was not done in the presence of the jury or recorded by the Court reporter,[11] it was still an open judicial proceeding.   *In re Cendant Corp.*, 260 F.3d at 192 (holding that the public right of access clearly applied to an "*in camera* hearing conducted by the District Court, as that hearing was a judicial

---

[8]      The Court also notes that as many as 70-80 people were present in the Courtroom on various days throughout this trial.

[9]      Upon the Court's review, there are only 9 slides that were either never shown to the jury nor are publicly available at Exhibit K to Docket No. 771.   These 9 slides are located in several locations. (P Demo 9 Slide 4/Docket No. 708.1 at Slide 6/ 708.1 at 6/ 708.8 at 7; P Demo 9 Slide 5/Docket No. 708.1 at Slide 7/ 708.1 at 7/ 708.8 at 8; P Demo 9 Slide 6/Docket No. 708.1 at Slide 8/ 708.1 at 8/ 708.8 at 9; P Demo 9 Slide 7/Docket No. 708.1 at Slide 9/ 708.1 at 9/ 708.8 at 10; P Demo 9 Slide 8/Docket No. 708.1 at Slide 10/ 708.1 at 10/ 708.8 at 11; P Demo 9 Slide 10/Docket No. 708.1 at Slide 12/ 708.1 at 12/ 708.8 at 13; P Demo 9 Slide 11/Docket No. 708.1 at Slide 13/ 708.1 at 13/ 708.8 at 14; P Demo 9 Slide 187/Docket No. 708.3 at Slide 3; P Demo 9 Slide 188.)

[10]      Hereinafter, this proceeding will be referred to as the "Lawton hearing."

[11]      CMU suggested conducting this exercise outside of the presence of the jury and asked that it be unrecorded by a court reporter in order to avoid providing Marvell an improper opportunity to prepare cross examination of Ms. Lawton.   (Docket No. 706 at 163).   No objection was made by Marvell.   (*Id.*).   Rather, Marvell's concerns regarding her proposed presentation were articulated as unfairly prejudicial due to her calculations and the size of the estimated damages in the context of a *Daubert* challenge.   (*Id.* at 163 at ln 9-10).   The objections were not based on the nature of the material as confidential or proprietary.

11

proceeding.")[12]   Marvell never asked to have this proceeding closed due to their sensitive nature of the financial information.   Instead, Marvell agreed to have their CEO Dr. Sutardja present during this hearing and they requested that Dr. Cohon of CMU as well as Marvell's damages expert, Mr. Hoffman sit in.[13]   (Docket No. 706 at 162, 165, 169, 170) ("Mr. McElhinny (CMU): Maybe we should have Dr. Sutardja here to listen to the Lawton direct….Mr. Madison (Marvell): How about Dr. Cohon?... Mr Johnson (Marvell): Your Honor, during the direct, is it acceptable to have Mr. Hoffman sit in on the direct?").[14]

As this was an open proceeding, the public maintains its right to secure knowledge of what occurred there, and it would be inconsistent with Third Circuit precedent to seal the materials discussed at such an open proceeding. *Antar*, 38 F.3d at 1360 ("[F]or what exists of the right of access if it extends only to those who can squeeze through the door?").   Even if the materials were not shown for the jury's consideration, the slides remain part of the judicial trial record.   The Court made rulings based on same.   Accordingly, there is a strong presumption in favor of public access to all of the slides that Marvell seeks to seal.   *Littlejohn*, 851 F.2d at 684. Thus, Marvell must demonstrate "compelling reasons" to justify the non-disclosure of these records.   *Poliquin*, 989 F.2d at 533; *see also Littlejohn,* 851 F.2d at 678, 684.

---

[12]     *See further* A Project of The Sedona Conference Working Group on Protective Orders, & Confidentiality & Public Access (WG2), *The Sedona Guidelines: Best Practices Addressing Protective Orders, Confidentiality & Public Access in Civil Cases March 2007 Post-Public Comment Version*, 8 SEDONA CONF. J. 141, 188 (2007) (There exists a public access to trial, wherein "trials encompass[] jury and non jury trials as well as any judicial proceeding in court or on the record, except those conducted *in camera*").   The Court held one *in camera* proceeding of Ms. Lawton at Marvell's request, for which the Court explicitly stated the proceedings would be held *in camera* due to the confidential nature of certain of her previous consulting employment.   (Docket No. 706 at 141-144, 173).

[13]     This likely included Mr. Hoffman's assistant as well, who accompanied him for most of the trial.

[14]     The Court encouraged Dr. Sutardja to attend.   Dr. Cohon was out of the country at the time.   (Docket No. 706 at 169).   The Court ruled that it was improper for Dr. Hoffman to be present during this hearing as it was a "preview" of her testimony.   (*Id.* at 170).   As there was no request to bar entry to the Courtroom or proceed in chambers, the Court recalls several individuals from other chambers listening in through this proceeding.

The slides were released in open court, either during trial or the Lawton hearing, with no effort to limit disclosure, thus waiving any rights Marvell had to restrict their future use. *Littlejohn*, 851 F.2d at 677–78.  Marvell itself was the party that publicized a portion of the slides in their opening statement (D. Demo-1); with their damages expert, Mr. Hoffman, (D-Demo 7; D-Demo 15); in their cross–examination of Ms. Lawton, (D-Demo 11); in closing arguments, (D-Demo 17); and, proffered as evidence for the jury.  (DX-1608; DX-1609).   Throughout, Marvell did not move to seal these slides during trial, ask for a protective order, request an *in camera* review, or insist on a closed proceeding.  For materials that were published in open court by CMU, (P-Demo 9, P-Demo 11, P-Demo 13, P Demo 14, P-Demo 16, P-Demo 20, P-Demo 21, P-Demo 22; Docket No. 708), Marvell never requested to limit disclosure at the time of their use.[15]  In fact, the filed submission of Ms. Lawton's Slides (Docket No. 708), contains almost all of the information in the now disputed slides and has been available to the public since December 12, 2012.  (Docket No. 708).  Yet, Marvell did not move to seal segments of the filing at Docket No. 708 until two months later, on February 5, 2013, as part of their Motion for Leave to File Certain Slides under Seal.  (Docket No. 779 at 9).  Likewise, in their present Motion to Seal, Marvell does not request sealing a similar deck of Lawton slides, P-Demo 10, (Docket No. 771 at Ex. K), which overlaps extensively with P-Demo 9 and the slides at Docket No. 708. Moreover, the transcript has numerous references to these slides and explicit disclosures of the information contained on them.  *See e.g.,* (Docket No. 706).  Marvell, however, did not request sealing or redaction of transcripts pertaining to this financial information.[16]

---

[15]     There was no objection to her demonstratives on the basis of confidentiality or trade secret disclosure.  P-Demo 9 and slides filed at Docket No. 708 were objected to by Marvell on the basis that they were prejudicial and as such, should not be shown to the jury.  (Docket No. 706 at 29, 216).

[16]     In a footnote in their "Reply in Support of Motion for Leave to File Under Seal the Affidavit of Sehat Sutardja," Marvell requests leave to redact certain portions of the transcript.  (Docket No. 818 at fn 3).  This request is far from timely, as per the Notice of Filing on each daily transcript, all requests for redaction were due within

Marvell was well aware of the potential import of such disclosures, as the Court warned the parties at the pretrial hearings that once the case went to trial, the entire matter would be open to the public. *See e.g.* (Docket No. 591 at 194; 645 at 60-61) ("Once they come into evidence, it is not attorney privilege, it's not attorney eyes only, it's not confidential. It's going to now be in the public domain.")  Additionally, during the trial the Court informed the parties that both her Chambers and the court reporters had received several inquiries for portions of the transcript from non-parties, and at no time, did Marvell request that the transcript not be released.  (Docket No. 759 at 21-22).  Thus, it is inappropriate for this Court to seal the judicial record to limit disclosure when the information contained therein is readily available from the public trial transcript and elsewhere. *W. Penn Allegheny Health Sys., Inc.,* 09CV0480, 2012 WL 512681 at *7-8 (finding that documents and exhibits available to the public elsewhere are not confidential, and therefore, "not entitled to remain hidden from public access").

## 2.  Substantial Public Interest in this Information

The public has a strong interest in the subject matter of this trial, both in general to ensure that justice is being done by its courts, and in the matters specific to this trial.[17] *See Poliquin*, 989 F.2d at 533; *LEAP Sys.*, 638 F.3d at 220.  This maxim is particularly true here where the jurors' deliberations resulted in a large verdict which, in turn, has resulted in a variety of media attention.

---

seven (7) calendar days of the filing.  If no such request was filed, the transcript was made remotely electronically available to the public without redaction after 90 calendar days.  *See also* Electronic Case Filing Policies and Procedures in the United States District Court for the Western District of Pennsylvania, Section 9.5.1, available at http://www.pawd.uscourts.gov/Documents/Forms/ECFPol&ProcAmendedMar2013Web.pdf. As of March 26, 2013, all transcripts of this trial are publicly available via CM/ECF.

[17]    The Court also notes that the public has another interest in this adjudication, as the patents in suit were developed in CMU's Data Storage System Center which is partially funded by the public through the National Science Foundation.  (Docket No. 682 at 27).

The financial information that Marvell seeks to seal is essential to understanding the jury calculation of damages in this case, specifically the calculations Ms. Lawton made based on Marvell's financial data that led to her conclusion of a reasonable royalty of $0.50 a chip. (Docket No. 772).  Yet, Marvell seeks to seal from the public both the evidentiary basis and calculation of her two benchmarks, "excess profits" of $0.42 per chip and "operating profit premium" benchmark of $0.06 to $0.72 per chip.  (Docket No. 772; Docket No. 710 at 170-171). At the same time, in their post-trial motions and public press releases, Marvell disputes the jury's determination of damages based on Lawton's reasonable royalty calculation.  (Docket No. 779 at Ex. 2) ("Marvell believes the 50 cents per chip and 1.17 billion dollar damages sought by CMU led the jury to an erroneous result for several reasons.").  These data points and calculations are vital to the public's understanding of this verdict, which as the largest standing jury verdict of 2012, has garnered extensive public interest.[18]

Moreover, the interested public has the right to learn what occurred during this trial. Indeed, the common law right of access to federal courts is designed to promote "a better understanding of the operation of government as well as confidence in and respect for our judicial system."  *Publicker Indus., Inc. v. Cohen*, 733 F.2d 1059, 1070 (3d Cir. 1984).  There is another reason why the public should have access to what transpired in the Courthouse; they have a financial stake in this trial.[19]  Tax payer dollars underwrite salaries of Court personnel, juror expenses, and the space afforded to the parties, both in the Courtroom and the

---

[18]     *See A Banner Year For Billion-Dollar Patent Verdicts*, THE NATIONAL LAW JOURNAL, (March 4, 2013), http://www.law.com/jsp/nlj/PubArticleNLJ.jsp?id=1202590588003.

[19]     A large trial such as this incurs great costs on the Court in a time when the judiciary is under tight financial restraints, where, as Justice Roberts reported, only two-tenths of one penny of each citizen's tax dollar "go toward funding the entire third branch of government!"  *See* 2012 Year End Report on the Federal Judiciary, available at http://www.supremecourt.gov/publicinfo/year-end/2012year-endreport.pdf. Despite same, this Court and its fellow courts continue to discharge its Constitutional duties both justly and expeditiously.

Courthouse.[20]   As a matter of law and virtually unwavering custom from ancestral England to our own Nation, the judiciary draws its power and ability to decide cases from both the consent and financial support of the governed.  *Publicker Indus., Inc.*, 733 F.2d at 1069 (3d Cir. 1984) (the right of access is "inherent in the nature of our democratic form of government.")  Thus "what transpires in the court room is public property." *Craig v. Harney*, 331 U.S. 367, 374 (1947).

### 3.  No Compelling Interest Has Been Shown

As noted, the slides at issue are not discovery materials,[21] but instead materials filed on the Court docket, used in judicial proceedings and/or at a public trial. *See F.T.C.*, 12-16488, 2013 WL 1149311.  Thus, Marvell must show compelling reasons, not simply good cause, to justify the non-disclosure of judicial records. *Poliquin* 989 F.2d at 533; *Littlejohn* 851 F.2d at 678, 684; *Pansy*, 23 F.3d at 783, 786, fn 11.  In support, Marvell asserts that the subject demonstrative slides and photographs depicting calculations used at trial, contain "highly sensitive financial data" which, if disclosed, would purportedly allow Marvell's competitors to undercut their pricing and allow suppliers and customers to gain leverage against them in negotiations.[22] (Docket No. 773 at 1-2).  To this end, Brad Feller,[23] Marvell's Interim CFO, has filed a

---

[20]     Each party and counsel used attorney conference rooms and other office space in the Courthouse, free of charge, to stage the trial of this case.

[21]     These slides were marked as demonstrative exhibits during a jury trial.  (Docket No. 706 at Ex. 1).  Under this Court's local rules, discovery materials are not to be filed unless necessary to decide a motion or determine whether relief should be granted.  See Local Rules of the Western District of Pennsylvania (LCvR 5.4) available at http://www.pawd.uscourts.gov/Documents/Forms/lrmanual.pdf.

[22]     Current CM/ECF policies of this District require the movant to state in its motion to seal why "a means other than sealing is not available or unsatisfactory to support the necessity of the seal."  *United States District Court for the Western District of Pennsylvania Electronic Case Filing Policies and Procedures*, at § 8 *available at:* http://www.pawd.uscourts.gov/Documents/Forms/ECFPol&ProcAmendedMar2013Web.pdf   (last   updated 3/1/2013).  Because these Policies have been recently updated, the Court will not penalize Marvell for its non-compliance.

[23]     Mr. Feller did not appear at this trial, or any past proceeding before the Court.

declaration outlining Marvell's need to seal these slides and the alleged harm that disclosure of each of these slides might cause.  (Docket No. 773 at Ex. 1).  Overall, Mr. Feller opines that filing these slides under seal is necessary to protect the confidentiality of Marvell's financial information.  (*Id.* at Ex. 1 pg 3).

The Court, however, finds that Marvell has not shown a "compelling reason" for sealing their financial data that outweighs the presumptive right of disclosure and the public's interest in accessing these records.  *Leucadia,* 998 F.2d at 165; *Foltz v. State Farm Mut. Auto. Ins. Co.,* 331 F.3d 1122, 1136 (9th Cir. 2003).  As already discussed, the sealing of these slides at this date does not protect the confidentiality of this information, as the information has already been open to the public for over three months, through the filing at Docket Number 708, the trial transcript, and going forward will be available at Exhibit K of Docket Number 771, which is not the subject of any motion to seal. (Docket Nos. 708, 771).  The Court also finds Marvell's arguments that this information constitutes trade secrets unconvincing.  Under the Restatement, a trade secret must have "a substantial element of secrecy" which by its past and future dissemination, this information does not have.  Restatement (First) of Torts § 757 comment b (1939).  The Restatement and the Circuit do not contemplate that all secret information in business is "trade secret." *Id.; Littlejohn* 851 F.2d at 685; *Oran v. Stafford,* 226 F.3d 275, 289 (3d Cir.2000) (holding that the Court may take judicial notice of financial information contained in SEC filings).  Even if this information once constituted "trade secrets," the public disclosure as discussed above does not allow it to be defined as such currently.  *See In re Remington Arms Co., Inc.,* 952 F.2d 1029, 1032 (8th Cir. 1991) ("Public disclosure of trade secrets extinguishes the owner's property rights") (citing *Ruckelshaus v. Monsanto Co.,* 467 U.S. 986, 1002 (1984)).

At most, the information on these slides could be considered "sensitive financial information," for which compelling reasons must exist to seal. *Poliquin*, 989 F.2d at 533.

Additionally, Marvell has not provided sufficient *evidence* to show that release of these slides would cause competitive harm to Marvell. *Leucadia*, 998 F.2d at 166-167. Nor has Marvell met their burden because they have not outlined the specific injury to be prevented. *See Publicker*, 733 F.2d at 1071. Marvell's only proffer of evidence supporting their argument is the statements from Mr. Feller that financial information of this kind is not generally released to the public and that competitive harm may occur, because customers and competitors could "do the math" on pricing to gain leverage against Marvell. (Docket No. 773 at Ex. 1). For every slide, Mr. Feller repeats these "broad allegations of harm, bereft of specific examples or articulated reasoning" that are insufficient for justifying nondisclosure. *In re Cendant Corp.,* 260 F.3d at 194. Although, Mr. Feller seemingly takes the role of a fact witness in his affidavit, many of his statements are conclusory opinions on competitor strategy for which he has not shown through his background, personal experience, or knowledge he is qualified to make.[24] *See e.g. Maldonado v. Ramirez*, 757 F.2d 48, 51 (3d Cir. 1985) ("An affidavit that is essentially conclusory and lacking in specific facts is inadequate to satisfy the movant's burden.") (internal citations omitted). In fact, the affidavit does not even go so far as to identify Marvell's competitors. Additionally, Marvell has not shown what this "math" is; how data from Ms. Lawton can be used to undercut pricing; how companies would be able to use any such pricing data to compete with Marvell; examples of companies ever using such data to enact the "harms" Marvell envisions; or a showing that competitors are able to adjust their pricing to undercut

---

[24] His declarations claim personal knowledge of all facts, but the only statement establishing his knowledge of competitor actions is "I am thus intimately familiar with the types and natures of financial data and reports generated by Marvell, how those data and reports are used within Marvell, and how they could be used by Marvell's competitors if publically disclosed." (Docket No. 773 at Ex. 1 ¶2).

Marvell.  All Marvell has done is claim "competitive harm" but they have not offered sufficient specific evidence to convince this Court that such harm would be _caused_ by the release of these slides and photographs.  *Westinghouse Elec. Corp.*, 949 F.2d at 663.

The Court also finds that the disclosure of these slides would not cause *current* competitive harm because the data contained therein is from 2003 until mid 2012. *Id.*   Marvell has not shown, and most likely could not show, the Court that release of historical data from over 10 years ago would cause *current* harm in the fast-moving chip industry.[25]  Many of the charts depict data related to old chip models, such as the 5575/5575M and 7500/7500M, which are products dating back to 2004 to 2006.  Similarly, several of the charts show sales and profit margin data for stand alone read channel chips, products Marvell and the rest of the storage industry no longer even manufacture. (Docket No. 686 at 114; 707 at 52).  Disclosure of such past profit analysis, sales figures, and other financial data has not been shown to cause the *current* competitive harm that sealing is intended to prevent.[26]  *See F.T.C.*, 12-16488, 2013 WL 1149311 at*4, *13 (affirming the District Court's decision to unseal financial information

---

[25] *See generally* Dr. Sutardja's testimony.
>    Q By Moore's Law you mean what exactly?
>    A (Dr. Sutardja): Moore's Law means --
>    Q Very briefly.
>    A The concept of -- that chips -- the transistors will get denser every 18 months or 24 months or --
>    Q They get smaller?
>    A They get smaller by a factor of two times every generation, so –
>    …
>    Q: If Marvell is unable to develop new and enhanced products that achieve market acceptance in a timely manner, [its] operating results and competitive position will be harmed?
>    A: Yes.
>    Q And timeliness in this industry is key, isn't it?
>    A: Yes.
>    Q Because it's a very competitive industry, and you're racing with competitors to compete to get the technology to the market, correct?
>    A Yes.

(Docket No. 707 at 50-51, 93-94).

[26]        In fact in the Court's estimation, the verdict already harmed Marvell's financial standing  before the filing of these motions by causing their stock price to fall.  *See* http://www.nytimes.com/2012/12/27/technology/marvell-ordered-to-pay-1-17-billion-in-patent-case.html?_r=0

because the potential for serious injury had been reduced given the passage of time, since it would require "one to assume that costs and profit projection have not changed"); *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 11-CV-01846-LHK, 2012 WL 3283478 (N.D. Cal. Aug. 9, 2012) (finding that Apple had not shown how *past* profit and unit sales data could be used to predict *future* business plans since product lines are updated relatively frequently, and historical profit, profit margin, cost, or unit sales data for past products would not necessarily provide competitors with an advantage over future products.)

In sum, the Court finds that Marvell has not demonstrated a "compelling reason" for this Court to seal these slides.  There exists a strong public interest in disclosure of all this relevant financial information.  *See Mosaid Technologies Inc. v. LSI Corp.,* 878 F. Supp. 2d 503, 510 (D. Del. 2012) (granting a request to redact 28 lines of the transcript that dealt with financial terms as they were only "incidental to the substantive issues in this case"); *Apple* 2012 WL 3283478. Marvell's private interests do not overcome the presumption of access to judicial records or outweigh the public's interest in accessing them.  Accordingly, these slides will not be sealed. Consistent with the above reasoning, the Court sets forth its ruling on all the individual demonstrative slides in the attached table, Appendix A.

### B.   *Affidavit of Dr. Sehat Sutardja*

Marvell has also moved to seal Dr. Sutardja's Affidavit because it contains "sensitive financial information concerning Marvell's investments, expenses, and revenue." (Docket No. 797). With their Motion for Laches, Marvell has filed a redacted version of Dr. Sutardja's affidavit. (Docket No. 802 at Ex. 1). As Marvell has chosen to file their redacted public affidavit, the Court will not now consider completely sealing the document.  *See United States District Court for the Western District of Pennsylvania Electronic Case Filing Policies and Procedures*, at § 8 *available  at:*  http://www.pawd.uscourts.gov/Documents/Forms/ECFPol&ProcAmendedMar2013Web.pdf  (last

updated 3/1/2013) (after leave has been granted the filing party must first electronically file a redacted public version of the document.)   Thus, the Court will address only whether Marvell should file an un-redacted version of this document.

There are two redactions in the filed affidavit.  (Docket No. 802 at Ex. 1).  The first being a table that "summarizes Marvell's investments in research and development and selling, general and administrative expenses related to chips with MNPs, EMNPs, and NLV/NLDs, as calculated by CMU" from 2004 to 2009.  (*Id.* at ¶7).  This table is compiled from Schedule 37 of Lawton's Expert Report.  (Docket No. 634).  The second is a table that "summarized Marvell's unit sales and revenue from chips with MNPs, EMNPs, and NLV/NLDs, as asserted by CMU at trial" from 2003 to 2009.  (Docket No. 802 at Ex. 1 at ¶9).  The two redacted charts detail critical financial data that were presented at trial in support of CMU's damages theory.  (Docket No. 802 at Ex. 1).

Dr. Sutardja's affidavit constitutes a judicial record, as a document "filed with the court, or otherwise somehow incorporated or integrated into a district court's adjudicatory proceedings." *In re Cendant Corp.,* 260 F.3d 183, 192 (3d Cir. 2001).  Thus, this document is held to the common law presumption of public access.  *Id.*; *Martin,* 746 F.2d at 968 ("The common law right of access … encompasses all judicial records and documents.")  It is evidentiary material that Marvell submits in support of a dispositive motion, and thus is held to the "compelling reasons" standard for justification of sealing.[27]  *Poliquin,* 989 F.2d at 533; *see also Littlejohn,* 851 F.2d at 678, 684; *Mosaid Technologies,* 878 F. Supp. 2d at 509 (noting that

---

[27]     To the extent that Marvell insists the Court weigh their request for sealing on a "good cause" shown standard (Docket No. 818 at 4), the Court reiterates its earlier reasoning that Third Circuit law distinguishes between discovery materials which *may* be sealed upon good cause shown, and materials submitted at trial or in support of trial motions, which may only be sealed for compelling reasons. *Pansy,* 23 F.3d at 783, 786, fn 11; *Littlejohn,* 851 F.2d at 677–78.  *In re Cendant Corp.,* 260 F.3d 183; *Miller,* 16 F.3d at 551

"the strong presumption" in favor of public access applies particularly to judicial records relating to summary judgment because those proceedings "adjudicate[ ] the substantive rights [of parties] and serve[ ] as a substitute for trial") (citing *Foltz,* 331 F.3d at 1135).

The Court also question's Marvell's motivation in bringing this Motion as their initial preference was to present this evidence at trial.  *See* (Docket No. 647).  Dr. Sutardja, according to Marvell, would have been prepared to testify publicly on laches at trial and consequently, his sworn affidavit on that subject should be equally public.  *See* Marvell's List of Trial Witnesses and Offers of Proof (Docket No. 575) (Dr. Sehat Sutardja "will also testify about how Marvell has been harmed by CMU's improper initiation of the pending litigation, as well as interactions with CMU with respect to the CMU patents.").   As material in support of a dispositive motion, this affidavit is not entitled to the protections of discovery materials.  *See Foltz,* 331 F.3d at 1135.   Marvell has chosen to invoke the judicial power of this Court to request relief from the damages award by way of laches.  (Docket No. 802).  Hence, the evidence they present in support of that petition should not be sealed as the Court's adjudication of this issue cannot be secret.[28]  (Docket No. 802).  Further, the Court's determination that laches is an issue of law not appropriate for an advisory jury decision does not change the need to balance public versus private interest in the disclosure of this information.   Moreover, this Court will undertake extensive research and analysis to make a decision on laches.  As an undertaking funded by the people of the United States, its decision will be publicly published to decide both the matter at

---

[28]     The parties had ample opportunity to resolve this case through private mediation.   To the Court's knowledge, mediations was attempted on two occasions in front of a qualified mediator, Judge Enfante.  Further, the Court conducted a settlement conference prior to trial.  If Marvell, wanted to resolve this case short of a trial on the merits that time has passed.

hand, and also guide other entities on the law.[29] *Newman v. Graddick*, 696 F.2d 796, 801 (11th Cir. 1983) ("[O]pen proceedings may be imperative if the public is to learn about the crucial legal issues that help shape modern society. Informed public opinion is critical to effective self-governance.")

Finally, Marvell has not proven that the disclosure of this information will cause a serious injury to Marvell, which warrants sealing of this record, for many of the reasons discussed above. Like the information on the slides, the financial data in these two charts, is both outdated, and generally publicly available through Marvell's financial filings[30] and portions of this Court's trial transcript, which are un-redacted and available to the public as of March 26, 2013. Further, as detailed earlier herein, Marvell has not offered sufficient specific evidence that these figures would *cause current* commercial harm nor demonstrated a "likely injury from continued public access that is both clearly defined and serious." *Pugliano v. Grace Holmes, Inc.,* 2:11-cv-01562, 2012 WL 1866380 at * 3 (W.D. Pa. May 22, 2012) (denying an *uncontested* request to seal the entire record, when the case was resolved by ADR before discovery had commenced).

In line with the above discussion, Marvell's rationale in preventing full disclosure of Dr. Sutardja's affidavit has not demonstrated to this Court a compelling, clearly defined injury to

---

[29]     This Court's opinion will document any evidence it feels necessary to explain its determination, regardless of the parties' positions on confidentiality. The Court does not issue "lettres de cachet" or proceed as a Star Chamber or other prerogative courts. *See In re Oliver*, 333 U.S. 257, 268 (1948). This Court is a function of our collective federal government, sworn to adjudicate cases both for the parties and for the good of the public.

[30]     The parties debate whether the information in these tables is actually publicly available. In regards to ¶ 7, Marvell states that its SEC filings only contain company-wide R&D and SG&A information and thus R&D and SG&A for accused products is not publicly available. (Docket No. 818 at 2). For ¶ 9, Marvell states unit sales numbers are not publicly available, and DX-1610 and P-Demo 13 contain only total revenue not annual unit sales. (*Id.*). As explained earlier herein, the Court rules that these slides will not be filed under seal. Defendant's Exhibit 1610 already contains total revenue for accused products. (Def. Ex. 1610). The graphs at Plaintiff's Demo 13 which were shown numerous times at trial and which the Court has ruled will not be sealed, show unit shipments by month. All one would need to do is estimate and add the monthly figures together to reach sales by year in ¶ 9. Regardless of the current public availability of this information, the Court's balancing of private and public interests remains the same.

override the presumption of disclosure and the public's interest in securing this information. *See Hart v. Tannery,* 461 F. App'x 79, 81 (3d Cir. 2012) (allegations of harm must "meet the heavy burden of overcoming the presumption of access to judicial records"). In addition to its common law right of access, the public has the right to know the basis for the jury award because of its size and nature, the media attention it has created, and continuing arguments over its validity. *See Apple* 2012 WL 3283478; *Mosaid Technologies,* 878 F. Supp. 2d at 510. Accordingly, Dr. Sutardja's affidavit shall not be filed under seal. An un-redacted affidavit shall be filed by April 5, 2013.

## IV. CONCLUSION

For the reasons stated herein, Marvell's "Motion for Leave to File Certain Slides and Photographs Used by the Parties During Trial Under Seal" (Docket No. 772) and "Motion to File Under Seal the Affidavit of Sehat Sutardja in Support of Marvell's Motion for Judgment on Laches" (Docket No. 797) are DENIED. In so holding, the Court also denies Marvell's requests as expressed within Marvell's briefing (Docket No. 772, 818) for leave to seal slides at Docket No. 708 and to redact portions of the transcripts. An appropriate Order follows.


*/s Nora Barry Fischer*
Nora Barry Fischer
U.S. District Judge

Date: March 29, 2013
cc/ecf: All counsel of record.