# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARNEGIE MELLON UNIVERSITY, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MARVELL TECHNOLOGY GROUP, LTD., ) <br> and MARVELL SEMICONDUCTOR, INC., ) <br> ) <br> Defendants. ) | Civil Action No. 2:09-cv-00290-NBF |

**PLAINTIFF CARNEGIE MELLON UNIVERSITY'S MOTION AND VERIFIED PETITION FOR (1) SUPPLEMENTAL RELIEF IN AID OF EXECUTION PURSUANT TO PENNSYLVANIA RULE OF CIVIL PROCEDURE 3118 AND (2) EXPEDITED BRIEFING THEREON**

Pursuant to Rule 69 of the Federal Rules of Civil Procedure and Rule 3118 of the Pennsylvania Rules of Civil Procedure, Plaintiff Carnegie Mellon University ("CMU") files this Motion and Verified Petition For Supplemental Relief in Aid of Execution and Expedited Briefing Thereon.  In this Motion, CMU seeks an order maintaining the status quo by enjoining Defendants Marvell Technology Group, Ltd. ("MTGL") and Marvell Semiconductor, Inc. ("MSI") (collectively, "Marvell") from transferring, assigning, conveying, encumbering or otherwise disposing of any real, personal or intangible property outside the "ordinary course of business," including, *e.g.*, in connection with (1) the declaration and payment of dividends to Marvell shareholders (including, but not limited to, the payment scheduled for December 23, 2013), (2) the repurchase of Marvell stock from shareholders and (3) any leveraged buyout or similar asset leveraging transaction.[1]  CMU also moves for expedited briefing on its Motion and Verified Petition.   In support hereof, CMU states:

## FACTUAL BACKGROUND

1. On December 26, 2012, a jury found that Marvell infringed CMU's '839 and '180 patents and awarded CMU $1,169,140,271 in damages based on Marvell's sales of infringing chips during the period March 6, 2003 through July 28, 2012.  Dkt. 762.

2. On January 14, 2013, the Court entered judgment on the jury's verdict against Marvell and in favor of CMU (the "Judgment").  Dkt. 769.

3. On September 23, 2013, this Court denied Marvell's motions for post-trial relief. Dkt. 901-02.  Accordingly, the only remaining motion that could reduce the size of the Judgment is Marvell's Motion for Judgment on Laches.  Dkt. 802.  The other pending motions may increase the amount of the Judgment.

---

[1] CMU submits that the term "ordinary course of business" should be construed as it has been and would be under 11 U.S.C. § 363(b) and (c) and that the Court should find the examples recited above as falling outside the "ordinary course of business."

4.     CMU has been entitled to execute on the Judgment since January 28, 2013 because neither MTGL nor MSI posted a bond or other adequate security under Rule 62(b) to stay execution of the Judgment during the pendency of post-trial motions.[2]

5.     Absent Marvell posting (and obtaining approval for) an appropriate bond to adequately secure the Judgment, CMU now intends to execute on the Judgment for at least the following reasons.[3]

6.     *First*, between the entry of judgment in January 2013 and the close of Marvell's most recent quarter on November 2, 2013, Marvell has expended over $465 million dollars on stock repurchases and dividends, materially reducing its assets available to satisfy the Judgment. *See*, *e.g.*, Exhibits A-B; Dkt. 787; Dkt. 853. The scheduled date of the next dividend payment (approximately $30 million) is December 23, 2013. As one consequence of this payment, Marvell's CEO, Dr. Sutardja, and his family will collect millions of dollars.

7.     *Second*, CMU has received no assurances that Marvell will stop depleting its assets by way of stock dividends and share repurchases on the scale reflected in Marvell's Securities and Exchange Commission ("SEC") filings.[4]

---

[2] As indicated in the Judgment, Marvell's "timely filing of certain [post-trial] motions under the Court's December 26, 2012 scheduling order (Dkt. 763) . . . will postpone any obligation to file a Notice of Appeal under Fed. R. App. P. 4(a)(4) or to seek approval of any bond pending appeal under Fed. R. Civ. P. 62(*d*) until after the Court resolves such motions." Dkt. 769 (emphasis added). This does not, however, relieve Marvell of its obligation under Fed. R. Civ. P. 62(*b*) to provide adequate security during the pendency of post-trial motions if it wishes to stay execution.

[3] Contemporaneously with this Motion and Petition, CMU has moved to Permit Registration of the Judgment Pursuant to 28 U.S.C. § 1963.

[4] In its November 21, 2013 filing with the SEC, Marvell suggests that Bermuda law may require Marvell (finally) to change its conduct, at least with respect to its dividends. *See* Dkt. 905 at Exhibit B at 3 (Marvell stating in its Form 8-K that "[d]evelopments in ongoing litigation could affect Marvell's ability to pay the dividend on December 23, 2013 under Bermuda law, where Marvell is incorporated. In such an event, the payment of the dividend could be delayed until such time as Marvell can meet statutory requirements under Bermuda law.").

8.      ***Third***, Marvell has not set aside any reserve to pay the Judgment and has told the SEC that it has no near term intention of creating an accounting reserve for the Judgment.  *See* Ex. C (Letter from SEC) and D (Marvell response letter).

9.      ***Fourth***, since October 4, 2013 (shortly after this Court denied Marvell's motions for post-trial relief), CMU has discussed with Marvell the posting and terms of a bond sufficient to stay execution on the Judgment.  Marvell has designated these bond discussions as "confidential," such that CMU can share them with the Court only under seal at this time.

10.     ***Fifth***, on November 5, 2013, Bloomberg, among other media outlets, reported that Kohlberg, Kravis Roberts & Co. ("KKR") had acquired almost 5% of Marvell's outstanding stock and that Marvell may be considering a leveraged buy out ("LBO").  *See* Ex. E.  An LBO (or any other financing transaction involving Marvell's assets) would dissipate and/or encumber Marvell's assets and/or net worth substantially such that CMU's ability to collect on the Judgment would be at an even greater risk.

11.     ***Sixth***, in view of the foregoing, CMU demanded on November 8, 2013 that Marvell post a bond adequate to protect CMU's rights.  Although Marvell has represented publicly that it had access to bonding authority in an amount sufficient to secure the existing Judgment and the parties have discussed possible terms of a bond, Marvell has not actually put into place an adequate bond to protect CMU's rights.

12.     ***Seventh***, on December 2, 2013, Marvell made public that, on November 27, 2013, Brad Feller, Marvell's acting Chief Financial Officer and Chief Controller, resigned all his positions with Marvell, effective December 10, 2013, allegedly "to pursue other opportunities." *See* Ex. F.  Marvell's prior Chief Financial Officer, Clyde Hosein, resigned on October 18, 2012 also allegedly "to pursue other opportunities."  *See* Ex. G.  Marvell apparently has not hired a permanent successor to either Mr. Feller or Mr. Hosein.

13.     ***Eighth***, on December 2, 2013, Shareholders Foundation, Inc. announced that a law firm had begun an investigation on behalf of Marvell's investors into potential breaches of fiduciary duties by certain officers and directors at Marvell.  *See* Ex. H.

14.     CMU expected that its bond discussions with Marvell would provide CMU with adequate security based on, among other things, Marvell's public representations that it expected it could adequately secure the Judgment while at the same time continuing to pay dividends and repurchasing stock.

15.     Marvell owns or controls real, personal and intangible property that presently are available to satisfy the Judgment, including at least the following:

    (a)     Cash and cash equivalents;

    (b)     Certificates of deposit;

    (c)     Corporate stock and other equity securities, including the stock of its subsidiaries;

    (d)     Corporate, auction rate, treasury and other debt securities;

    (e)     Owned and leased real estate;

    (f)     Accounts, including accounts receivable;

    (g)     Inventory, including raw materials and work in process;

    (h)     Furniture, fixtures and equipment; and

    (i)     Intellectual property including, but not limited to, patents, patent applications, trade secrets, copyrights and trademarks.

16.     Marvell also owns or controls additional, unidentified assets that presently are available to satisfy the Judgment.

17.     In light of Marvell's failure to post a bond despite publicly stating that it could do so and the recent events concerning Marvell described above, CMU seeks relief to preserve

Marvell's assets and to limit its ability to dissipate or encumber them. Specifically, CMU respectfully requests that the Court grant supplemental relief available to it under Pa. R. Civ. P. 3118 on the grounds set forth below.

**ARGUMENT**

**A. The Court May Grant Injunctive Relief to Preserve the Status Quo in Summary Proceedings Under Pennsylvania Rule of Civil Procedure 3118.**

18. Federal Rule of Civil Procedure 69 permits courts to provide relief in aid of execution under state procedural rules and practice. Fed. R. Civ. P. 69(a)(1).

19. To that end, this Court may, *inter alia*:

- Enjoin "the negotiation, transfer, assignment or other disposition of any security, document of title… instrument…or document representing any property interest of the defendant subject to execution;"
- Enjoin "the transfer, removal, conveyance, assignment or other disposition of property of the defendant subject to execution"; or
- Grant "such other relief as may be deemed necessary and appropriate."

Pa. R. Civ. P. 3118(a); *see also Savitsky v. Mazzella*, 93 Fed. Appx. 439, 440-43 (3d Cir. 2004) (affirming order made under Rule 3118).

20. The primary purpose of the relief available in Rule 3118 proceedings is to "preserve the status quo as to the judgment-debtor's property." *Greater Valley Terminal Corp. v. Goodman*, 202 A.2d 89, 92 (Pa. 1964).

21. As such, Rule 3118 proceedings are "summary rather than plenary" in nature. *Gulf Mortgage & Realty Inv. v. Alten*, 422 A.2d 1090, 1094 (Pa. Super. Ct. 1980).

22. Under Rule 3118, CMU does not need to meet the preliminary injunction standard in order to obtain injunctive relief that maintains the status quo as to Marvell's assets. *See, e.g., Kaplan v. I. Kaplan, Inc.*, 619 A.2d 322, 326 (Pa. Super. Ct. 1993) ("because the grant of relief" available under Rule 3118 "does nothing more than maintain the status quo," the petitioner is ***not*** "require[d to] show[]…the traditional requirements for an injunction").

5

23. Rather, the "*streamlined* nature of a Rule 3118 proceeding" is intended to "provide a speedy means for the judgment creditor to obtain satisfaction of his judgment *without resort to 'full dress equity proceedings*.'" *Chadwin v. Krouse*, 386 A.2d 33, 37 (Pa. Super. Ct. 1978) (emphasis added).

24. Under the Rule, the "court in which a judgment has been entered may order such injunctive relief" simply upon "petition of the plaintiff, after notice and hearing… before or after the issuance of a writ of execution." *Hearst/ABC-Viacom Entm't Servs. v. Goodway Marketing, Inc.*, 815 F. Supp. 145, 146-47 (E.D. Pa. 1992).

25. "The hearing envisioned by Rule 3118(a) is something less than a full hearing prior to the granting of relief." *Id.* at 147 (citing *Chadwin*, 386 A.2d at 37; *Greater Valley*, 202 A.2d at 93).

26. Any factual issues that may arise are properly resolved by the trial judge, and if there are no unresolved factual issues courts may grant relief based solely on the petition, the defendant's answer and oral argument. *See*, *e.g.*, *In re Messer v. Mickelson*, 175 A.2d 122, 123-24 (Pa. Super. Ct. 1961) (affirming order to turn over property under Rule 3118 where court had resolved credibility issue against defendant); *Gulf Mortgage*, 422 A.2d at 1094 (affirming grant of Rule 3118 relief where court ruled solely on the petition, answer and oral argument because there were no factual issues to resolve).

**B. The Court May Enjoin Marvell from Further Depleting its Cash Reserves and from Transferring, Assigning, Encumbering or Otherwise Disposing of its Assets Outside of the Ordinary Course of Business, Regardless of Where the Assets are Found.**

27. To obtain the requested relief, CMU need show only "the existence of an underlying judgment and property of the debtor subject to execution." *Kaplan*, 619 A.2d at 326; *Gulf Mortgage*, 422 A.2d at 1094 (affirming Rule 3118 order where "defendant's answer admitted every relevant factual allegation in the petition… specifically, the existence of the judgment and [defendant's] ownership and possession of the shares").

28. MTGL and MSI do own property that is available to satisfy at least part of the Judgment.

29. The location of that property, whether it be shares of stocks in subsidiaries, cash, real estate, intellectual property or other assets, is immaterial. When judgment has been entered against a defendant, the plaintiff may invoke Rule 3118 to prevent the defendant "from conveying, transferring, liquidating, encumbering, concealing or selling any… shares of stock, bonds or other securities in which he has an interest" whether located inside or outside the Commonwealth of Pennsylvania. *Savitsky v. Mazzella*, 93 Fed. Appx. 439, 440-43 (3d Cir. 2004).

30. Courts may grant Rule 3118 relief that affects out-of-state or foreign property because "when, as here, ***a court… acts in personam, it is not restricted by geographical boundary lines*** and it may enter any appropriate decree acting directly on the person even though the subject matter affected is outside its jurisdiction." *Chadwin*, 386 A.2d at 36 (reasoning that when a court has personal jurisdiction over the parties, it need not have jurisdiction over the property in order to grant plaintiff's Rule 3118 petition because the court "may then be said to be exercising quasi in rem jurisdiction ***to compel an equitable result as between two parties which are before it***") (emphasis added); *see also Southeast Nat'l Bank of Pa. v. Spectrum Leasing Corp.*, No. 84-3034, 1986 WL 1240 at *2-3 (E.D. Pa. Jan. 27, 1986) (where out-of-state properties would have been "subject to execution" in their respective jurisdictions within the meaning of Rule 3118 if they had been solely owned by the defendant, the court instead invoked its "general equity powers" to grant the requested relief).[5]

---

[5] After finding that the defendant held the out-of-state properties as tenancies by the entirety with his wife and thus they were "not subject to execution by [his] creditor[s] in any of the jurisdictions in which [they] are located," the court nevertheless granted the requested relief, reasoning by analogy to the traditional preliminary injunction standard. *Southeast*, 1986 WL 1204 at *2-3 ("If the court has the power to grant an injunction upon a showing of a reasonable likelihood of success

31. These rulings reflect the well-established equitable principle that a court has the power to enjoin a party before it from doing certain acts with respect to the party's property regardless of where the property may be located. *See*, *e.g.*, *United States v. First Nat'l City Bank*, 379 U.S. 378, 384 (1965) ("Once personal jurisdiction of a party is obtained, the District Court has authority to order it to 'freeze' property under its control, ***whether the property be within or without the United States***") (emphasis added) (reversing appeals court's reversal of District Court's injunction against American bank, which enjoined bank from transferring certain assets in Uruguay and which the Supreme Court found "eminently appropriate to prevent further dissipation of assets" and "a reasonable measure to preserve the status quo"); *Cohn v. Weiss*, 51 A.2d 740, 744-45 (Pa. 1947) ("Where the necessary parties are before a court… it is immaterial that the… real or personal property" in question "is beyond the territorial jurisdiction of the tribunal") (internal cites omitted).

32. To preserve the status quo, Marvell's conduct should be circumscribed at least until Marvell posts and Court approves an appropriate bond that adequately secures the Judgment ***and*** any amended Judgment. In particular, Marvell should not be permitted to engage in any transactions outside of the "ordinary course of business" as that term has been and would be interpreted under 11 U.S.C. § 363 (b) and (c) by the United States Supreme Court, the Court of Appeals for the Third Circuit and the United States District Court for the Western District of Pennsylvania. The use of this "ordinary course of business" standard will provide an objective guideline for Marvell's business conduct. In this regard, the Court should find that Marvell's payment of dividends, repurchase of stock and any material asset leveraging transaction fall outside the "ordinary course of business."

---

on the merits, then certainly [it] has the power to grant an injunction upon the actual success on the merits" in the litigation whose judgment the petitioner sought to enforce).

8

**C.     The Court Should Order Expedited Briefing**

33.    In view of the Marvell dividend payment scheduled for December 23rd and the other recent developments described above, CMU also requests this Court order expedited briefing on this Motion and Verified Petition. CMU requests that Marvell's responsive brief be ordered due in seven (7) days on December 13th, that CMU's reply brief be ordered due five days later on December 18th.

## CONCLUSION

For the foregoing reasons, the Court should enter an order enjoining Marvell from transferring, assigning, conveying, encumbering or otherwise disposing of any security, document of title, instrument or property outside of the ordinary course of business at least until Marvell posts and the Court approves an appropriate bond that adequately secures the Judgment and any amended Judgment. The Court should also enter an order for expedited briefing on CMU's Motion and Verified Petition.

Respectfully submitted,

/s/ Christopher M. Verdini
Patrick J. McElhinny Pa. I.D. # 53510
patrick.mcelhinny@klgates.com
Mark Knedeisen Pa. I.D. #82489
mark.knedeisen@klgates.com
Christopher M. Verdini Pa. I.D. # 93245
christopher.verdini@klgates.com
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA  15222
Phone: (412) 355-6500

Dated: December 6, 2013

Douglas B. Greenswag (admitted *pro hac vice*)
douglas.greenswag@klgates.com
925 Fourth Avenue, Suite 2900
K&L Gates LLP
Seattle, WA  98104-1158
Phone:  (206) 623-7580

*Counsel for Plaintiff, Carnegie Mellon University*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2013 the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Christopher M. Verdini
Christopher M. Verdini
Pa. I.D. # 93245
christopher.verdini@klgates.com
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Ph (412) 355-6500
Fax (412) 355-6501