**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARNEGIE MELLON UNIVERSITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 2:09-cv-00290-NBF |
| | ) | |
| MARVELL TECHNOLOGY GROUP, LTD., | ) | |
| and MARVELL SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF CARNEGIE MELLON UNIVERSITY'S
MOTION TO PERMIT REGISTRATION OF JUDGMENT
PURSUANT TO 28 U.S.C. § 1963**

Pursuant to 28 U.S.C. § 1963, Plaintiff Carnegie Mellon University ("CMU") respectfully requests that the Court permit it to register its judgment (and any amended judgment) against Marvell Technology Group, Ltd. ("MTGL") and Marvell Semiconductor, Inc. ("MSI") (collectively, "Marvell") in other judicial districts (the "Motion").

Between the entry of judgment in January 2013 and the close of its most recent quarter on November 2, 2013, Marvell has expended over $465 million dollars on stock repurchases and dividends, materially reducing its assets available to satisfy CMU's current judgment. CMU has received no assurances that Marvell will stop depleting its assets in such a manner. Marvell also has not set aside any reserve to pay the judgment and has told the Securities and Exchange Committee ("SEC") that it has no intention of creating an accounting reserve for the judgment. On November 5, 2013, media reports suggested that Marvell may be considering a leveraged buy out ("LBO"). An LBO (or any other financing transaction involving Marvell's assets) would further dissipate and/or encumber Marvell's assets and/or net worth substantially such that CMU's ability to collect on the judgment would be at an even greater risk. In view of the foregoing, CMU demanded on November 8, 2013 that Marvell post a bond adequate to protect CMU's rights. Marvell has not done so.

On December 2, 2013, Marvell made public that its acting Chief Financial Officer had resigned on November 27, 2013. On the same day, it was announced that a law firm was investigating whether Marvell's officers and directors breached their fiduciary duties in connection with declining net income.

Despite further discussions between the parties, Marvell still has not posted a bond adequate to protect CMU's rights. Accordingly, CMU must take action to protect its rights.

In further support of this Motion, CMU states:

## INTRODUCTION

1. On December 26, 2012, the jury found that Marvell infringed CMU's '839 and '180 patents and awarded CMU $1,169,140,271 in damages based on Marvell's sales of infringing chips during the period March 6, 2003 through July 28, 2012. Dkt. 762.

2. On January 14, 2013, the Court entered judgment on the jury's verdict against Marvell and in favor of CMU (the "Judgment"). Dkt. 769. Accordingly, the fourteen-day automatic stay of execution of the Judgment under Rule 62(a) of the Federal Rules of Civil Procedure expired on January 28, 2013.

3. CMU has been entitled to execute on the Judgment since January 28, 2013 because neither MTGL nor MSI posted a bond or other adequate security under Rule 62(b) to stay execution of the Judgment during the pendency of post-trial motions.[1]

4. CMU, however, now intends to execute on the Judgment immediately because:

(a) The Court has denied Marvell's motions for post-trial relief with the exception of Marvell's Motion for Judgment on Laches (Dkt. 802). Thus, the pendency of the remaining post-trial motions no longer counsels against immediate execution on a judgment that will be, at a minimum, in the hundreds of millions of dollars.

(b) Between the entry of Judgment in January 2013 and the close of Marvell's most recent quarter on November 2, 2013, Marvell has expended over $465 million dollars on stock repurchases and dividends, materially reducing its assets available to satisfy the Judgment. *See*, *e.g.*, Exhibits A-B; Dkt. 787; Dkt. 853. CMU has received no assurances that Marvell will stop depleting its assets by way of stock dividends and share repurchases on the scale reflected in

---

[1] As indicated in the Judgment, Marvell's "timely filing of certain [post-trial] motions under the Court's December 26, 2012 scheduling order (Dkt. 763) . . . will postpone any obligation to file a Notice of Appeal under Fed. R. App. P. 4(a)(4) or to seek approval of any bond pending appeal under Fed. R. Civ. P. 62*(d)* until after the Court resolves such motions." Dkt. 769 (emphasis added). This does not, however, relieve Marvell of its obligation under Fed. R. Civ. P. 62*(b)* to provide adequate security during the pendency of post-trial motions if it wishes to stay execution.

2


Marvell's SEC filings. To the contrary, Marvell is scheduled to make a dividend payment of approximately $30 million on December 23, 2013.[2] As one consequence of this payment, Marvell's CEO, Dr. Sutardja, and his family will collect millions of dollars

        (c) Marvell has not set aside any reserve to pay the Judgment and has told the SEC that it has no intention of creating an accounting reserve for the Judgment. *See* Ex. C (Letter from SEC) and D (Marvell response letter).

        (d) Since October 4, 2013 (shortly after this Court denied Marvell's motions for post-trial relief), CMU has discussed with Marvell the posting and terms of a bond sufficient to stay execution on the Judgment. Marvell has designated these bond discussions as "confidential," such that CMU can share them with the Court only under seal at this time.

        (e) On November 5, 2013, Bloomberg, among other media outlets, reported that Kohlberg, Kravis Roberts & Co. ("KKR") had acquired almost 5% of Marvell's outstanding stock and that Marvell may be considering an LBO. *See* Ex. E. An LBO (or any other financing transaction involving Marvell's assets) would further dissipate and/or encumber Marvell's assets and/or net worth substantially such that CMU's ability to collect on the judgment would be at an even greater risk.

        (f) On November 8, 2013, CMU demanded that Marvell post a bond adequate to protect CMU's rights. Although Marvell has represented publicly that it had access to bonding authority in an amount sufficient to secure the existing Judgment and the parties have discussed possible terms of a bond, Marvell has not actually put into place an adequate bond to protect CMU's rights.

---

[2] In its November 21, 2013 filing with the SEC, Marvell suggests that Bermuda law may require Marvell (finally) to change its conduct, at least with respect to its dividends. *See* Dkt. 905 at Exhibit B at 3 (Marvell stating in its Form 8-K that "[d]evelopments in ongoing litigation could affect Marvell's ability to pay the dividend on December 23, 2013 under Bermuda law, where Marvell is incorporated. In such an event, the payment of the dividend could be delayed until such time as Marvell can meet statutory requirements under Bermuda law.").

(g) On December 2, 2013, Marvell made public that, on November 27, 2013, Brad Feller, Marvell's acting Chief Financial Officer and Chief Controller, resigned all his positions with Marvell, effective December 10, 2013, allegedly "to pursue other opportunities." *See* Ex. F. Marvell's prior Chief Financial Officer, Clyde Hosein, resigned on October 18, 2012 also allegedly "to pursue other opportunities." *See* Ex. G. Marvell apparently has not hired a permanent successor to either Mr. Feller or Mr. Hosein.

(h) On December 2, 2013, Shareholders Foundation, Inc. announced that a law firm had begun an investigation on behalf of Marvell's investors into potential breaches of fiduciary duties by certain officers and directors at Marvell. *See* Ex. H.

(i) CMU expected that its bond discussions with Marvell would provide CMU with adequate security based on, among other things, Marvell's public representations that it expected it could adequately secure the Judgment while at the same time continuing to pay dividends and repurchasing stock.

5. Based on CMU's investigation, CMU asserts that, to the best of its knowledge, information and belief, Marvell does not, at present, have any physical assets located in the Western District of Pennsylvania and any intangible assets potentially amenable to garnishment in Pennsylvania are insufficient to satisfy the Judgment.[3]

6. To collect and enforce its Judgment, CMU, therefore, must proceed against Marvell's assets located outside of this judicial district. Pursuant to 28 U.S.C. § 1963, CMU requests that the Court enter an order permitting CMU to register the Judgment (and any Amended Judgment) in the Northern District of California and any other judicial district in the United States in which Marvell's assets are found.

---

[3] CMU intends to serve writs of execution on Pennsylvania branches of banks where CMU believes Marvell maintains accounts and Pennsylvania locations of Marvell customers that owe Marvell money. Even if the branches or customers respond to those garnishments, CMU believes that the amounts available are less than the amount of the Judgment.

4

# ARGUMENT

I. **"Good Cause" Exists to Permit CMU to Register the Judgment in Other Judicial Districts, Including the Northern District of California, Under 28 U.S.C § 1963.**

    A. **Legal Standard for Registration of a Judgment Based on a Showing of "Good Cause"**

7. Pursuant to 28 U.S.C. § 1963, "[a] judgment in an action for the recovery of money . . . entered in any . . . district court . . . may be registered by filing a certified copy of the judgment in any other district . . . when the judgment has become final by appeal or expiration of the time for appeal or *when ordered by the court that entered the judgment for good cause shown*. *Id*. (emphasis added).

8. Registration of a judgment in another judicial district based on a showing of "good cause" is permitted notwithstanding the fact that post-trial motions are pending. *See, e.g.*, *Associated Bus. Telephone Systems, Inc. v. Greater Capital Corp.*, 128 F.R.D. 63, 66-67 (D.N.J. 1989); *see also Great Am. Ins. Co. v. Stephens*, No. 04-3642, 2006 WL 2349991, at *1-*2 (E.D. Pa. Aug. 11, 2006); *Garden State Tanning, Inc. v. Mitchell Mfg. Group, Inc.*, No. CIV.A. 98–4789, 2000 WL 1201372, at *1-*2 (E.D. Pa. Aug. 4, 2000). A judgment is ripe for registration on "good cause" shown where the judgment debtor has failed to post adequate security. *See Cheminova A/S v. Griffin L.L.C.*, 182 F. Supp. 2d 68, 80 (D.D.C. 2002). This is because "the distinct possibility of plaintiff being faced with an unsatisfied judgment is sufficient 'good cause' to order the registration entered notwithstanding the alleged inconvenience and cost to defendant." *Associated Bus. Telephone Systems*, 128 F.R.D. at 66-67. In this case, Marvell has failed to post any security for the judgment despite CMU's request that it do so.

9. A judgment creditor can demonstrate "good cause" under 28 U.S.C. § 1963 by "a mere showing that the defendant has substantial property in the other district and insufficient [property] in the rendering district to satisfy the judgment." *Associated Bus. Telephone Systems*, 128 F.R.D. at 66 (quoting Siegel, Commentary on 1988 Revision, 28 U.S.C. § 1963 (West Supp.

5

1989)); *see also Schreiber v. Kellogg*, 839 F. Supp. 1157, 162 (E.D. Pa. 1993) ("The good cause requirement may be satisfied if the judgment debtor has substantial property in a foreign district and insufficient property in the rendering district to satisfy the judgment."). "While improper transfers or other activity designed to deprive plaintiff of the benefits of the judgment are sufficient to satisfy the requirement of good cause, they are not necessary." *Lankler Siffert & Wohl, LLP v. A. Cal Rossi, Jr.*, No. 02 Civ.10055, 2004 WL 1627167, at *1 (S.D.N.Y. July 21, 2004).

10. A judgment creditor's burden to show "good cause" is minor: "[j]udgment creditors *. . . **need not show exact evidence of assets and registration may be granted upon a lesser showing***." *Owen v. Soundview Fin. Group, Inc.*, 71 F. Supp. 2d 278, 278-79 (S.D.N.Y. 1999) (emphasis added) (internal quotation marks omitted). Indeed, absent contrary evidence, a declaration or affidavit offered in support of the judgment creditor's motion for registration should be "presumed to be true" and it will be sufficient alone for a finding of "good cause." *Owen*, 71 F. Supp. 2d at 279; *Cianbro Corp. v. George H. Dean, Inc.*, 749 F. Supp. 2d 1, 2-3 (D. Me. 2010).

**B. Registration Is Appropriate Here Because Marvell Owns Few, if Any, Assets in Pennsylvania, Whereas It Owns Substantial Assets in the Northern District of California.**

11. Because MTGL and MSI do not own sufficient assets in the Western District of Pennsylvania to satisfy CMU's Judgment, "good cause" exists under 28 U.S.C. § 1963 for registration of the Judgment in the Northern District of California, where defendants own substantial assets.

12. There is no doubt that MTGL and MSI lack sufficient assets in the Western District of Pennsylvania to satisfy a judgment presently in excess of $1.16 billion. Marvell has admitted that neither MTGL nor MSI has business facilities or employees in the Western District

of Pennsylvania.  *See* Dkt. 25-7 (declaration of J. Laufman, Vice President and General Counsel of MSI, in support of motion to transfer venue); Dkt. 26 (Marvell's brief in support of motion to transfer venue), at 6-7.  These statements by Marvell's in-house and outside counsel are consistent with MTGL's current SEC filings and company website, which indicate that the company has offices and owns or leases real property in several U.S. states and abroad, but not in Pennsylvania.  *See* Ex. I (MTGL's 2013 10-K); Ex. J (Marvell website list of corporate offices).  Moreover, based on a reasonable search of documents produced and deposition and trial testimony in this case, and publicly available information, CMU has been unable to find any evidence whatsoever indicating that MTGL or MSI owns assets located in the Western District of Pennsylvania, except to the extent that its bank and/or security accounts may be attached here.  *See* Ex. K (Declaration of P. McElhinny, K&L Gates).

    13.  Conversely, MTGL and MSI own substantial assets located in the Northern District of California that could satisfy a significant portion or all of the Judgment.  MTGL's U.S. headquarters, which houses research and design functions as well as substantially all of its sales, marketing, administration, and operations, is located in Santa Clara, California, which lies within the Northern District of California.  *See* Ex. I.  According to MTGL's SEC filings, it (likely through subsidiaries) owns the company's Santa Clara facility, which consists of approximately 993,000 square feet on 33.8 acres of land.  *Id.*  MSI, which is MTGL's operating subsidiary, maintains its headquarters and principal place of business at the Santa Clara facility.  *See* Dkt. 25-7; Dkt. 26, at 4-7; Ex. J (Marvell website description of company).  Given that both MTGL and MSI have a very significant presence in the Northern District of California, CMU states on information and belief that additional and substantial assets will likely be found in that judicial district and in other districts in California.

### C. The Court Should Permit CMU to Register Its Judgment (and Any Amended Judgment) in Any Judicial District in the United States Where Marvell's Assets are Found.

14. In addition to CMU's current understanding of MTGL's and MSI's assets and the location of those assets, CMU intends to seek discovery in aid of execution from Marvell and potentially other persons or entities under Rule 69(a)(2). Such discovery will enable CMU to obtain detailed information about where MTGL's and MSI's assets are located.

15. To avoid the burden of repeated motions for the Court to permit the registration of the Judgment in other judicial districts, CMU requests that the Court allow it to register the Judgment in any district in the United States where MTGL's or MSI's assets are found, now or in the future. "Good cause" undoubtedly exists for such an order because MTGL and MSI currently owns insufficient assets in Pennsylvania and registration of the Judgment wherever significant assets are found through discovery will be necessary to collect on CMU's Judgment. CMU further requests that the Court's Order permit CMU to register any Amended Judgment without the need for further relief from this Court.

16. On similar facts, this Court recently entered an order permitting registration in any "judicial district in the United States where Plaintiff determines that Defendant has real and/or personal property" provided that plaintiff "properly file on the docket of this Court a notice setting forth the places of, and bases for, each such registration." *See* G*rant Street Group , Inc. v. Realauction.com LLC*, Case No. 09-01407, Dkt. 693 (W.D. Pa. July 31, 2013) (Hornak, J.). CMU has attached hereto a proposed order consistent with this Court's prior order.

## CONCLUSION

17. For the reasons stated above, CMU respectfully requests that the Court permit the Judgment (and any Amended Judgment) to be registered in the Northern District of California

pursuant to 28 U.S.C. § 1963 and registered in the future in any other judicial district in the United States in which Marvell's assets are found.

Respectfully submitted,                                           Dated: December 6, 2013

/s/ Christopher M. Verdini
Patrick J. McElhinny Pa. I.D. # 53510             Douglas B. Greenswag (admitted *pro hac vice*)
patrick.mcelhinny@klgates.com                     douglas.greenswag@klgates.com
Mark Knedeisen Pa. I.D. #82489                    925 Fourth Avenue, Suite 2900
mark.knedeisen@klgates.com                        K&L Gates LLP
Christopher M. Verdini Pa. I.D. # 93245           Seattle, WA  98104-1158
christopher.verdini@klgates.com                   Phone:          206.623.7580
K&L Gates LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA  15222
Phone:          (412) 355-6500                    *Counsel for Plaintiff, Carnegie Mellon University*

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2013 the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Christopher M. Verdini
Christopher M. Verdini
Pa. I.D. # 93245
christopher.verdini@klgates.com
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Ph (412) 355-6500
Fax (412) 355-6501