IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CARNEGIE MELLON UNIVERSITY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Civil Action No. 2:09-cv-00290-NBF |
| ) | |
| MARVELL TECHNOLOGY GROUP, LTD., ) | |
| and MARVELL SEMICONDUCTOR, INC., ) | |
| ) | |
| Defendants. ) | |

---

**CARNEGIE MELLON UNIVERSITY'S MOTION
FOR TELEPHONIC STATUS CONFERENCE**

---

Plaintiff Carnegie Mellon University ("CMU") respectfully requests that the Court schedule a telephonic status conference to discuss: (1) a new development that has heightened CMU's concerns about its ability to collect on its judgment, specifically, Kohlberg, Kravis Roberts & Co.'s ("KKR") recent disclosure that it has increased its ownership interest in Marvell, and may discuss "extraordinary corporate transaction[s]" with Marvell; (2) the status of the parties' discussions regarding a bond and the anticipated proceedings after the Court rules on the outstanding post-trial motions; and (3) the timing of Marvell's responses to discovery in aid of execution that CMU propounded to Marvell on December 12, 2013.  Prior to filing this Motion, CMU contacted Marvell to determine whether Marvell would join in this request for a status conference.  Marvell declined to do so.

In support of this Motion, CMU states:

**A.   New Development with regard to KKR's Ownership Interest in Marvell**

1.   On December 6, 2013, CMU filed (1) a Motion/Verified Petition for Supplemental Relief in Aid of Execution Pursuant to Rule 3118 of the Pennsylvania Rules of Civil Procedure [Dkt. 908] and (2) a Motion to Permit Registration of the Judgment Pursuant to 28 U.S.C. § 1963 [Dkt. 909] (collectively, the "December 6 Motions").

2. In the December 6 Motions, CMU provided the Court with a media report from Bloomberg detailing KKR's acquisition of almost 5% of Marvell's outstanding stock and explaining how that acquisition signaled that Marvell may be considering a leveraged buy out ("LBO").  *See* Dkt. 908, Exhibit E.  CMU expressed its concern that an LBO (or any other financing transaction involving Marvell's assets) would dissipate and/or encumber Marvell's assets and/or net worth substantially such that CMU's ability to collect on its judgment would be at risk.

3. On December 30, 2013, KKR filed a Form 13D reporting that it had substantially increased its ownership of Marvell to 6.8%.  *See* Ex. 1.

4. In item 4 of the Form 13D, KKR stated that it "may engage in discussions with management, the board of directors, stockholders of the Issuer . . . or take other actions concerning any ***extraordinary corporate transaction*** (including but not limited to a merger, reorganization or liquidation) . . . ."  *Id.* (emphasis added); *see also* Ex. 2 (media report regarding KKR's Form 13D).

5. In view of KKR's increased ownership interest in Marvell and its statement regarding actions it may undertake with regard to Marvell's business, CMU is increasingly concerned that Marvell may consummate one or more extraordinary corporate transactions that will make it difficult for CMU to collect on its judgment.

6. In light of the Court's denial of CMU's December 6 Motions without prejudice, CMU respectfully requests a telephone status conference to discuss the new development and the nature and timing of the protections available to CMU in advance of any "extraordinary corporate transaction."  In addition to its continued concerns that planning for such a transaction already is underway, CMU does not want to burden the Court with what the Court may consider to be a premature renewal of CMU's December 6 Motions, nor does CMU want to be in a position where it must seek emergency relief should such a transaction be announced.

B.       **Current Status of Bonding Discussions**

7.       In its December 23, 2013 Order on CMU's Motion for Supplemental Relief, the Court stated that it was "presently satisfied with Marvell's efforts to obtain a $1.5 billion supersedeas bond pending its forthcoming appeal as set forth in the declaration of Robert McDonough," indicated that both parties should negotiate reasonably the terms of any such bond after the final judgment is entered and stated that it would appoint a Special Master to oversee the negotiations if the parties failed to agree.  Dkt. 916.  CMU is concerned that the McDonough Declaration gave the Court an incomplete and inaccurate picture of the status of the bond negotiations and respectfully asserts that a further discussion of the subject in advance of or immediately after the Court's ruling on the outstanding motions would be beneficial.

8.       Specifically, Mr. McDonough's declaration is an incomplete and inaccurate description of the nature of the parties' bond negotiations in at least the following respects.

9.       The parties have been discussing the terms of a potential bond since October 4, 2013, shortly after the Court denied most of Marvell's post-trial motions.  *See generally* Declaration of Patrick J. McElhinny (attached hereto).  CMU provided Marvell with proposed bond terms on November 8, 2013, some ten days prior to Marvell's November 18, 2013 promise to post a $1.5 billion bond in "2 or 3 days."  *Id.* at ¶ 11.  Further, CMU proposed compromise bond terms to Marvell on November 24, 2013.  *Id.* at ¶ 12.  Marvell has never responded substantively to that proposal.  *Id.* at ¶¶ 13-17.[1]

10.      Although Mr. McDonough (who never spoke directly with CMU's counsel) stated that "arranging a $1.5 billion supersedeas bond with respect to the final judgment at this stage of the litigation has not been possible," at no time did anyone from Marvell or on behalf of the sureties make that statement to CMU, either in those terms or in words to that effect.  *Id.* at ¶ 19.

---

[1] Marvell inquired about CMU's willingness to continue negotiations over the terms of the bond the day after CMU filed the December 6 Motions.  CMU responded that it was willing to continue negotiations, but Marvell has not done so.  McElhinny Dec. at ¶ 17.

11. Furthermore, Mr. McDonough states that he "also was informed that CMU is seeking to maintain priority over the sureties with respect to any collateral that might be provided by Marvell to the sureties in connection with any bond," but at no time during the discussions regarding the bond did Marvell ever indicate that it would have to provide security to obtain a $1.5 billion bond. *Id.* at ¶ 20. In fact, Marvell repeatedly insisted that it would be able to obtain a $1.5 billion bond without any additional agreement with its sureties regarding security or collateral. *Id.*

12. Marvell also never indicated that any of CMU's proposed revisions to the form of the bond were deal-breakers. *Id.* at ¶ 21.

13. In light of (a) the amount of time consumed by the parties' discussions in October and November, (b) the discrete issues that CMU has identified with respect to the original proposed form of bond, and (c) Marvell's failure to continue the bond discussions, CMU believes that it is appropriate to discuss with the Court in detail how the Court and parties envision proceeding after the Court rules on the outstanding post-trial motions. Such a discussion would put the parties in a better position to agree upon an appropriate bond and/or supplemental security in an orderly manner or to take orderly steps to execute on the judgment when the Rule 62(a) fourteen-day automatic stay on execution expires. Among other things, CMU respectfully asserts that, if the parties are unable to agree upon the terms of a bond prior to the expiration of the fourteen-day automatic stay, the Court should require Marvell to file an expedited motion under Rule 62(d) to stay execution and for approval of whatever bond it is able to obtain and then allow CMU to be heard promptly on any objections to the proposed bond and any supplemental relief that may be necessary to protect CMU's ability to collect. CMU believes that adopting procedures in advance of entry of an amended judgment will best facilitate an orderly resolution of the issues related to securing the judgment.

**C.**     **CMU's Discovery in Aid of Execution**

14. On December 12, 2013, CMU propounded to Marvell Requests for Production of Documents and Interrogatories in Aid of Execution pursuant to Rules 33, 34 and 69 of the

Federal Rules of Civil Procedure.  In light of Marvell's failure to respond to CMU's November 24, 2013 compromise proposal on bond terms (even after CMU filed the December 6 Motions), CMU propounded the discovery to ensure that it will be able to execute on its judgment promptly if Marvell does not post a bond that adequately protects CMU's interest.  CMU's concerns about Marvell's ability to post an adequate bond are only exacerbated by Marvell's statements to this Court that it is "impossible" to obtain a bond that CMU would find to be acceptable.  Dkt. 915 at 7.

15. Marvell's responses to the discovery are due on January 13, 2014.

16. On January 3, 2014, after the Court denied, without prejudice, CMU's Motion to Permit Registration of the Judgment, Marvell demanded that CMU withdraw its discovery requests.

17. On January 4, 2014, CMU informed Marvell that it would not withdraw its discovery requests but instead would ask for a telephonic conference with the Court to discuss the status of that discovery.  CMU invited Marvell to join in the request.

18. On January 6, 2014, Marvell declined to join in this Motion.  In light of Marvell's demand that CMU withdraw the discovery, however, CMU expects Marvell to object to the requests instead of providing substantive responses.

19. There is no basis for Marvell to object to responding to the discovery requests in a timely manner.  Marvell has stopped the bond negotiations with CMU and its demand that CMU withdraw the discovery would forestall and materially prejudice CMU's ability to obtain necessary information to execute on the judgment promptly.

20. In the hope to avoid burdening the Court with motions practice on the discovery, CMU submits that a telephone conference to discuss the timing of Marvell's responses to the discovery requests either will resolve the dispute or, at a minimum, will narrow the issues that would need to be addressed if motions practice becomes necessary.

WHEREFORE, CMU respectfully requests that the Court grant the Motion and schedule a telephonic status conference at its earliest convenience.  A proposed Order is attached.

Respectfully submitted,

/s/ Christopher M. Verdini
Patrick J. McElhinny Pa. I.D. # 53510
patrick.mcelhinny@klgates.com
Mark Knedeisen Pa. I.D. #82489
mark.knedeisen@klgates.com
Christopher M. Verdini Pa. I.D. # 93245
christopher.verdini@klgates.com
K&L Gates LLP
210 Sixth Avenue
Pittsburgh, PA  15222
Phone:  (412) 355-6500

Dated: January 8, 2014

Douglas B. Greenswag (admitted *pro hac vice*)
douglas.greenswag@klgates.com
925 Fourth Avenue, Suite 2900
K&L Gates LLP
Seattle, WA  98104-1158
Phone:   (206) 623-7580

*Counsel for Plaintiff, Carnegie Mellon University*

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 8, 2014 the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s Christopher M. Verdini
Christopher M. Verdini, Pa. I.D. # 93245
christopher.verdini@klgates.com
K&L GATES LLP
K&L Gates Center
210 Sixth Avenue
Pittsburgh, PA 15222
Ph (412) 355-6500
Fax (412) 355-6501