**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARNEGIE MELLON UNIVERSITY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 2:09-cv-00290-NBF |
| | ) | |
| MARVELL TECHNOLOGY GROUP, LTD., | ) | |
| and MARVELL SEMICONDUCTOR, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF PATRICK J. MCELHINNY IN SUPPORT OF CARNEGIE MELLON UNIVERSITY'S MOTION FOR TELEPHONIC STATUS CONFERENCE**

I, Patrick J. McElhinny, hereby declare:

1. I am a partner in the law firm of K&L Gates LLP, counsel for plaintiff Carnegie Mellon University ("CMU") in the above captioned matter.

2. I make this declaration in support of CMU's Motion for Telephonic Status Conference (the "Motion").

3. Each of the facts listed below is within my personal knowledge and is true and correct.

4. After the Court entered judgment on the verdict in this matter on January 14, 2013 ("Judgment"), the parties filed various post-trial motions. Those motions included Marvell's (a) Motion for Judgment as a Matter of Law, New Trial, and/or Remittitur With Respect to Damages (Dkt. 807) and (b) Motion for Judgment as a Matter of Law, or in the Alternative, New Trial on Non-Damages Issues (Dkt. 805) ("Marvell's JMOL Motions"). Marvell's JMOL Motions sought to overturn the Judgment in its entirety.

5. CMU did not take action to enforce the Judgment prior to the Court's decision to deny Marvell's JMOL Motions on September 23, 2103 (Dkt. 901), at which time it became clear that, at a minimum, Marvell's judgment debt to CMU would be no less than $614.6 million, exclusive of prejudgment interest, post-judgment royalties and enhanced damages.

6. On October 4, 2013, CMU initiated a dialogue with Marvell regarding its plans to bond or otherwise secure the Judgment. At that time, CMU expressly reserved "its rights to take steps to enforce the judgment or to take discovery in aid of execution at any time absent a full bond being in place . . . ."

7. During October, 2013, the parties discussed Marvell's plans to provide a bond, including the identity of proposed sureties, the amounts that they were willing to underwrite and pricing information. On October 28, 2013, Marvell finally provided CMU with what it represented was the current draft of the supersedeas bond.

8. On October 31, 2013, in response to a CMU inquiry, Marvell confirmed that,

except for form indemnity agreements and a spreadsheet with pricing terms for each proposed surety, there were no other agreements between Marvell and the sureties. Marvell specifically indicated that there were no such agreements "to establish or facilitate security or collateral."

9. On November 5, 2013, media reports indicated that Kohlberg, Kravis Roberts & Co. had acquired almost 5% of Marvell's outstanding stock and that Marvell may be considering a leveraged buy out.

10. On November 8, 2013, CMU informed Marvell that in light of, among other things, the reports that a leveraged buyout at Marvell was a possibility, it would take steps to execute on the Judgment if Marvell did not post an acceptable bond by November 15, 2013. Among other things, CMU expressed to Marvell its concern that such a transaction would dissipate and/or encumber Marvell's assets and present a direct risk to CMU's ability to collect its judgment. In connection with this communication from CMU to Marvell, CMU included a form of bond revised to address CMU's concerns regarding (a) protections for CMU in the event of a Marvell bankruptcy, (b) a possible failure to pay by one or more of the numerous participating sureties in view of the fact that the sureties liability under Marvell's form of bond was several but not joint, and (c) a possible failure by Marvell to pay the annual premiums reportedly due from Marvell to the sureties.

11. Based upon further discussions with Marvell, CMU extended the deadline to post a bond to November 18, 2013, at which time Marvell informed CMU that it would "post a bond in the amount of $1.5B," that it would "take 2 or 3 days to put the bond in place," and that the parties would continue to discuss the outstanding issues regarding specific terms of the bond.

12. The parties exchanged further drafts of the form of bond between November 19, 2013 and November 24, 2013, at which time CMU provided a draft bond reflecting compromises on several of the provisions that appeared to be objectionable to the sureties.

13. On November 25, 2013, Marvell, for the first time, indicated that at least one of the sureties had retained counsel (Jonathan Bondy of Wolff & Samson) and arranged for a call including Mr. Bondy on November 26, 2013 (two days before the Thanksgiving holiday).

14. During several calls between November 27 and December 3, 2013, in which counsel for Marvell and CMU and Mr. Bondy participated, neither Marvell nor Mr. Bondy provided a response to CMU's proposed draft of November 24. To the contrary, Mr. Bondy indicated that the number of participating sureties and the amounts that they would underwrite were in flux. He further indicated that he expected to be retained as counsel by the participating sureties but that had not yet occurred.

15. On December 4, 2013, Mr. Bondy indicated that he had nothing new to report regarding his discussions with the sureties and indicated that he would follow up with an email later that day. He never did so, nor did counsel for Marvell provide any additional information regarding the status of the bond.

16. Absent progress on Marvell's November 18, 2013 promise to post a bond by November 20 or 21 and with no sign that an acceptable bond of any type or amount would soon be forthcoming, CMU filed its Motion/Verified Petition for Supplemental Relief in Aid of Execution Pursuant to Rule 3118 of the Pennsylvania Rules of Civil Procedure and its Motion to Permit Registration of the Judgment Pursuant to 28 U.S.C. § 1963 on December 6, 2013.

17. After CMU filed its motions, Marvell inquired (also on December 6, 2013), whether CMU would be willing to continue to discuss terms of a bond. CMU indicated that it was willing to do so, but, as of the date of this Declaration, Marvell has not responded to CMU's November 24, 2013 proposed bond language.

18. In its Sur-Reply in opposition to CMU's Motion to Permit Registration of the Judgment, Marvell submitted a Declaration of Robert McDonough (Dkt. 915-1). At no time did Mr. McDonough ever participate in any discussions with CMU.

19. Although paragraph 5 of Mr. McDonough's declaration states that "arranging a $1.5 billion supersedeas bond with respect to the final judgment at this stage of the litigation has not been possible," at no time did anyone from Marvell or on behalf of the sureties ever make that statement to CMU, either in those terms or in words to that effect. To the contrary, until early December, 2013, Marvell and Mr. Bondy were indicating that Marvell would post the previously promised $1.5 billion bond.

20. In the final sentence of paragraph 4 of Mr. McDonough's declaration, he stated: "I also was informed that CMU is seeking to maintain priority over the sureties with respect to any collateral that might be provided by Marvell to the sureties in connection with any bond." At no time during the discussions with Marvell or Mr. Bondy did anyone indicate that Marvell would have to provide security to obtain a $1.5 billion bond. In fact, repeatedly during the discussions between CMU and Marvell, Marvell insisted that it would be able to obtain the foregoing $1.5 billion bond without any additional agreement with its sureties regarding security or collateral.

21. At no time did Marvell or Mr. Bondy indicate that any of CMU's proposed revisions to the form of the bond were deal-breakers. Indeed, they never responded substantively to CMU's November 24, 2013 compromise proposal.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is a true and correct statement of facts known to me and that this declaration was executed on January 8, 2014.

/s/ Patrick J. McElhinny